| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)* <br> SAUL EWING LLP <br> Stephen B. Ravin, Esquire <br> Turner N. Falk, Esquire <br> One Riverfront Plaza <br> 1037 Raymond Blvd., Suite 1520 <br> Newark, NJ 07102-5426 <br> Telephone: (973) 286-6714 <br> E-mail:   stephen.ravin@saul.com <br>              turner.falk@saul.com <br><br> *Proposed Counsel to the Debtors and Debtors in Possession* | |
| In re: <br><br> PORT ELIZABETH TERMINAL & WAREHOUSE CORP., <br><br>                       Debtor. <br> Tax I.D. No. 22-2056485 | Chapter 11 <br><br> Case No. 25-22123 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> P. JUDGE & SONS, INC., <br><br>                       Debtor. <br> Tax I.D. No. 11-1953713 | Chapter 11 <br><br> Case No. 25-22127 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> AMEX SHIPPING AGENT, INC., <br><br>                       Debtor. <br> Tax I.D. No. 22-2014699 | Chapter 11 <br><br> Case No. 25-22129 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> THE JUDGE ORGANIZATION, LLC, <br><br>                       Debtor. <br> Tax I.D. No. 45-4018267 | Chapter 11 <br><br> Case No. 25-22130 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> P. JUDGE & SONS TRUCKING, LLC, <br><br>                       Debtor. | Chapter 11 <br><br> Case No. 25-22131 (JKS) |

| | |
|---|---|
| Tax I.D. No. 30-0709853<br><br>In re:<br><br>JUDGE WAREHOUSING, LLC,<br><br>　　　　　　　　　Debtor.<br><br>Tax I.D. No. 37-1656690 | (Joint Administration Requested)<br><br>Chapter 11<br><br>Case No. 25-22132 (JKS)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING
THE DEBTORS TO PAY PREPETITION OBLIGATIONS OWED
TO CRITICAL VENDORS; AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed undersigned attorneys, hereby move this Court (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), for entry of an order authorizing but not directing the Debtors, in their sole discretion, to pay certain pre-petition claims of critical vendors. In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Patrick Wynne in Support of First Day Motions for Relief* (the "First Day Declaration"), and respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of New Jersey has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent

2

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as supplemented by Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey (the "<u>Local Rules</u>").

## **BACKGROUND**

4. On November 14, 2025 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>").

5. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

6. A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

7. Collectively, the Debtors provide transportation, logistic, and warehouse related services. More specifically, the Debtors offer rail boxcar services, container handling services, warehousing services, multiple shipping options (e.g., rail, truck, air, and international shipping),

3

specialized material handling services, cross docking, handling, and packing services, beverage specialists and alcoholic beverages expertise services, and product care and protection services.

8. A substantial portion of the transportation services provided by the Debtors are accomplished by "owner operators" – generally small businesses or individuals that own or lease trucks, who are employed as independent contractors by the Debtors.

9. Due to the nature of their business, the Debtors have service providers and owner operators that are key to the Debtors' operations (the "Critical Vendors"). The Debtors have approximately 15 service providers who may be Critical Vendors and 75 owner operators that may be Critical Vendors. As of the Petition Date, the Debtors owe their potential service provider Critical Vendors approximately $632,205 and their potential owner operator Critical Vendors approximately $200,000 (the "Critical Vendor Claims").

**PROPOSED CONDITIONS TO RECEIVING PAYMENT IN ORDINARY COURSE**

10. To preserve liquidity during the chapter 11 cases and ensure that the Debtors continue to receive vital goods and services, the Debtors may condition payment on account of Critical Vendor Claims on such Critical Vendor's agreement that it will continue supplying goods and services to the Debtors on terms that are consistent with the historical trade terms between the parties (including, but not limited to, pricing, cash discounts, timing of payments, allocation of products, availability and other applicable terms and programs), which were most favorable to the Debtors and in effect between such Critical Vendor and the Debtors on a historical basis for the period within one hundred eighty (180) days of the Petition Date (the "Customary Trade Terms").

