| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> *Caption in Compliance with D.N.J. LBR 9004-1(b)* <br> **SAUL EWING LLP** <br> Stephen B. Ravin, Esquire <br> Turner N. Falk, Esquire <br> One Riverfront Plaza <br> 1037 Raymond Blvd., Suite 1520 <br> Newark, NJ 07102-5426 <br> Telephone: (973) 286-6714 <br> E-mail:   stephen.ravin@saul.com <br>              turner.falk@saul.com <br><br> *Proposed Counsel to the Debtors and Debtors in Possession* | |
| In re: <br><br> PORT ELIZABETH TERMINAL & WAREHOUSE CORP., <br><br>                           Debtor. <br> Tax I.D. No. 22-2056485 | Chapter 11 <br><br> Case No. 25-22123 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> P. JUDGE & SONS, INC., <br><br>                           Debtor. <br> Tax I.D. No. 11-1953713 | Chapter 11 <br><br> Case No. 25-22127 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> AMEX SHIPPING AGENT, INC., <br><br>                           Debtor. <br> Tax I.D. No. 22-2014699 | Chapter 11 <br><br> Case No. 25-22129 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> THE JUDGE ORGANIZATION, LLC, <br><br>                           Debtor. <br> Tax I.D. No. 45-4018267 | Chapter 11 <br><br> Case No. 25-22130 (JKS) <br><br> (Joint Administration Requested) |
| In re: <br><br> P. JUDGE & SONS TRUCKING, LLC, <br><br>                           Debtor. | Chapter 11 <br><br> Case No. 25-22131 (JKS) |

56696061.5

| | |
|---|---|
| Tax I.D. No. 30-0709853 <br> In re: <br><br> JUDGE WAREHOUSING, LLC, <br><br> Debtor. <br> Tax I.D. No. 37-1656690 | (Joint Administration Requested) <br><br> Chapter 11 <br><br> Case No. 25-22132 (JKS) <br><br> (Joint Administration Requested) |

**MOTION OF DEBTORS FOR THE ENTRY
OF INTERIM AND FINAL ORDERS GRANTING (A) AUTHORITY TO OBTAIN
POST-PETITION FINANCING, (B) LIENS AND SUPER PRIORITY
ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 364(c)(1), (2)
AND (3) AND 364(d)(1), (C) RELIEF FROM THE AUTOMATIC STAY (D)
AUTHORITY TO ENTER INTO AGREEMENT WITH FIRST BUSINESS SPECIALTY
FINANCE, LLC, (E) AUTHORIZATION TO USE CASH COLLATERAL PURSUANT
TO 11 U.S.C. §§ 361 AND 363, BANKRUPTCY RULE 4001 AND D.N.J. LBR 4001-4 AND
TO PROVIDE ADEQUATE PROTECTION TO PARTIES WITH AN INTEREST IN
CASH COLLATERAL AND (F) RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their counsel, hereby seek the entry of an Interim and Final Order (a "DIP Order") granting (a) the Debtors authority to obtain post-petition financing on the terms described herein, (b) granting priming liens and super-priority administrative expense status pursuant to 11 U.S.C. §§ 364(c)(1), (2) and (3) and/or 364(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), (c) granting relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, (d) authorizing the Debtors to enter into agreements with, First Business Specialty Finance, LLC (the "Purchaser" or "FBSF"), (e) authorizing the use of cash collateral and providing adequate protection to parties with an interest in cash collateral and (f) related relief (the "Motion"). In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Patrick Wynne in Support of First Day Motions for Relief* (the "First Day Declaration"), and respectfully represent as follows:

2

56696061.5

I. **PARTIES AND JURISDICTION**

1. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 361, 362, 363, 364(c)(1), (2) and (3) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 4001-4.

II. **BACKGROUND**

    a. **The Debtors' Businesses.**

4. On November 14, 2025 (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

5. A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

6. Collectively, the Debtors provide transportation, logistic, and warehouse related services. More specifically, the Debtors offer rail boxcar services, container handling services, warehousing services, multiple shipping options (e.g., rail, truck, air, and international shipping), specialized material handling services, cross docking, handling, and packing services, beverage specialists and alcoholic beverages expertise services, and product care and protection services.

