| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** *Caption in Compliance with D.N.J. LBR 9004-1(b)* **SAUL EWING LLP** Stephen B. Ravin, Esquire Turner N. Falk, Esquire One Riverfront Plaza 1037 Raymond Blvd., Suite 1520 Newark, NJ 07102-5426 Telephone: (973) 286-6714 E-mail:  stephen.ravin@saul.com          turner.falk@saul.com *Proposed Counsel to the Debtors and Debtors in Possession* | |
| In re: PORT ELIZABETH TERMINAL & WAREHOUSE CORP., Debtor. Tax I.D. No. 22-2056485 | Chapter 11 Case No. 25-22123 (JKS) (Joint Administration Requested) |
| In re: P. JUDGE & SONS, INC., Debtor. Tax I.D. No. 11-1953713 | Chapter 11 Case No. 25-22127 (JKS) (Joint Administration Requested) |
| In re: AMEX SHIPPING AGENT, INC., Debtor. Tax I.D. No. 22-2014699 | Chapter 11 Case No. 25-22129 (JKS) (Joint Administration Requested) |
| In re: THE JUDGE ORGANIZATION, LLC, Debtor. Tax I.D. No. 45-4018267 | Chapter 11 Case No. 25-22130 (JKS) (Joint Administration Requested) |
| In re: P. JUDGE & SONS TRUCKING, LLC, Debtor. | Chapter 11 Case No. 25-22131 (JKS) |

56696061.5

| | |
|---|---|
| Tax I.D. No. 30-0709853 <br> In re: <br><br> JUDGE WAREHOUSING, LLC, <br><br> Debtor. <br> Tax I.D. No. 37-1656690 | (Joint Administration Requested) <br><br> Chapter 11 <br><br> Case No. 25-22132 (JKS) <br><br> (Joint Administration Requested) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, (V) <u>SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages numbered three (3) through thirteen (13) is

**<u>ORDERED.</u>**

56696061.5

Upon the Motion (the "**DIP Motion**")[1] of the Debtors, pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (the "**Bankruptcy Rules**"), seeking entry of interim and final orders granting the following relief:

**(I)    Interim DIP Financing**

(A)    Authorizing the Debtors to enter into the DIP Factoring Agreement, substantially in the form as filed with the Court, by and among the Debtors, as Sellers and First Business Specialty Finance, LLC for general operating and working capital purposes, including the payment of postposition obligations, and certain pre-petition priority wage and tax obligations as authorized by the court pursuant to Debtor's First Day Motions.

(B)    Authorizing the Debtors to enter into the DIP Factoring Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Lender, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto.

(C)    Granting the Purchaser the following liens (as defined in section 101 (37) of the Bankruptcy Code) (the "**DIP Liens**") and claims:

(i)    first priority priming, valid, perfected, and enforceable liens, in and upon all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing.

---

[1] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Motion and/or the Loan Agreement (as defined below), as the context makes applicable.

23

      (ii)    allowed superpriority administrative claim status in respect of all obligations under the DIP Factoring Agreement (collectively, the "**DIP Obligations**").

**(II)**      **Interim Use of Cash Collateral** – Authorizing the Debtors' use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code ("**Cash Collateral**")) on an interim basis;

**(III)**      **Modifying the Automatic Stay** - Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Factoring Agreement and this Interim Order;

**(IV)**      **Waiving Any Applicable Stay** - Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order; and

**(V)**      **Final Hearing** - Scheduling a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the First Day Declaration, which was filed contemporaneously with the DIP Motion; and this Court having reviewed the DIP Motion and held a hearing with respect to the DIP Motion (the "**Interim Hearing**"); and upon the DIP Motion, the First Day Declaration, and the record of the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.**      **Procedural Findings of Fact**

     **A.**      **Petition Date**. On November 14, 2025 (the "***Petition Date***"), the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as a debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.    Jurisdiction and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

**C.    Statutory Predicates**. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.

**D.    Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors to certain parties-in-interest, including: (i) the Office of the United States Trustee (the "**U.S. Trustee**"); (ii) those creditors holding the thirty (20) largest unsecured claims against the Debtors' estates; (iii) counsel to the Purchaser; and (iv) all other known secured creditors of record, and no other or further notice need be given.