11. The Debtors, however, reserve the right to negotiate different trade terms with any Critical Vendor, as a condition to paying any Critical Vendor Claim, whether or not memorialized by a trade agreement containing terms different from their Customary Trade Terms ("Trade

4

Agreement") [1], to the extent the Debtors determine that such trade terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

12. If a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms following any postpetition payment toward its Critical Vendor Claim, or fails to comply with any Trade Agreement it entered into with the Debtors, the Debtors hereby seek authority, in their discretion and without further order of the Court but with notice to the affected Critical Vendor (i) to declare such Trade Agreement immediately terminated (if applicable) and (ii) to declare any payments made to such Critical Vendor on account of its Critical Vendor Claim to have been in payment of then outstanding postpetition obligations owed to such Critical Vendor without further order of the Court.

13. In the event that the Debtors exercise either of the rights set forth in the preceding paragraph, the Debtors request that the Critical Vendor against which the Debtors exercise such rights be required to immediately return to the Debtors any payments made on account of its Critical Vendor Claim to the extent that such payments exceed the postpetition amounts then owed to such Critical Vendor, without giving effect to any rights of setoff or reclamation. In essence, the Debtors seek to return the parties to their respective positions immediately prior to entry of the Proposed Order, as applicable, in the event a Trade Agreement is terminated or a Critical Vendor refuses to supply goods or services to the Debtors on Customary Trade Terms following any payment of its Critical Vendor Claim.

---

[1] The Debtors' entry into a Trade Agreement shall not change the nature or priority of the underlying Critical Vendor Claims and shall not constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Vendor.

56692675.6 11/14/2025

**RELIEF REQUESTED**

14. By this Motion, the Debtors seek entry of the proposed order attached hereto as **Exhibit A** (the "Proposed Order") authorizing, but not directing, the Debtors to pay Critical Vendor Claims and granting related relief.

15. The Critical Vendor Claims, which are in the aggregate amount of approximately $832,205, are all on account of goods and services provided to the Debtors. The goods and services that the Critical Vendors provide are essential to the Debtors in continuing to conduct ongoing operations with the quality and price that their customers expect.

16. While the Critical Vendors may not be the only provider of such goods and services, requiring the Debtors to replace these vendors would be detrimental to the Debtors' operations. The Critical Vendors are aware of the Debtors' needs and have the ability to meet the Debtors' requirements for goods and services during the course of these bankruptcy proceedings. Requiring the Debtors to seek new vendors at this point in time would: (1) be time consuming; (2) arduous; and (3) disruptive to the Debtors' current business operations, as it would require the Debtors to essentially train any new vendor as to the specific goods and services required by the Debtors, and attempt to get these replacement goods and services at a comparable price.

17. The Debtors submit that it is in the best interest of the Debtors, their creditors, and their bankruptcy estate, and represent sound business judgment to pay the Critical Vendors the amount of their respective Critical Vendor Claims.

18. The Debtors propose to condition, at the Debtors' option, the payment of Critical Vendor Claims on the agreement of the individual Critical Vendor to confirm that it will continue supplying goods and services to the Debtors on the terms in effect between the Critical Vendor and the Debtors as of the Petition Date, or such other terms as are agreed to by the Debtors and the

6

Critical Vendor. The Debtors reserve the right to negotiate new terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim.

## BASIS FOR RELIEF

### A. The Court should grant the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

19. Courts in this Circuit and others have approved relief similar to the relief requested in this Motion. *See*, *e.g.*, *In re Meridian Auto. Sys. - Composite Operations*, *Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the survival of the debtor during chapter 11). Courts have relied on several legal bases in approving such relief.

15. Section 363(b) of the Bankruptcy Code states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.*), 973 F.2d 141, 143 (2d Cir. 1992) (affirming lower court order authorizing sale of assets pursuant to section 363(b) of the Bankruptcy Code). A debtor's decision to use, sell, or lease assets in the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code must be based upon its sound business judgment. *See In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (stating that "[t]ransactions under § 363 must be based upon the sound business judgment of the debtor or trustee." (citation omitted)); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007) ("[O]nce 'the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.'" (quoting

*Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986))); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) ("[I]f the Court determines that a transaction is in the ordinary course of a debtor's business, the Court will not entertain an objection to the transaction, provided that the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code.") (citation omitted).

20. Courts generally recognize that debtors may pay prepetition claims under section 363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than mere appeasement of major creditors. . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).

21. The Court also may rely on its general equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate. *See, e.g.*, *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been

paid.") (citation omitted); *Friedman's Inc. v. Roth Staffing Cos. (In re Friedman's Inc.)*, No. 09-50364 (CSS), 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) (stating "most courts will allow . . . payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business."). Accordingly, payment of the Critical Vendor Claims is appropriate under the well-settled "doctrine of necessity," which is grounded in section 105(a) of the Bankruptcy Code.