### b. The Prepetition FBSF obligations.

7. As is common for transportation companies, the Debtors' practice is to use a factoring service for the prompt payment and orderly, efficient collection of the Debtors' accounts receivable.

8. The Debtors and FBSF were parties to a prepetition factoring agreement (the "Factoring Agreement") whereby the Debtors submitted eligible accounts receivable to FBSF for purchase and in return FBSF would immediately advance a sum equal to the purchase price of those accounts, representing a discount from their face value.

9. All amounts owed by the Debtors pursuant to the Factoring Agreement (collectively the "Prepetition Obligations") were secured by a lien on all of the Debtors' present and after-acquired personal property and fixtures, Accounts, Chattel Paper, Goods, Inventory, Equipment, Instruments, Investment Property, Documents, General Intangibles, Reserve Accounts (each as defined in Article 9 of the Uniform Commercial Code), all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance

4

proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing (collectively, the "Pre-Petition Collateral").

10. FBSF has duly filed and recorded first priority security interests and liens on all of the Pre-Petition Collateral to secure the Prepetition Obligations.

11. As of the Petition Date, the total of the Prepetition Obligations is approximately $2.5 million.

12. The Debtors and FBSF entered into a new factoring agreement to provide funding for the instant chapter 11 cases, and will make both prepetition and postpetition receivables available to FBSF for purchase in order to ensure uninterrupted funding (the "DIP Factoring Agreement"). A copy of the DIP Factoring Agreement is attached as **Exhibit A**.

    c.    **The Debtor's Financing Needs and Negotiations**

13. The Debtors, in the normal course of their businesses, incur obligations to employees, suppliers and other vendors essential to the continued existence of the Debtors, and the continued viability of their businesses as a going concern.

14. At present, the Debtors will not have sufficient cash to operate their businesses unless they obtain authority to enter into the DIP Factoring Agreement.

15. The Debtors' most valuable asset is the stream of accounts receivable generated by operations.

16. Pursuant to the Factoring Agreement, the Debtors' accounts receivable were to be purchased by FBSF as they were generated. This structure meant that it was unlikely for a traditional lender to be willing to fund the necessary expenses of this case, since they could not take a lien interest in receivables to be sold.

17. The Debtors explored a number of different options for funding the expenses of this case. The DIP Factoring Agreement offered by FBSF was the only case funding option that was both available and sufficient to the needs of these cases.

18. As set forth on the budget attached hereto as **Exhibit B**, the funding provided by the Purchaser will allow the Debtors to address postpetition obligations as they arise in the ordinary course of business.

19. In order to continue their businesses and operations, the Debtors require post-petition financing. The Purchaser has agreed to commit funds in addition to those exchanged prepetition, and to fund the debtors-in-possession to (a) provide working capital and fund operations post-petition, as well as the payment of certain administrative expenses; and (b) allow the Debtors to conduct a reorganization of their business.

20. Absent the immediate availability of cash and post-petition financing, the Debtors would not have the funds with which to conduct their businesses. An abrupt cessation of the Debtors' businesses would cause extreme hardship to the Debtors, their employees, customers and creditors.

21. A reliable source of post-petition financing will help not only the Debtors' cash needs but will instill a sense of confidence in the Debtors' creditors and vendors. Simply stated, in order to continue the operation of the Debtors' businesses, it is necessary for the Debtors to immediately borrow money and otherwise obtain credit.

22. The Debtors request authority to continue to enter into the DIP Factoring Agreement, to submit accounts receivable to FBSF for purchase, and for FBSF to continue to have a first priority lien on all of Debtors' assets, superior to any existing properly perfected and unavoidable liens existing as of the Petition Date (excepting certain equipment or machinery to

56696061.5

which FBSF has expressly agreed to subordinate its interests, as identified in the DIP Factoring Agreement).