**II.    Findings Regarding the Post-Petition Financing.**

**E.    Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds via the DIP Factoring Agreement and use of Cash Collateral in order to fund working capital, continue operations, pay administrative expenses of the Debtors incurred in these Chapter 11 Cases, and to administer and preserve the value of its estate for the benefit of its various stakeholders. The ability of the Debtors to finance operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the Purchaser and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, its estate and its stakeholders.

  F. **No Credit Available on More Favorable Terms**. As set forth in the DIP Motion, the Debtors have been unable to obtain any of the following:

  (1) unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

  (2) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

  (3) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or

  (4) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien,

in each case, on more favorable terms and conditions than those provided in the DIP Factoring Agreement and this Interim Order. The Debtors are unable to obtain credit from FBSF without granting to FBSF the protections in the DIP Factoring Agreement, the DIP Motion and this Interim Order.

  G. **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code**. The extension of credit and/or the purchases and sales called for under the DIP Factoring Agreement, and the fees paid and to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Factoring Agreement was negotiated in good faith and at arms' length between the Debtors and the Purchaser, and the use of the proceeds to be extended under the DIP Factoring Agreement will be so extended in good faith, and for valid business purposes and uses, as a consequence of which FBSF is each entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

  I. **Relief Essential; Best Interest**. The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation

of the Debtor's business, the management and preservation of the Debtors' assets during the Interim Period, and to avoid irreparable harm. It is in the best interest of the Debtors estate that the Debtors be authorized to enter the DIP Factoring Agreement, and to use Cash Collateral, in each case as provided in this Interim Order. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

    A.    **Approval of Entry into the DIP Factoring Agreement**

    1.    **Interim Financing Approved**. The Motion is granted on an interim basis as set forth herein. The Debtors are hereby authorized enter into the DIP Factoring Agreement, to factor its invoices and perform thereunder, and to immediately incur obligations under the DIP Factoring Agreement, during the period from the date hereof through and including the date on which the final hearing on the Motion (the "Final Hearing") is actually concluded (the "Interim Financing Period"), and on the terms and subject to the conditions set forth in the DIP Factoring Agreement, and this Interim Order, on an interim basis.

    2.    **Authorization of the DIP Factoring Agreement**. In furtherance of the foregoing and without further order of this Court, the Debtors are authorized and empowered to perform all acts and execute and deliver all instruments and documents that the Purchaser determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Factoring Agreement, including without limitation, the execution, delivery and performance of formal documentation of the DIP Factoring Agreement consistent with the terms of the DIP Factoring Agreement and this Interim Order, and any subsequently executed documents ancillary thereto (the "DIP Factoring Documents").

27

3. **Binding and Non-Voidable Obligations**. The Debtors' obligations in connection with the DIP Factoring Agreement and interest thereon, together with all other obligations under the arrangement, and all fees, costs, expenses, indebtedness, and liabilities of the Debtors to FBSF under the DIP Factoring Agreement, and this Interim Order are hereinafter referred to as the "Obligations." Upon entry of this Interim Order, the Obligations shall constitute valid and binding obligations of the Debtors' estates, enforceable against the estates, in accordance with the terms of this Interim Order, and the DIP Factoring Agreement. No obligation, payment, transfer, or grant of security by the Debtors' estates in connection with the DIP Factoring Agreement or this Order shall be stayed, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

4. **Liens**. In order to secure the Obligations, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, mortgages, or other similar documents, or the possession or control by the Purchaser of any property, the Purchaser is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected, first priority security interests in and liens (collectively, the "Liens") on all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the

foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing (the "Collateral"), and the proceeds of the Collateral, with priority over all existing liens. Subject to, and upon entry of, the Final Order, the Collateral shall include the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code.