22. Here, the payment of the Critical Vendor Claims is sufficiently justified as it is essential to ensure the continuous and uninterrupted operation of the Debtors' business. As described above, the Debtors require continuing performance from their Critical Vendors to maintain their different lines of business as the Debtors transition into chapter 11. Failure to pay the Critical Vendor Claims could disrupt the Debtors' timely receipt of necessary goods and services, which would negatively impact the Debtors' operations. The Debtors are a logistics business, and must continue to provide uninterrupted shipping services in order to succeed. Any disruption to these relationships would be harmful, resulting in a loss of revenue and damaging the Debtors' market reputation to the detriment of the Debtors, their estates and their stakeholders. Accordingly, it is imperative that the Debtors maintain positive relationships with their goods and services vendors, which are essential to the Debtors' business operations, throughout the course of these chapter 11 cases.

23. Additionally, a number of the Critical Vendors are counterparties to executory contracts that the Debtors anticipate they will assume during the pendency of the case. In order to assume those contracts, the Debtors would be required to cure any existing arrearage anyway, and would thus have to pay those Critical Vendor Claims at that time. Authorizing payment pursuant to this Motion merely speeds up this process without any material impact on creditor recoveries.

### B. Paying Critical Vendor Claims that satisfy section 503(b)(9) will have little to no impact on creditor recoveries in these cases.

24. Section 503(b)(9) of the Bankruptcy Code provides administrative priority of a claim for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." Because such claims are entitled to priority status, they must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). As such paying claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan.

25. Although section 503(b)(9) of the Bankruptcy Code does not specify a time for paying these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability and there is a need to pay. *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("[T]he timing of the payment of that administrative expense claim is left to the discretion of the Court."). Thus, paying Critical Vendor Claims with section 503(b)(9) priority only affects the timing, but not the amount, of any such payment. Here, the Debtors have a need to pay claimants who could potentially disrupt operations of their business..

26. As a result, the Debtors request that they should have the authority, but not direction, to pay Critical Vendor Claims, a substantial amount of which would be paid ahead of general unsecured creditors even absent the relief requested in the motion. Providing the Debtors with the ability to pay these claims will help maximize the value of the estates as it will allow the Debtors to more efficiently and effectively operate their business by being able to secure more favorable trade terms with their vendors.

56692675.6 11/14/2025

### C.  Paying Critical Vendor Claims is authorized under sections 1107(a) and 1108 of the Bankruptcy Code.

27. The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

28. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

29. Payment of the Critical Vendor Claims meets the test set forth in *CoServ*. As described above, the Critical Vendors play a critical role in the Debtors' overall operations and any modifications to trade terms or services provided could cause irreparable harm to the Debtors and their estates. The potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform is disproportionate to the amount of the prepetition claims that the Debtors are seeking to pay in this Motion. Moreover, with respect to each Critical Vendor, the Debtors have examined other options short of payment of such Critical Vendor Claims and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Critical Vendor Claims. Therefore, the

Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Critical Vendor Claims. Accordingly, the Court should grant the relief requested herein.

### D. Cause exists to authorize the Debtors' financial institutions to honor checks and electronic fund transfers.

30. The Debtors believe that they have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of Critical Vendor Claims. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that this Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### THE DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003

31. Bankruptcy Rule 6003 empowers the Court to issue an order, on an interim basis, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an order granting this Motion is integral to the Debtors' ability to successfully transition into chapter 11 and to avoid disruptions to the Debtors' operations, to the detriment of the Debtors' estates, customers and creditors. Accordingly, the Debtors submit that they have satisfied the "immediate

and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(h)

32. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## WAIVER OF MEMORANDUM OF LAW

33. As the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtor respectfully requests that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-1 be deemed waived.

## RESERVATION OF RIGHTS

34. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (v) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vi) a concession by the Debtors that any lien (contractual, common

law, statutory, or otherwise) satisfied pursuant to this Motion is valid, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of any such lien.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just.

Respectfully Submitted,

Dated: November 14, 2025                     **SAUL EWING LLP**

By: */s/ Turner N. Falk*
    Stephen B. Ravin, Esquire
    Turner N. Falk, Esquire
    One Riverfront Plaza
    1037 Raymond Blvd., Suite 1520
    Newark, NJ 07102-5426
    Telephone: (973) 286-6714
    E-mail: stephen.ravin@saul.com
          turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*