23. Based upon the Debtors' review of their loan documents and filed UCC-1's, the Debtors submit that their other secured creditors fall into three categories (the "Junior Lienholders"):

(A) Equipment lenders, including HYG Financial Services, Inc., Med One Capital Funding, LLC, Auxilior Capital Partners, Inc., and Renaissance Capital Alliance, LLC. These lenders have liens on specific pieces of equipment.

(B) A lien on substantially all assets of debtor The Judge Organization LLC by the United States Small Business Administration, which lien is junior to the secured interests of FBSF.

(C) A purported lien on accounts receivable and other assets of debtor Port Elizabeth Terminal & Warehouse Corp. by Pinnacle Business Funding LLC d/b/a AEC Cap Capital ("AEC") on account of a merchant cash advance agreement. Pursuant to an intercreditor agreement between the FBSF and AEC, AEC's alleged lien is subordinate to that of the Purchaser. The Debtors submit the AEC agreement is a form of secured financing.

24. The Debtors will continue to make ordinary payments to the Junior Lienholders pursuant to the underlying contracts.

25. The Debtors and FBSF further request that the liens of the Junior Lienholders must be subordinated to the lien of FBSF pursuant to Section 364(d)(1), and that Purchaser be granted a "priming lien" (again excepting the equipment or machinery to which FBSF has expressly agreed to subordinate its interests).

56696061.5

26. Finally, the Debtors request that the Purchaser be granted, pursuant to section 364(c)(1) of the Bankruptcy Code, a "super priority" administrative expense claim in the Debtors' case with priority over all administrative expenses.

27. The Debtors require the use of their cash and accounts to continue operations during the pendency of these chapter 11 cases.

28. The Debtors have an urgent and critical need for the use of cash. Without the use of cash collateral, including the accounts receivable submitted to the Purchaser pursuant to the Factoring Agreement and DIP Factoring Agreement ("Cash Collateral"), the Debtors' reorganization efforts will fail.

### III.  RELIEF REQUESTED

**A.  This Court Should Grant the Debtors' Authority to Obtain Post Petition Financing; Approve Liens and Super Priority Administrative Expense Status Pursuant to Sections 364(c)(1), (2) and (3) and/or 364(d) of the Bankruptcy Code; and Grant Relief From the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code**

29. The Purchaser has indicated its willingness to facilitate Debtors' post-petition financing needs in accordance with and on the terms set forth in the DIP Factoring Agreement[1], the relevant terms of which are summarized as follows pursuant to Local Rule 4001-3:

Borrower:  The Debtors.

Maximum Advance:  Up to the amount of $5,000,000.00, subject to the entry of an order approving the Debtors' proposed post-petition financing.

Reinstatement of Existing Debt: The Prepetition Obligations in the approximate amount of $2,500,000.00 are being reinstated, becoming part of the amounts owed under the DIP Factoring Agreement.

Advance Rate:  93% of the face value of eligible accounts receivable, minus chargebacks to the Debtors.

---

[1] Capitalized terms in the following summary have the same meaning as in the DIP Factoring Agreement. In the event of a conflict between this summary and the DIP Factoring Agreement, the terms of the DIP Factoring Agreement control.

<u>Fees</u>: Discount fee (prime rate plus 1% times the unpaid face amount of purchased accounts, less any reserve). Factoring Fee (0.6% of the face value of a purchased account that remains unpaid). FBSF's actual fees and costs incurred in enforcing their rights under the DIP Factoring Agreement or preparing any documents in connection therewith.

<u>Availability/Use of Proceeds</u>: Borrowings are available for Debtors' expenses of operations and administrative expenses, including those fees required to be paid to the United States Trustee, and to provide cash flow for operations, including, without limitation, payment of employees' wages and benefits.

<u>Security/Priority</u>: Pursuant to sections 364(c)(1), (2) and (c)(3) and 364(d) of the Bankruptcy Code, the Debtors' obligations are to be secured by a first priority lien on and security interest in all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing. Upon the entry of a final order, the Purchaser is granted a first priority lien on and security interest on all the Debtors' causes of action under chapter 5 of the Bankruptcy Code. All of the Purchaser's claims are to receive super-priority treatment.