5. **Perfection of Liens**. All Liens are, valid, enforceable and perfected, effective as of the date of this Order and (notwithstanding any provisions of any agreement, instrument, document, or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection. The Purchaser is hereby authorized, but not required, to file or record mortgages, notices of lien, UCC-1 financing statements or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Liens granted to it hereunder. Regardless of whether the Purchaser shall, in its sole discretion, file or record notices of lien, UCC-1 financing statements, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the Liens, such Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. A certified copy of this Order may, in the discretion of the Purchaser, be filed with or recorded in filing or recording offices in addition to or in lieu of a mortgage, notice of lien or other similar instrument, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording.

6. **Superpriority Claims**. Upon the entry of this Interim Order, the Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the chapter 11 cases (a "Superpriority Claim") for all

29

Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the chapter 11 cases, at any time existing or arising, of any kind or nature as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Any lien that is avoided or otherwise preserved for the benefit of the Debtors' estate under § 551 or any other provision of the Bankruptcy Code, and any proceeds thereof, shall be subordinate to the Superpriority Claim granted to the Purchaser.

7. **Proofs of Claim**. The Lender is not required to file proofs of claim in the chapter 11 cases or in any Successor Case on account of the Obligations and claims arising under the DIP Factoring Agreement, which are hereby deemed allowed under this Interim Order.

8. **Events of Default**. The following are Events of Default under the DIP Factoring Agreement: (a) Sellers default in the payment of any Obligations; (b) Sellers default in the performance of any covenant, condition or provision hereof or of any Other Agreement now or hereafter entered into with Purchaser, (c) any warranty or representation contained herein or in any Other Agreement proves to be false or inaccurate in any respect; (d) any Seller breaches the covenants set forth in Section 13 of the Loan Agreement; (e) any provision of the DIP Factoring Agreement shall for any reason cease to be valid or binding or enforceable against Sellers; (f) a Bankruptcy Order is entered (i) modifying any Factoring Order with the prior written consent of Purchaser; (ii) avoiding or requiring disgorgement by Purchaser of any amounts received with respect to the Obligations; (iii) or a motion or other request shall be filed with the Bankruptcy Court seeking authority to use any proceeds of any of the Collateral without the consent of Purchaser; (iv) enjoining, restraining in any way preventing Sellers from continuing to conduct all

30

or any material part of their business affairs; (g) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of their intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever; and/or (h) any guarantor of the Obligations becomes subject to any bankruptcy, insolvency or other debtor-relief proceedings.

9. **Stipulations.** Subject to entry of a Final Order, the Purchaser's liens on the Prepetition Collateral and replacement liens granted pursuant to this Motion are valid and perfected. Furthermore, notwithstanding the grant of prepetition or post-petition security interests in favor of FBSF, whether provided herein, through the DIP Factoring Agreement, or otherwise, FBSF is the purchaser and absolute owner of the eligible accounts via a true sale, such that the purchased accounts are not property of the Debtors' bankruptcy estates. The purchased accounts will be transferred to FBSF free and clear of all liens, claims, and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code.

10. **Releases.** In consideration of Purchaser entering into the DIP Factoring Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Debtor and each affiliate, subsidiary, successor and assign thereof, and each of them on their behalf and on behalf of their respective equity holders, shareholders, members, managers, officers, directors, attorneys, participants, agents, employees, successors and assigns, as applicable (collectively, the "**Releasors**" and each a "**Releasor**"), hereby forever release, discharge, and acquit Purchaser and each affiliate, subsidiary, successor and permitted assign thereof, and each of its respective equity holders, shareholders, members, officers, directors, shareholders, members, attorneys, participants, agents and employees (collectively, the "**Releasees**" and each a "**Releasee**"), of and from any and all demands, actions, causes of action, suits, damages and any and all other

claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "**Claim**" and collectively, "**Claims**") of every type, kind, nature, description, or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, at law or in equity, each as though fully set forth herein at length, to the extent that they arise out of, are connected with or relate to (a) the Pre-Petition Factoring Agreement and any agreement, instrument and document related thereto (collectively the "**Original Factoring Documents**"); (b) any guaranty executed in connection with the Obligations under the Pre-Petition Factoring Agreement and other Original Factoring Documents in favor of Releasees; (c) the Obligations owing from Judge Sellers to Purchaser pursuant to the Pre-Petition Factoring Agreement; (d) any Obligations owing by any Releasor to any Releasee pursuant to the Pre-Petition Factoring Agreement; (e) any guaranteed obligations under the Pre-Petition Factoring Agreement; or (f) any other arrangement or relationship between any Releasor, on the one hand, and any Releasee, on the other hand in relation to the Original Factoring Documents, *provided, however*, that nothing in this paragraph shall release Purchaser from its obligations arising under this Agreement.  Each Releasor acknowledges that such Releasor is aware that Releasor may later discover facts in addition to or different from those which such Releasor now knows or believes to be true with respect to the subject matter of Section 35 of the Loan Agreement, but it is each Releasor's intention to fully and finally forever settle and release any and all matters, disputes and differences, known and unknown, suspected and unsuspected, which now exist, may later exist, or may previously have existed between any of the Releasors and any of the Releasees arising from, connected with or relating to the Original Factoring Documents.  The releases given in Section 35 shall be and remains in effect as a full and

32

complete release notwithstanding discovery or existence of any such additional or different facts. Each Releasor waives any protections afforded by any statute or law in any jurisdiction whose purpose substance, or effect is to provide that a general release shall not extend to claims, material or otherwise, which the person giving the release does not know of or suspect to exist at the time of executing the release.

B. **Adequate Protection and Authorization to Use Cash Collateral**

11. **Adequate Protection of Existing Liens**. The entry of this Interim Order constitutes a finding that holders of Junior Liens are adequately protected.

12. **Authorization to Use Cash Collateral**. The Debtors are authorized to use Cash Collateral on an interim basis, consistent with the terms of this Interim Order and the Loan Agreement.

C. **Modification of Automatic Stay**.

13. The automatic stay provisions of section 362(a) of the Bankruptcy Code are hereby modified to the extent necessary to permit: (a) the Purchaser to receive, and to take any actions necessary to receive, payment directly from the party responsible for making payment against an invoice that has been sold to FBSF (regardless of whether the invoice was sold or created before or after the date that the Debtors commenced the Chapter 11 cases); (b) the Purchaser to—in its sole discretion—file any financing statements, mortgages, security agreements, or other instruments and documents, if any, evidencing its security interests in and Liens on the Collateral; and (c) the Debtors to pay, and the Purchaser to charge, any costs, fees, and/or expenses including, without limitation, filing and recording fees, commitment fees, origination fees, processing fees, financing fees, and reasonable legal fees and expenses, accruing or arising pursuant to the DIP Factoring Agreement and/or the Pre-Petition Factoring Agreement (regardless of whether such fees

are derived from invoices that were sold or created before or after the date Debtors commenced the Chapter 11 cases).

D. **Inconsistency**

14. In the event of any inconsistency between the terms and conditions of the DIP Factoring Agreement, and this Interim Order, the provisions of this Interim Order shall govern and control.

E. **Enforceability**

15. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable on the Petition Date immediately upon execution hereof.

F. **Waiver of Any Applicable Stay**

16. Any applicable stay (including, without limitation, under Bankruptcy Rules 4001, 6003 or 6004(h)) is hereby waived and shall not apply to this Interim Order.

G. **Retention of Jurisdiction**

17. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

H. **FINAL HEARING**

18. The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2025, at _____, prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2025: (A) Office of the United States Trustee for the District of New Jersey, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov), One Newark Center, Suite 2100, Newark, NJ 07102;

34

(B) Debtors' proposed counsel Saul Ewing LLP, One Riverfront Plaza, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102 (Attn: Stephen B. Ravin) (Email: Stephen.ravin@saul.com); (C) all secured creditors; (D) if any statutory committee has been appointed in these Chapter 11 Cases, counsel to such committee.

35