<u>Conditions</u>: Interim and final orders approving this Motion; delivery by Debtors of all document necessary to implement the DIP Factoring Agreement.

<u>Termination/Default</u>: (a) Sellers default in the payment of any Obligations; (b) Sellers default in the performance of any covenant, condition or provision hereof or of any Other Agreement now or hereafter entered into with Purchaser, (c) any warranty or representation contained herein or in any Other Agreement proves to be false or inaccurate in any respect; (d) any Seller breaches the covenants set forth in <u>Section 13</u> of the DIP Factoring Agreement; (e) any provision of the DIP Factoring Agreement shall for any reason cease to be valid or binding or enforceable against Sellers; (f) a Bankruptcy Order is entered (i) modifying any Factoring Order with the prior written consent of Purchaser; (ii) avoiding or requiring disgorgement by Purchaser of any amounts received with respect to the Obligations; (iii) or a motion or other request shall be filed with the Bankruptcy Court seeking authority to use any proceeds of any of the Collateral without the consent of Purchaser; (iv) enjoining, restraining in any way preventing Sellers from continuing to conduct all or any material part of their business affairs; (g) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of their intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever; and/or (h) any guarantor of the Obligations becomes subject to any bankruptcy, insolvency or other debtor-relief proceedings.

<u>Stipulations/Releases</u>: The Purchaser's liens on the Prepetition Collateral and replacement liens granted pursuant to this Motion are valid and perfected. FBFS is the purchaser and absolute

9

owner of the eligible accounts via a true sale, such that the purchased accounts are not property of the Debtors' bankruptcy estates.

In consideration of Purchaser entering into the DIP Factoring Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Seller and each affiliate, subsidiary, successor and assign thereof, and each of them on their behalf and on behalf of their respective equity holders, shareholders, members, managers, officers, directors, attorneys, participants, agents, employees, successors and assigns, as applicable (collectively, the "**Releasors**" and each a "**Releasor**"), hereby forever release, discharge, and acquit Purchaser and each affiliate, subsidiary, successor and permitted assign thereof, and each of its respective equity holders, shareholders, members, officers, directors, shareholders, members, attorneys, participants, agents and employees (collectively, the "**Releasees**" and each a "**Releasee**"), of and from any and all demands, actions, causes of action, suits, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "**Claim**" and collectively, "**Claims**") of every type, kind, nature, description, or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, at law or in equity, each as though fully set forth herein at length, to the extent that they arise out of, are connected with or relate to (a) the Pre-Petition Factoring Agreement and any agreement, instrument and document related thereto (collectively the "**Original Factoring Documents**"); (b) any guaranty executed in connection with the Obligations under the Pre-Petition Factoring Agreement and other Original Factoring Documents in favor of Releasees; (c) the Obligations owing from Judge Sellers to Purchaser pursuant to the Pre-Petition Factoring Agreement; (d) any Obligations owing by any Releasor to any Releasee pursuant to the Pre-Petition Factoring Agreement; (e) any guaranteed obligations under the Pre-Petition Factoring Agreement; or (f) any other arrangement or relationship between any Releasor, on the one hand, and any Releasee, on the other hand in relation to the Original Factoring Documents, *provided, however*, that nothing in this paragraph shall release Purchaser from its obligations arising under this Agreement.  Each Releasor acknowledges that such Releasor is aware that Releasor may later discover facts in addition to or different from those which such Releasor now knows or believes to be true with respect to the subject matter of Section 35, but it is each Releasor's intention to fully and finally forever settle and release any and all matters, disputes and differences, known and unknown, suspected and unsuspected, which now exist, may later exist, or may previously have existed between any of the Releasors and any of the Releasees arising from, connected with or relating to the Original Factoring Documents.  The releases given in Section 35 shall be and remains in effect as a full and complete release notwithstanding discovery or existence of any such additional or different facts.  Each Releasor waives any protections afforded by any statute or law in any jurisdiction whose purpose substance, or effect is to provide that a general release shall not extend to claims, material or otherwise, which the person giving the release does not know of or suspect to exist at the time of executing the release.

30. The terms of the DIP Factoring Agreement are fair and reasonable considering the Debtors' credit history and situation. The Debtors have sought alternate funding on better terms but have been unsuccessful.

31. In accordance with section 364(c) of the Bankruptcy Code, the Debtors represent that they are unable to obtain credit for operations on an (a) unsecured basis; (b) on the basis of a general administrative claim; or (c) on any basis more favorable to the Debtors than proposed in this Motion, and that after diligent efforts the Debtors are unable to obtain credit from any other source.

32. As noted, the Debtors have requested that (i) FBSF extend post-petition credit secured by a super priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, (ii) liens, pursuant to sections 364(c)(1), (2) and/or (3) of the Bankruptcy Code, to finance the Debtors' post-petition operations in accordance with the DIP Factoring Agreement and (iii) a lien under section 364(d)(1) of the Bankruptcy Code with priority over the liens of all parties, existing as of the Petition Date (excepting the equipment or machinery to which FBSF has expressly agreed to subordinate its interests).

33. FBSF's liens and security interests pursuant to sections 364(c)(1), (2) and (3) of the Bankruptcy Code to secure repayment of all sums and/or advances shall attach to and be perfected against all of the Debtors' assets upon the entry of an Order approving this Motion.

34. The statutory requirement for obtaining post-petition credit under section 364(c)(2) of the Bankruptcy Code is a finding, made after notice and hearing, that the Debtors are "unable to obtain unsecured credit allowable under § 503(b)(1) of the [Bankruptcy Code]." Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit under Section 364(a) of the Bankruptcy Code, or unsecured credit allowable as an ordinary

56696061.5

administrative claim. *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under § 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

35. Courts have articulated a three-prong test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code, namely that:

a. The Debtors are unable to obtain financing by other means i.e., by allowing a lender only an administrative claim;

b. The financing is necessary to preserve the assets of the estate; and

c. The terms of the financing are fair, reasonable, and adequate, given the circumstances by the Debtor-Borrower and the proposed Lender.

11 U.S.C. § 364(c).

33. A loan of the type and magnitude needed in this case could not have been obtained on an unsecured basis. Under these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v Shenandoah Federal Sav. and Loan Ass'n. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

34. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. *Id.*; *see also In re Plabell Rubber Prods. Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the Debtor, "it would be unrealistic and unnecessary to require [the Debtor] to conduct an exhaustive search for financing." *In re Ski Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988)), *affd sub nom. Anchor Sav. Bank TSB v. Sky Valley*, 99 B.R. 117, 120 N.4 (N.D. Ga. 1989). The Debtors' prepetition factoring arrangement meant that other types of lenders would be unlikely to offer sufficient credit to fund this case.

Thus, the evidence introduced at the hearing will satisfy the requirement of section 364(c) of the Bankruptcy Code that unsecured credit was unavailable to the Debtors.

35. Authorization to enter into and perform on the DIP Factoring Agreement is necessary to continue the Debtors' operations, pay employees' wages and benefits, and allow the Debtors to continue operations. Without approval of the DIP Factoring Agreement, the Debtors would be unable to obtain sufficient funds to ensure the viability of their businesses.

36. The DIP Factoring Agreement will allow the Debtors to continue operations of the Debtors' businesses. Without the DIP Factoring Agreement, the Debtors' efforts would be hampered, and the value of their assets diminished.

37. The Debtors have negotiated the terms of the DIP Factoring Agreement with the FBSF at arm's length and in good faith (as that term is defined in section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel. Such negotiations were extensive and time-consuming and involved a lively "give and take" between the Debtors and the Purchaser.

38. After appropriate investigation and analysis and given the exigencies of the circumstances, the Debtors' management has concluded that the DIP Factoring Agreement is the only viable alternative available in the circumstances of this case. Bankruptcy courts routinely defer to the Debtors' business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil, St. P. & Pac. Ry* 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D.Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private

13

control of administration of the estate, and threaten the court's ability to control a case impartially."
*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

38. The Motion also requires that the Purchaser receive a first priority position under and pursuant to section 364(d)(1) in the assets of the Debtors (subject to certain subordinated exceptions). The Debtors request that the Order entered herein specifically provide that the Junior Lienholder's liens be subordinated to the lien(s) associated with the DIP Factoring Agreement.

39. The Debtors believe that the request to obtain post-petition credit secured by a priming lien on all of the Debtor's assets that is first in priority as to all other creditors (again, subject to certain subordinated exceptions), is proper, reasonable, and necessary to continue the Debtors' business.

40. No additional financing statements or mortgages shall be required to be filed to perfect the post-petition super priority administrative claim, liens, and security interests granted to FBFS under this Motion. However, should FBFS elect to file or record financing statements, financing agreements or other documents, the Debtors request Court permission to do so and also requests modification of the automatic stay pursuant to section 362 of the Bankruptcy Code to allow for the recording of the same.

41. The granting of the super-priority administrative claims, security interests, and liens to Purchaser will enable Purchaser to provide post-petition financing to the Debtors through the DIP Factoring Agreement, and in turn permit the Debtors to continue operations.

42. Approval of the Debtors' request to obtain post-petition credit from FBSF secured by the requested liens in the Debtors' assets, is in the best interest of the Debtors and creditors of the estate.

43. The terms and provisions described herein, including the DIP Factoring Agreement and the provisions of the proposed Order, are fair and reasonable, and were negotiated by the parties in good faith and at arm's length. Consequently, the Debtor requests that the Court find that any sums exchanged or advances made by FBSF pursuant to the DIP Factoring Agreement are provided in good faith for the purposes of section 364(e) of the Bankruptcy Code.

44. It is well settled that adequate protection must be applied in light of the peculiar facts of each case and upon any equitable considerations arising therefrom. Although the Bankruptcy Code does not specifically define "adequate protection," section 361 of the Bankruptcy Code provides for three, nonexclusive forms of adequate protection, which are: (1) periodic cash payment; (2) additional or replacement liens; and (3) the "indubitable equivalent" of the secured creditor's interest in the property. 11 U.S.C. § 361. *See Rocco v. J.P. Morgan, (In re: Joseph Rocco)*, 319 B.R. 4 11, 418 (Bankr. W.D. Pa. 2005), *citing In re Swedeland Development Group, Inc.*, 16 F.3d 552 (3d Cir. 1994); *In re Stoney Creek Techs., LLC*, 364 B.R. 882, 890 (Bankr. E.D. Pa. 2007) (same). "Adequate protection is provided to ensure that a secured creditor receives the value of its bargain." *In re Rocco*, 319 B.R. at 418. What constitutes the appropriate "value" is to be determined by the court on a case by case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987).

45. "Since 'value' is the linchpin of adequate protection and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact." Id. *See also, In re Ritz Carlton*, 98 B.R. 170, 173 (Bankr. S.D.N.Y. 1989).

46. The Junior Lienholders will be protected by periodic cash payments consistent with the underlying loan terms.

47. The issue of adequate protection is measured by an analysis of all the relevant facts, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the debtor's affairs by means of a plan. Here, there is no indication that the value of the collateral is decreasing. As shown by the budget attached hereto, the Debtors submit that they can operate profitably once their current issues are addressed in this reorganization. The Debtors submit that the liens of the Junior Lienholders are adequately protected, both legally and practically, during the pendency of this case.

48. The Debtors have exercised sound business judgment in determining that the DIP Factoring Agreement is appropriate and has satisfied the necessary legal prerequisites. The terms are fair and reasonable and are in the best interests of the Debtors' estate.

49. As set forth more fully in the proposed Order, the DIP Factoring Agreement contemplates a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code to the extent necessary to permit FBSF to implement the terms and conditions of the DIP Factoring Agreement. The Court accordingly should modify the automatic stay to the extent necessary to perform the DIP Factoring Agreement's terms.

**B.    Authorization to Use Cash Collateral and Provide Adequate Protection**

50. Section 363(c) of the Bankruptcy Code allows a debtor to use, sell, or lease cash collateral if each entity that has an interest in cash collateral consents, or the Court authorizes the use. See, 11 U.S.C. §363(c)(2).

51. The Debtors have concluded from their review of FBSF's UCC-1 filing that it appears to have been properly perfected and that its "all asset" terms extend to the proceeds of the Prepetition Collateral.

52. In order to adequately protect the Purchaser during the period of the interim use of Cash Collateral, the Debtors will offer replacement liens to FBSF, in and to the same extent as existed prior to the Petition Date.

53. Pursuant to section 361(2) of the Bankruptcy Code, the providing of a replacement lien can constitute adequate protection.

54. In this case, the granting of replacement liens will provide adequate protection of the Purchaser's asserted security interest in Cash Collateral, while at the same time allowing the Debtors to continue to operate their businesses.

55. The budget attached hereto lists the Debtors' expected expenses and revenues. It should be noted, however, that the budget makes certain assumptions about the Debtors' ability to obtain a loan as well as future expenses to be incurred by the Debtors and the professionals retained in the case by the Debtors, or others.

56. In order to maintain the Debtors' operations, the Debtors require the use of Cash Collateral for the payment of expenses as more specifically set forth in the Budget. Through the payment of the above-referenced expenses, the Debtor will not only be able to maintain the status quo, but also to facilitate its reorganization and enhance the Prepetition Collateral.

57. As discussed above, the Junior Lienholders may assert some lien interest in the Cash Collateral, but that interest is sufficiently protected by ordinary contractual payments funded via the DIP Factoring Agreement.

58. The Debtors must pay their vendors and employees in order to achieve success in these chapter 11 cases. The continued use of Cash Collateral will allow the Debtors to continue operating so that the Debtors can propose a plan of reorganization to address claims of creditors.

59. Approval of the Debtors' request to use Cash Collateral on both an interim and then final basis is in the best interest of the Debtors and creditors of the estate.

60. Unless the Debtors can continue to operate their businesses, they will be unable to reorganize and enhance the value of the Prepetition Collateral, to the detriment of the Debtors and their creditors.

61. Neither the Debtors' use of Cash Collateral nor any payments that may be authorized by the Court to any creditor asserting a security interest shall constitute a waiver by such creditor or the Debtors or any other party in interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of such creditor's security interest.

62. Accordingly, the Debtors believe, and therefore aver, that they should be permitted to use Cash Collateral in the ordinary course of operations.

    **C.**    **Request for Waiver of the Application of Rules 4001, 6003, 6004**

63. In accordance with Bankruptcy Rule 4001(b)(2), the Debtors request that the use of Cash Collateral be approved, on an interim basis, to prevent irreparable harm to the Debtors, with final approval be granted at a subsequent hearing upon further notice to parties in interest.

64. In accordance with Bankruptcy Rule 4001(b)(2), the Debtors request that the final hearing on this Motion be scheduled so that at least fifteen (15) days' notice is provided to parties in interest.

65. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b).

66. The Debtors require interim access to the funds provided under the DIP Factoring Agreement and authorization to use Cash Collateral to pay ongoing expenses, and to pay wages, maintain insurance, and other first-day matters discussed in contemporaneously-filed first day motions.

67. Disruptions regarding these pre-and-post-petition costs and expenses could severely prejudice the Debtors' chance for reorganization, cause the Debtors to violate state law or applicable U.S. Trustee guidelines, harm the Debtors' ability to retain employees, and expose the Debtors to risks from uninsured liabilities.

68. Late payments could frustrate the Debtors' relationships with employees and cause other severe and irreparable disruptions to the Debtors' Businesses which would have a negative impact on all parties-in-interest. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

69. To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

WHEREFORE, the Debtors request that this Court enter an Order in the form attached hereto (i) approving the proposed secured and super priority post-petition financing on an interim basis, (ii) approving the use of Cash Collateral on an interim basis, (iii) granting relief from the automatic stay for cause (iv) waiving the application of Rules 4001, 6003, 6004 and (v) granting such other and further relief as this Court deems just.

Dated: November 16, 2025                     **SAUL EWING LLP**

                                             By:/s/ *Turner N. Falk*

19

56696061.5

Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:stephen.ravin@saul.com
　　　　turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*