**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-1(b)*
**SAUL EWING LLP**
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:   stephen.ravin@saul.com
              turner.falk@saul.com

*Counsel to the Debtors and Debtors in Possession*

Order Filed on December 19, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

PORT ELIZABETH TERMINAL & WAREHOUSE
CORP., *et al.*,

Debtors.[1]

Chapter 11

Case No. 25-22123 (JKS)

(Jointly Administered)

**SECOND INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through twenty-three (23),

is **ORDERED.**

**DATED: December 19, 2025**

_____
Honorable John K. Sherwood
United States Bankruptcy Court

---

[1]    The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

Upon the Motion (the "**DIP Motion**")[2] of the Debtors, pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (the "**Bankruptcy Rules**"), seeking entry of interim and final orders granting the following relief:

**(I)    Interim DIP Financing**

    (A)    Authorizing the Debtors to enter into the DIP Factoring Agreement, substantially in the form as filed with the Court, by and among the Debtors, as Sellers, and First Business Specialty Finance, LLC, as Purchaser ("**Purchaser**"), for general operating and working capital purposes, including the payment of postposition obligations, and certain pre-petition priority wage and tax obligations as authorized by the Court pursuant to Debtors' First Day Motions.

    (B)    Authorizing the Debtors to enter into the DIP Factoring Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Purchaser, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto.

    (C)    Granting the Purchaser the following liens (as defined in section 101 (37) of the Bankruptcy Code) (the "**DIP Liens**") and claims:

        (i)    first priority priming, valid, perfected, and enforceable liens (except with respect to the Carve-Out (as defined below)), in and upon all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to

---

[2] Capitalized terms used in this Second Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Motion and/or the DIP Factoring Agreement (as defined below), as the context makes applicable.

any of the foregoing, and, for the avoidance of doubt, while this second interim order is in effect, the Purchaser is not granted a security interest or lien on causes of action arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

(i)   allowed superpriority administrative claim status in respect of all obligations under the DIP Factoring Agreement (collectively, the "**Obligations**"), subject to the Carve-Out.

**(II)   Interim Use of Cash Collateral -** Authorizing the Debtors' use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code ("**Cash Collateral**")) on an interim basis;

**(III)   Modifying the Automatic Stay -** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Factoring Agreement and the Interim Orders (as defined below);

**(IV)   Waiving Any Applicable Stay -** Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of the Interim Orders; and

**(V)   Final Hearing -** Scheduling a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the First Day Declaration, which was filed contemporaneously with the DIP Motion; and this Court having reviewed the DIP Motion and having held interim hearings with respect to the DIP Motion on November 19, 2025 (the "**First Interim Hearing**") and on December 18, 2025 (the "**Second Interim Hearing**" and, together with the First Interim Hearing, the "**Interim Hearings**"); and this Court having entered the first interim order on the DIP Motion (the "**First Interim Order**") [ECF No. 41] and upon the DIP Motion, the First Day Declaration, the record of the Interim Hearings; and all objections, if any, to the entry of this second interim order (the "**Second Interim Order**" and, together with the First Interim Order, the "**Interim Orders**") having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

3

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW:**

**I.**     <u>**Procedural Findings of Fact**</u>

    **A.**     **Petition Date**. On November 14, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

    **B.**     **Jurisdiction and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

    **C.**     **Statutory Predicates**. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.

    **D.**     **Committee Formation**. On December 5, 2025, the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**").

    **E.**     **Interim Order**. On November 19, 2025, the Court entered the First Interim Order, pursuant to which the Debtors were authorized to, among other things, factor and sell its invoices/accounts to Purchaser on an interim basis in accordance with the terms of the First Interim Order.

**F.** **Notice**. The Interim Hearings were held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion was provided by the Debtors to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; (iii) counsel to the Purchaser; and (iv) all other known secured creditors of record, and no other or further notice need be given.

**II.** **Findings Regarding the Post-Petition Financing**.

**G.** **Need for Post-Petition Financing**. The Debtors represent that an immediate need exists for the Debtors to obtain funds via the DIP Factoring Agreement and use of Cash Collateral in order to fund working capital, continue operations, pay administrative expenses of the Debtors incurred in these Chapter 11 Cases, and to administer and preserve the value of its estate for the benefit of its various stakeholders, as set forth in the budget attached as **Exhibit 1** to this Second Interim Order (the "**Budget**"). The ability of the Debtors to finance operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the Purchaser and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, its estate and its stakeholders.

**H.** **No Credit Available on More Favorable Terms**. The Debtors represent that, as set forth in the DIP Motion, the Debtors have been unable to obtain any of the following:

(1) unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or

(4) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien,

5

in each case, on more favorable terms and conditions than those provided in the DIP Factoring Agreement and the Interim Orders. The Debtors represent that they are unable to obtain credit from Purchaser without granting to Purchaser the protections in the DIP Factoring Agreement, the DIP Motion and the Interim Orders, including the reinstatement of the Prepetition Obligations.

**I.** **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code**. The extension of credit and/or the purchases and sales called for under the DIP Factoring Agreement, and the fees paid and to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Factoring Agreement was negotiated in good faith and at arms' length between the Debtors and the Purchaser, and the use of the proceeds to be extended under the DIP Factoring Agreement will be so extended in good faith, and for valid business purposes and uses, as a consequence of which Purchaser is each entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

**J.** **Relief Essential**. The relief requested in the DIP Motion (and as provided in the Interim Orders) is necessary, essential and appropriate for the continued operation of the Debtors' business, the management and preservation of the Debtors' assets during the Second Interim Financing Period (as defined below), and to avoid irreparable harm. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

**A.** **Approval of Entry into the DIP Factoring Agreement**

6

1.    **Interim Financing Approved**. The Motion was, by the First Interim Order, and hereby pursuant this Second Interim Order, granted on an interim basis to the extent set forth herein. The Debtors were, by the First Interim Order, and are, by this Second Interim Order, expressly authorized to enter into the DIP Factoring Agreement, to factor and sell its invoices/accounts and perform thereunder, and to immediately incur obligations under the DIP Factoring Agreement, during the period from the date hereof through and including the date on which the final hearing on the Motion (the "Final Hearing") is actually concluded (the "Second Interim Financing Period"), and on the terms and subject to the conditions set forth in the DIP Factoring Agreement and the Interim Orders, on an interim basis.

2.    **Authorization of the DIP Factoring Agreement**. In furtherance of the foregoing and without further order of this Court, the Debtors are authorized and empowered to perform all acts and execute and deliver all instruments and documents that the Purchaser determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Factoring Agreement, including without limitation, the execution, delivery and performance of formal documentation of the DIP Factoring Agreement consistent with the terms of the DIP Factoring Agreement, and the Interim Orders, and any subsequently executed documents ancillary thereto (the "DIP Factoring Documents").

3.    **Binding and Non-Voidable Obligations**. The Debtors' obligations in connection with the DIP Factoring Agreement and interest thereon, together with all other obligations under the arrangement, and all fees, costs, expenses, indebtedness, and liabilities of the Debtors to Purchaser under the DIP Factoring Agreement and the Interim Orders are hereinafter referred to as the "Obligations." Upon entry of the Interim Orders, the Obligations shall constitute valid and binding obligations of the Debtors' estates, enforceable against the estates, in accordance with the

7

terms of the Interim Orders and the DIP Factoring Agreement. No obligation, payment, transfer, or grant of security by the Debtors' estates in connection with the DIP Factoring Agreement or the Interim Orders shall be stayed, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim, subject to Paragraph 6 of this Second Interim Order.

4.    **Liens**. In order to secure the Obligations, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, effective and perfected upon the entry of the First Interim Order, as modified by this Second Interim Order, and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, mortgages, or other similar documents, or the possession or control by the Purchaser of any property, the Purchaser is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected, first priority security interests in and liens (collectively, the "Liens") on all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing (the "Collateral"), and the proceeds of the Collateral, with priority over all existing liens, and, for the avoidance of doubt, while this Second Interim Order is

8

in effect, the Purchaser is not granted a security interest or lien on causes of action arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

5. **Perfection of Liens**. All Liens are valid, enforceable and perfected, effective as of the date of the First Interim Order, as modified by this Second Interim Order, and (notwithstanding any provisions of any agreement, instrument, document, or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection. The Purchaser is hereby authorized, but not required, to file or record mortgages, notices of lien, UCC-1 financing statements or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Liens granted to it hereunder. Regardless of whether the Purchaser shall, in its sole discretion, file or record notices of lien, UCC-1 financing statements, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the Liens, such Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. A certified copy of the Interim Orders may, in the discretion of the Purchaser, be filed with or recorded in filing or recording offices in addition to or in lieu of a mortgage, notice of lien or other similar instrument, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Orders for filing and recording.

6. **Effect of Stipulations, Admissions, Agreements and Releases on Third Parties**. (a) The Debtors' stipulations, admissions, agreements and releases set forth in the Interim Orders (collectively, the "**Debtors' Stipulations**") shall be binding upon the Debtors and any successor thereto immediately upon entry of this Second Interim Order. The Debtors' Stipulations contained in the Interim Orders shall be binding upon all parties-in-interest, including, without limitation, the Creditors' Committee and any other person or entity acting or seeking to act on behalf of the

9

Debtors' estates, including any chapter 7 or chapter 11 trustee, in all circumstances and for all purposes, unless the Creditors' Committee or such other party-in-interest: (i) to the extent required under applicable law, prior to expiration of the Challenge Period (as defined below), timely files a motion seeking the requisite standing and authority to bring an adversary proceeding or contested matter for purposes of (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, nature (sale or financing) or extent of the Original Factoring Documents (*as defined infra*) and any liens or security interests in connection therewith, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against Purchaser in connection with matters relating to the Original Factoring Documents and any liens or security interests in connection therewith (a "**Challenge**"), which motion shall describe with reasonable specificity the nature and factual basis of the proposed Challenge, and such standing is granted pursuant to an order of the Court; (ii) timely and properly commences an adversary proceeding or contested matter (subject to the limitations contained herein) asserting a Challenge prior to expiration of the Challenge Period; and (iii) there is a final non-appealable order in favor of the challenging-plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.

(b)  The timely filing of a motion seeking the requisite standing and authority to file a Challenge before expiration or termination of the Challenge Period shall extend the Challenge Period with respect to that party (and only that party) until two (2) business days after the Court approves the motion seeking standing and authority, or such other time period ordered by the Court in approving said motion seeking standing and authority, provided that the Challenge Period shall immediately expire if the Court denies such motion.  In the event that a chapter 7 or chapter 11 trustee is

10

appointed prior to the end of the Challenge Period, the Challenge Period solely for such chapter 7 or chapter 11 trustee shall be extended (unless and until an order confirming a plan is entered by the Court) to the longer of: (i) the remaining Challenge Period, or (ii) a date that is twenty-one (21) calendar days following the appointment of such trustee.  The failure of any party-in-interest, including the Creditors' Committee, to obtain an order of this Court granting standing and authority to bring any Challenge prior to the expiration of the Challenge Period shall not be a defense to failing to commence an adversary proceeding or contested matter asserting such Challenge prior to expiration of the Challenge Period, as required under this Paragraph 6. In the event of a successful Challenge, the Estate shall be entitled to appropriate relief, if any, under the Bankruptcy Code and applicable law.

(c) For purposes of this Second Interim Order, the "Challenge Period" shall mean the period commencing on the date of appointment of the Creditors' Committee by the U.S. Trustee and ending on the earlier of: (i) seventy-five (75) calendar days thereafter, (ii) any later date unanimously agreed to in separate writing by the Debtors, Purchaser, and the Creditors' Committee, or (iii) any later date ordered by the Court for cause upon a motion timely filed within the Challenge Period then in effect pursuant to clauses (i) or (ii) immediately above.

(d)  If no motion seeking standing and authority (to the extent required under applicable law), adversary proceeding, or contested matter asserting a Challenge is timely and properly filed prior to expiration of the Challenge Period—or if the Court does not rule in favor of the challenging-plaintiff in any such timely commenced action—then, without further order of the Court: (i) the Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation, the Creditors' Committee; (ii) the Original Factoring Documents (*as defined infra*), including the Pre-Petition Factoring Agreement and any liens or security interests in connection therewith, and

11

the DIP Factoring Agreement, shall not be subject to any other or further Challenges by any person

or entity; and (iii) any and all Challenges, of any kind or nature whatsoever, whether under the

Bankruptcy Code, applicable non-bankruptcy law, or otherwise, against Purchaser and/or any of

Purchaser's applicable affiliates, subsidiaries, successors and permitted assigns thereof, and each

of Purchaser's respective equity holders, shareholders, officers, directors, shareholders, members,

attorneys, participants, agents and employees, shall be deemed forever waived, released and

barred.

(e) To the extent any Challenge is timely and properly asserted via an adversary proceeding or

contested matter brought in accordance with this Paragraph 6, Debtors' Stipulations shall

nonetheless remain binding and preclusive on all parties-in-interest—including, without

limitation, the Creditors' Committee—from and after the date the Challenge Period expires, except

to the extent that any of the admissions, stipulations, findings or releases contained in the Debtors'

Stipulations were expressly challenged in such adversary proceeding or contested matter (and

solely as to the challenging-plaintiff and not, for the avoidance of doubt, any other party-in-

interest).

(f)  For the avoidance of doubt, nothing in the Interim Orders vests or confers on any person or

entity, including the Creditors' Committee or any other party-in-interest, standing or authority to

pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any

request for such standing are expressly reserved.

      7.    **Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all

of the Obligations shall constitute an allowed superpriority administrative expense claim in each

of the Chapter 11 Cases (a "**Superpriority Claim**"), and, subject to the Carve-Out and, while this

Second Interim Order is in effect, excluding over the proceeds of causes of action arising under

Chapter 5 of the Bankruptcy Code, the Superpriority Claim shall (a) have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases, at any time existing or arising, of any kind or nature as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code; and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Any lien that is avoided or otherwise preserved for the benefit of the Debtors' estate under section 551 or any other provision of the Bankruptcy Code, and any proceeds thereof, shall be subordinate to the Superpriority Claim granted to the Purchaser.

8.     **Carve-Out**.  For purposes hereof, the "**Carve-Out**" shall mean the sum of: (A) all fees required to be paid to the clerk of the Court and the U.S. Trustee without regard to the Carve-Out Trigger Notice (as defined below) ("**Statutory Fees**"); (B) reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee appointed under Bankruptcy Code section 726(b) (without regard to the Carve-Out Trigger Notice) ("**Ch. 7 Fees**"); (C) subject in all respects to the Budget, to the extent allowed, whether by interim order, procedural order or otherwise, all accrued and unpaid reasonable fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the Creditors' Committee pursuant to section 327, 328, or 363 of the Bankruptcy Code or section 156(c) of title 28 of the United States Code (collectively, the "**Professional Persons**") at any time before or on the day of transmittal by Purchaser of a Carve-Out Trigger Notice (the "**Pre-Trigger Date Budgeted Fees**"); and (D) after the transmittal by Purchaser of the Carve-Out Trigger Notice (such date of transmittal, the "**Trigger Date**"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of (1) all Professional Fees incurred by any Professional Persons retained by the Debtors after the Trigger Date and (2) the payment of Professional Fees of Professional Persons incurred by the

13

Creditors' Committee after the Trigger Date, not to exceed $100,000 in the aggregate for clauses

(1) and (2) (the amount set forth in this clause (D) being the "**Post-Trigger Date Cap**"). With

respect to the foregoing clause (C), any Professional Fees thereunder incurred in excess of the

aggregate amount permitted for such Professional Persons in the Budget (which shall be agreed in

consultation with the Creditors' Committee) shall not be included in the Carve-Out. Nothing herein

shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement

or compensation described in clauses (C) or (D) above, on any grounds. On the day on which a

Carve-Out Trigger Notice is transmitted to the Debtors, such Carve-Out Trigger Notice also shall

constitute a demand to the Debtors, and the Debtors agree, to utilize all cash on hand as of such

date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount

equal to the accrued and unpaid Pre-Trigger Date Budgeted Fees plus the Post-Trigger Date Cap,

and the Debtors shall deposit and hold any such amounts in the "**Carve-Out Reserve Account**"

(as defined below), which shall be a segregated account under the control of the Debtors' financial

advisor for such purpose and solely for the benefit of the Professional Persons entitled thereto. The

reserved funds shall be released from time to time from the segregated account to pay when due

any Pre-Trigger Date Budgeted Fees and any fees and expenses incurred after the Trigger Date

that are included in the Post-Trigger Date Cap under clause (D) above. The Carve-Out Reserve

Account and amounts therein shall be free and clear of all liens, claims and interests of any party

other than the Professional Persons entitled thereto. If the amount in the Carve-Out Reserve

Account exceeds the actual amount of fees and expenses incurred of the type described in clause

(C) and clause (D), then such excess will be paid to Purchaser and applied in accordance with the

DIP Factoring Agreement.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall

mean a written notice transmitted by electronic mail and overnight mail by Purchaser to the

Debtors (or the Debtors' counsel), the U.S. Trustee, and counsel to the Creditors' Committee, upon the occurrence and during the continuance of a Termination Event (as defined below), stating that the Post-Trigger Date Cap has been triggered.

For the avoidance of doubt, to the extent that the budgeted amounts for a Professional Person for any Budget period ending prior to the Trigger Date exceeds the actual fees and expenses incurred by such Professional for that period, such excess may be carried forwards, or backwards, to the immediately prior or subsequent payment period under the Budget (but only for periods ending prior to the Trigger Date), and be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later period(s).

For the avoidance of doubt, no portion of the Carve-Out shall apply to or be available for any fees, costs, or expenses incurred by any party, including the Debtors and/or the Creditors' Committee, in connection with the prosecution of any claims, causes of action, adversary proceedings, or other litigation against Purchaser (including against Purchaser's applicable affiliates, subsidiaries, successors and permitted assigns thereof, and each of Purchaser's respective equity holders, shareholders, officers, directors, shareholders, members, attorneys, participants, agents and employees), the DIP Factoring Agreement, and/or the Original Factoring Documents (as described *infra*), including, without limitation, challenging the claim or liens of Purchaser or seeking any recovery of any kind from Purchaser, except that the Creditors' Committee shall be permitted to use up to $30,000 to reasonably investigate the validity, perfection, or enforceability of any of Purchaser's factoring documents, liens, or security agreements.

For the avoidance of doubt, Purchaser shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection

15

with the Debtors' Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in the Interim Orders or otherwise shall be construed to obligate Purchaser, in any way, to pay compensation to, or to reimburse expenses of, any Professional Persons or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

9.    **Payments from Carve-Out**. The Debtors' financial advisor shall maintain a segregated account or accounts for the payment of allowed Pre-Trigger Date Budgeted Fees and, subject to the Post-Trigger Date Cap, Professional Fees incurred after the Trigger Date (the "**Carve-Out Reserve Account**"), which account shall be funded from the Debtors' cash receipts in accordance with the Budget on a weekly basis, in advance, until the occurrence of the Trigger Date. After the Trigger Date, the Carve-Out Reserve Account may continue to be funded, up to the Post-Trigger Date Cap. The Debtors shall pay Professional Persons Professional Fees using funds in the Carve-Out Reserve Account in compliance with the Budget, the First Interim Order, this Second Interim Order and any interim compensation procedures; provided, however, that, prior to payment in full of the Prepetition Obligations and the occurrence of the Trigger Date, to the extent that any Professional Fees that have accrued from the Petition Date through and including the Trigger Date are less than the amounts funded into the Carve-Out Reserve Account, the excess amounts in the Carve-Out Reserve Account shall be (A) first, applied to fund the Post-Trigger Date Cap; (B) second, remitted to Purchaser to apply to reduce the Obligations.

10.    **Proofs of Claim**. The Purchaser is not required to file proofs of claim in the Chapter 11 cases or in any successor case on account of the Obligations and claims arising under the DIP Factoring Agreement, which are hereby deemed allowed under the Interim Orders.

16

11.     **Reporting**. On the Friday of each week during the Second Interim Financing Period, the Debtors shall deliver a reconciliation report (the "**Variance Report**") to counsel to the Creditors' Committee, in a form reasonably satisfactory to the Creditors' Committee, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior week (the "**Testing Period**"). The Variance Report will include (i) the variance (as compared to the Budget) of actual cash receipts of the Debtors for the Testing Period, (ii) the variance (as compared to the Budget) of the operating disbursements made by the Debtors set forth in the Budget for the Testing Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in the Variance Report.

12.     **Events of Default**.   The following are Events of Default under the DIP Factoring Agreement and shall constitute a "**Termination Event**":  (a) Sellers default in the payment of any Obligations; (b) Sellers default in the performance of any covenant, condition or provision hereof or of any Other Agreement now or hereafter entered into with Purchaser, (c) any warranty or representation contained herein or in any Other Agreement proves to be false or inaccurate in any respect; (d) any Seller breaches the covenants set forth in Section 13 of the DIP Factoring Agreement; (e) any provision of the DIP Factoring Agreement shall for any reason cease to be valid or binding or enforceable against Sellers; (f) a Bankruptcy Order is entered (i) modifying any Factoring Order without the prior written consent of Purchaser; (ii) avoiding or requiring disgorgement by Purchaser of any amounts received with respect to the Obligations; (iii) or a motion or other request shall be filed with the Bankruptcy Court seeking authority to use any proceeds of any of the Collateral without the consent of Purchaser; (iv) enjoining, restraining in any way, or preventing Sellers from continuing to conduct all or any material part of their business affairs; (g) any such guarantor fails to perform or observe any of such guarantor's obligations to

17

Purchaser or shall notify Purchaser of their intention to rescind, modify, terminate or revoke any

guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any

reason whatever; and/or (h) any guarantor of the Obligations becomes subject to any bankruptcy,

insolvency or other debtor-relief proceedings.

      13.    **Remedies Upon a Termination Event**.  Upon the occurrence or during a

Termination Event, Purchaser shall send written notice by electronic mail and overnight mail (the

"**Remedies Notice**") to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S.

Trustee (the "**Remedies Notice Parties**") that a Termination Event has occurred. The Carve-Out

Trigger Notice may be included in or incorporated into the Remedies Notice, and for the avoidance

of doubt, the Carve-Out Trigger Notice, the Remedies Notice, and/or any other notice required of

Purchaser herein may be transmitted by Purchaser's counsel. Seven (7) business days following

transmittal of the Remedies Notice to the Remedies Notice Parties, the automatic stay provisions

of section 362 of the Bankruptcy Code will be vacated and modified without the need for further

Court order to permit Purchaser to exercise all rights and remedies provided for in DIP Factoring

Agreement, in the Original Factoring Documents (*as defined infra*), or under other applicable

bankruptcy or non-bankruptcy law including, without limitation: (a) the right to terminate or

suspend any of Purchaser's obligations or commitments under the DIP Factoring Agreement

and/or the Original Factoring Documents; (ii) the right to accelerate and/or declare all Obligations

to be immediately due and payable; (iii) the right to charge interest at the default rate set forth in

the DIP Factoring Agreement and/or the Original Factoring Documents (as applicable); (iv) the

right to take any actions reasonably calculated to preserve or safeguard the Collateral; and/or (v)

the right to exercise or enforce any rights against the Collateral pursuant to the DIP Factoring

Agreement, the Original Factoring Documents, the Interim Orders, or other applicable source of

right. Nothing in this paragraph precludes the Debtors and/or the Creditors' Committee from filing an emergency motion to contest the Remedies Notice and related relief.

14.    **Stipulations**. Subject to entry of a Final Order and a timely Challenge during the Challenge Period: (a) the Purchaser's liens on the Prepetition Collateral and replacement liens granted pursuant to this DIP Motion are valid and perfected; (b) notwithstanding the grant of prepetition or post-petition security interests in favor of Purchaser, whether provided herein, through the DIP Factoring Agreement, or otherwise, Purchaser is the purchaser and absolute owner of the eligible accounts/invoices via a true sale, such that the purchased accounts/invoices are not property of the Debtors' bankruptcy estates; and (c) the purchased accounts/invoices have been, or will be, transferred to Purchaser free and clear of all liens, claims, and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code.

15.    **Releases**. Subject to entry of a Final Order and a timely Challenge during the Challenge Period, in consideration of Purchaser entering into the DIP Factoring Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Debtor and each affiliate, subsidiary, successor and assign thereof, and each of them on their behalf and on behalf of their respective equity holders, shareholders, members, managers, officers, directors, attorneys, participants, agents, employees, successors and assigns, as applicable (collectively, the "**Releasors**" and each a "**Releasor**"), hereby forever release, discharge, and acquit Purchaser and each affiliate, subsidiary, successor and permitted assign thereof, and each of its respective equity holders, shareholders, officers, directors, shareholders, members, attorneys, participants, agents and employees (collectively, the "**Releasees**" and each a "**Releasee**"), of and from any and all demands, actions, causes of action, suits, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a

19

"**Claim**" and collectively, "**Claims**") of every type, kind, nature, description, or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, at law or in equity, each as though fully set forth herein at length, to the extent that they arise out of (a) the Pre-Petition Factoring Agreement and any agreement, instrument and document related thereto (collectively, the "**Original Factoring Documents**"); (b) any guaranty executed in connection with the Obligations under the Pre-Petition Factoring Agreement and other Original Factoring Documents in favor of Releasees; (c) the Obligations owing from Sellers to Purchaser pursuant to the Pre-Petition Factoring Agreement; (d) any Obligations owing by any Releasor to any Releasee pursuant to the Pre-Petition Factoring Agreement; and (e) any guaranteed obligations under the Pre-Petition Factoring Agreement; *provided, however*, that nothing in this paragraph shall release Purchaser from its obligations arising under the DIP Factoring Agreement, the Interim Orders and any Final Order.  Each Releasor acknowledges that such Releasor is aware that Releasor may later discover facts in addition to or different from those which such Releasor now knows or believes to be true with respect to the subject matter of Section 35 of the DIP Factoring Agreement, but it is each Releasor's intention to fully and finally forever settle and release any and all matters, disputes and differences, known and unknown, suspected and unsuspected, which now exist, may later exist, or may previously have existed between any of the Releasors and any of the Releasees arising from, connected with or relating to the Original Factoring Documents.  The releases given in Section 35 shall be and remain in effect as a full and complete release notwithstanding discovery or existence of any such additional or different facts.  Each Releasor waives any protections afforded by any statute or law in any jurisdiction whose purpose substance, or effect is to provide that a general

20

release shall not extend to claims, material or otherwise, which the person giving the release does not know of or suspect to exist at the time of executing the release.

**B.**    **Adequate Protection and Authorization to Use Cash Collateral**

16.    **Adequate Protection of Existing Liens**.  The entry of the Interim Orders constitute a finding that holders of Junior Liens are adequately protected.

17.    **Authorization to Use Cash Collateral**.    The Debtors are authorized to use Cash Collateral on an interim basis, consistent with the terms of the Interim Orders, the DIP Factoring Agreement and the Budget.

**C.**    **Modification of Automatic Stay**.

18.    The automatic stay provisions of section 362(a) of the Bankruptcy Code are hereby modified to the extent necessary to permit: (a) the Purchaser to receive and collect, and to take any actions necessary to receive and collect, payment directly from the party responsible for making payment against an invoice/account that has been sold to Purchaser (regardless of whether the invoice/account was sold or created before or after the date that the Debtors commenced the Chapter 11 cases); (b) the Purchaser to—in its sole discretion—file any financing statements, mortgages, security agreements, or other instruments and documents, if any, evidencing its security interests in and Liens on the Collateral; and (c) the Debtors to pay, and the Purchaser to charge, any costs, fees, and/or expenses including, without limitation, filing and recording fees, commitment fees, origination fees, processing fees, financing fees, and reasonable legal fees and expenses, accruing or arising pursuant to the DIP Factoring Agreement and/or the Pre-Petition Factoring Agreement (regardless of whether such fees are derived from invoices/accounts that were sold or created before or after the Petition Date).

**D.**    **Inconsistency**

21

19.     In the event of any inconsistency between the terms and conditions of the DIP Factoring Agreement, and the Interim Orders, the provisions of Interim Orders shall govern and control.

**E.      Enforceability**

20.     This Second Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable on the Petition Date immediately upon execution hereof.

**F.      Waiver of Any Applicable Stay**

21.     Any applicable stay (including, without limitation, under Bankruptcy Rules 4001, 6003 or 6004(h)) is hereby waived and shall not apply to this Second Interim Order.

**G.      Retention of Jurisdiction**

22.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Second Interim Order.

**H.      Interim Relief Subject to Final Order**

23.     All relief granted in the Interim Orders is subject to and effective upon entry of the Final Order granting such relief.

24.     The rights of all parties in interest to object to the entry of a Final Order are reserved.

**I.      Final Hearing**

25.     The final hearing (the "**Final Hearing**") on the DIP Motion shall be held on January 27, 2026, at 10:00 a.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the DIP Motion shall be filed with the Court, and served so as to be received by the following parties, by January 20, 2026: (A) Office of the United States Trustee for the District of

22

New Jersey, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov), One Newark Center, Suite 2100, Newark, NJ 07102; (B) Debtors' counsel Saul Ewing LLP, One Riverfront Plaza, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102 (Attn: Stephen B. Ravin) (Email: Stephen.ravin@saul.com); (C) all secured creditors; and (D) proposed counsel to the Creditors' Committee, Gibbons P.C., One Gateway Center, Newark, NJ 07102, Attn: John S. Mairo (jmairo@gibbonslaw.com), Robert K. Malone (rmalone@gibbonslaw.com), and Brett S. Theisen (btheisen@gibbonslaw.com).

26.     The Debtors shall promptly mail copies of this Second Interim Order and notice of the Final Hearing to (i) the FSBF, (ii) the U.S. Trustee, (iii) counsel to the Creditors' Committee, (iv) all secured creditors, and (v) any other entity requesting notices in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 or 9010 prior to the date of this Second Interim Order.

**EXHIBIT 1**

**Budget**

**The Judge Organization**
**Consolidated**
**3 Week Cash Flow**

| | Week 11/5-11/7 | 11/10-11/14 | 11/17-11/21 | Week 11/24-11/28 | 12/1-12/5 | 12/8-12/12 | Week 12/15-12/19 | 12/22-12/26 | 12/29-1/3 | 1/4-1/10 | 1/11-1/17 | 1/18-1/24 | 1/25-1/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash: | 180,487.00 | 258,395.91 | 188,203.02 | 366,218.43 | 374,358.72 | 319,441.94 | 368,360.29 | 370,312.80 | 250,199.00 | 347,153.54 | 250,210.17 | 211,617.54 | 205,923.66 |
| - Collections | 1,324,501.64 | 606,635.99 | 567,878.66 | 394,482.73 | 1,413,625.20 | 561,000.00 | 561,000.00 | 561,000.00 | 561,000.00 | 1,338,608.21 | 711,000.00 | 561,000.00 | 561,000.00 |
| - Sale of assets | | | | | | | | | | | | | |
| - Equity contributions | | | | | | | | | | | | | |
| - Loan proceeds | | | | | | | | | | | | | |
| Total Cash for Period | 1,504,988.64 | 865,031.90 | 756,081.68 | 760,701.16 | 1,787,983.92 | 880,441.94 | 929,360.29 | 931,312.80 | 811,199.00 | 1,685,761.75 | 961,210.17 | 772,617.54 | 766,923.66 |
| Disbursements: | | | | | | | | | | | | | |
| - Accounts Payable | 1,207,882.73 | 667,156.88 | 389,863.25 | 376,817.44 | 1,439,503.98 | 512,081.65 | 559,047.49 | 671,588.80 | 464,045.46 | 1,435,551.58 | 749,592.63 | 566,693.88 | 594,187.16 |
| - Capital Expenditures | | | | | | | | | | | | | |
| - Loan repayments | 38,710.00 | 9,672.00 | - | 9,525.00 | 29,038.00 | - | 9,525.00 | - | - | - | - | - | - |
| Total Disbursements | 1,246,592.73 | 676,828.88 | 389,863.25 | 386,342.44 | 1,468,541.98 | 512,081.65 | 559,047.49 | 681,113.80 | 464,045.46 | 1,435,551.58 | 749,592.63 | 566,693.88 | 594,187.16 |
| Ending Cash: | 258,395.91 | 188,203.02 | 366,218.43 | 374,358.72 | 319,441.94 | 368,360.29 | 370,312.80 | 250,199.00 | 347,153.54 | 250,210.17 | 211,617.54 | 205,923.66 | 172,736.50 |
| | 1,201,948.24 | 667,156.88 | 389,863.25 | 376,817.44 | 1,439,503.98 | 512,081.65 | 559,047.49 | 671,588.80 | 464,045.46 | 1,435,551.58 | 749,592.63 | 566,693.88 | 594,187.16 |

**The Judge Organization**
**Consolidated**
**Accounts Receivable Schedule**

| | Week 11/5-11/7 | 11/10-11/14 | 11/17-11/21 | Week 11/24-11/28 | 12/1-12/5 | 12/8-12/12 | Week 12/15-12/19 | 12/22-12/26 | 12/29-1/3 | 1/4-1/10 | 1/11-1/17 | 1/18-1/24 | 1/25-1/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning A/R: | 180,487.00 | 1,504,988.64 | 2,111,624.63 | 2,679,503.29 | 3,073,986.02 | 4,487,611.22 | 5,048,611.22 | 5,609,611.22 | 6,170,611.22 | 6,731,611.22 | 8,070,219.43 | 8,781,219.43 | 9,342,219.43 |
| - Revenue | | | | | | | | | | | | | |
| - (Collections) | 1,324,501.64 | 606,635.99 | 567,878.66 | 394,482.73 | 1,413,625.20 | 561,000.00 | 561,000.00 | 561,000.00 | 561,000.00 | 1,338,608.21 | 711,000.00 | 561,000.00 | 561,000.00 |
| Ending A/R: | 1,504,988.64 | 2,111,624.63 | 2,679,503.29 | 3,073,986.02 | 4,487,611.22 | 5,048,611.22 | 5,609,611.22 | 6,170,611.22 | 6,731,611.22 | 8,070,219.43 | 8,781,219.43 | 9,342,219.43 | 9,903,219.43 |

**The Judge Organization**
**Consolidated**
**Accounts Payable Schedule**

| | Week 11/5-11/7 | 11/10-11/14 | 11/17-11/21 | Week 11/24-11/28 | 12/1-12/5 | 12/8-12/12 | Week 12/15-12/19 | 12/22-12/26 | 12/29-1/3 | 1/4-1/10 | 1/11-1/17 | 1/18-1/24 | 1/25-1/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning A/P: | | 1,201,948.24 | 1,869,105.12 | 2,295,505.86 | 2,672,323.30 | 4,111,827.28 | 4,623,908.93 | 5,157,956.42 | 5,804,545.22 | 6,243,590.68 | 7,654,142.26 | 8,338,734.89 | 8,880,428.77 |
| Payroll | 162,352.08 | 160,420.65 | 159,353.25 | 173,449.43 | 186,855.59 | 171,965.00 | 171,965.00 | 171,965.00 | 171,965.00 | 171,965.00 | 171,965.00 | 171,965.00 | 171,965.00 |
| Employee Reimbursement | 12,130.14 | 4,147.89 | 5,254.09 | 4,840.00 | 22,334.63 | - | - | - | - | 10,475.94 | - | - | - |
| Insurance | 145,749.48 | 35,697.92 | - | - | 146,761.00 | 58,289.92 | 76,448.00 | 209,763.25 | - | 146,761.00 | 58,289.92 | 76,448.00 | 140,647.23 |
| Owner Operators/Outside Carriers | 189,190.15 | 196,067.84 | 195,855.00 | 172,722.00 | 175,672.62 | 198,329.00 | 193,750.00 | 193,750.00 | 193,750.00 | 193,750.00 | 193,750.00 | 193,750.00 | 193,750.00 |
| Utilities | 658.05 | - | - | - | - | 658.05 | 16,259.00 | 10,000.00 | 1,000.00 | - | 658.05 | 10,000.00 | 10,000.00 |
| IT Maintence | | | | | | | | | | | | | |
| Warehouse - Truck Expenses | 17,176.06 | 4,995.00 | 15,863.43 | 10,258.38 | 12,172.82 | 4,995.00 | - | - | 4,995.00 | - | 7,000.00 | - | 4,995.00 |
| Union 401 K | 7,000.00 | - | - | - | - | 8,000.00 | - | - | - | - | - | - | - |
| Professional fees | 83,700.41 | 47,921.00 | - | - | 3,200.00 | - | - | - | - | - | - | - | - |
| Leases | 20,123.42 | 13,920.34 | 4,655.56 | 13,753.22 | 7,670.46 | 2,070.77 | 37,605.88 | 42,066.46 | 1,737.00 | 6,889.21 | 23,566.99 | 56,511.27 | 1,664.85 |
| SGA  Other | 5,790.00 | 13,108.34 | - | - | 600.00 | 8,600.00 | 12,208.34 | 8,600.00 | 600.00 | 600.00 | 8,600.00 | 12,208.34 | 8,600.00 |
| Taxes | - | - | - | - | 1,665.64 | - | - | - | - | 1,665.64 | - | - | - |
| Rents | 462,303.69 | - | 15.00 | - | 875,244.79 | - | - | 15.00 | - | - | - | - | 10.00 |
| Supply -Service Vendor | 20,774.76 | 38,504.81 | 20.00 | - | 7,326.43 | 44,659.54 | 8,031.27 | 6,020.00 | - | 7,326.43 | 51,248.30 | 8,031.27 | 6,000.00 |
| AMEX | - | 7,373.09 | 3,473.23 | - | - | 4,514.37 | 7,780.00 | 4,409.09 | 16,147.00 | - | 4,514.37 | 7,780.00 | 4,404.09 |
| Administrative Misc. | - | - | 5,373.69 | 1,794.41 | - | 10,000.00 | 10,000.00 | - | - | 15,000.00 | 5,000.00 | - | 27,150.99 |
| UST Fees | - | - | - | - | - | - | - | - | 35,951.86 | - | - | - | - |
| Legal Retainer- Saul Ewing | 75,000.00 | 30,000.00 | - | - | - | - | - | - | 12,899.60 | - | 75,000.00 | - | - |
| Accountants Retainer- Mazars | - | 75,000.00 | - | - | - | - | - | - | - | - | 75,000.00 | - | - |
| Financial Advisor Retainer- Cambridge | - | 40,000.00 | - | - | - | - | - | - | - | - | 40,000.00 | - | - |
| UCC | - | - | - | - | - | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 |
| Ending A/P | 1,201,948.24 | 1,869,105.12 | 2,295,505.86 | 2,672,323.30 | 4,111,827.28 | 4,623,908.93 | 5,157,956.42 | 5,804,545.22 | 6,243,590.68 | 7,654,142.26 | 8,338,734.89 | 8,880,428.77 | 9,449,615.93 |
| Expenses per Week | 1,201,948.24 | 667,156.88 | 389,863.25 | 376,817.44 | 1,439,503.98 | 512,081.65 | 559,047.49 | 671,588.80 | 464,045.46 | 1,435,551.58 | 749,592.63 | 566,693.88 | 594,187.16 |

United States Bankruptcy Court
District of New Jersey

In re:                                                                    Case No. 25-22123-JKS

Port Elizabeth Terminal & Warehouse Corp                                  Chapter 11
    Debtor

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0312-2 | User: admin | Page 1 of 2 |
| Date Rcvd: Dec 19, 2025 | Form ID: pdf903 | Total Noticed: 4 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 21, 2025:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Port Elizabeth Terminal & Warehouse Corp., 13 Manor Road, East Rutherford, NJ 07073-2119 |
| aty | | Maxwell M. Hanamirian, Saul Ewing, LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102-2186 |
| aty | + | Murphy Schiller & Wilkes LLP, One Gateway Center, Suite 4200, Newark, NJ 07102-5310 |
| aty | + | Saul Ewing LLP, One Riverfront Blvd. Suite 1520, Newark, NJ 07102-5401 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 21, 2025                    Signature:             /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 19, 2025 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Amanda R Simone | on behalf of Creditor Committee Official Committee Of Unsecured Creditors amanda.r.simone@gmail.com |
| Brett S. Theisen | on behalf of Creditor Committee Official Committee Of Unsecured Creditors btheisen@gibbonslaw.com nmitchell@gibbonslaw.com |
| David Gerardi | on behalf of U.S. Trustee U.S. Trustee david.gerardi@usdoj.gov |
| David H. Stein | on behalf of Creditor F. Greek Bristol Properties  L.P. dstein@wilentz.com, ciarkowski@wilentz.com;abroome@wilentz.com |

Fran B. Steele
on behalf of U.S. Trustee U.S. Trustee Fran.B.Steele@usdoj.gov

Ilana Volkov
on behalf of Creditor Hartz Elizabeth Inc. ivolkov@mcgrailbensinger.com

John S. Mairo
on behalf of Creditor Committee Official Committee Of Unsecured Creditors jmairo@gibbonslaw.com
emunera@gibbonslaw.com

Kyle McEvilly
on behalf of Creditor Committee Official Committee Of Unsecured Creditors kmcevilly@gibbonslaw.com

Rebecca K. McDowell
on behalf of Creditor Eastern Lift Truck Co Inc. rmcdowell@slgcollect.com anovoa@slgcollect.com

Robert Malone
on behalf of Creditor Committee Official Committee Of Unsecured Creditors rmalone@gibbonslaw.com
nmitchell@gibbonslaw.com

Robert M. Kline
on behalf of Creditor Auxilior Capital Partners Inc. rmk@replevin.com, ecf@writofseizure.com

Seth Ptasiewicz
on behalf of Creditor Northern New Jersey Teamsters Benefit Plan and Teamsters Local 11 Pension Plan
sptasiewicz@krollfirm.com

Stephen B. Ravin
on behalf of Debtor Port Elizabeth Terminal & Warehouse Corp. sravin@saul.com jgillman@saul.com

Thomas B. O'Connell
on behalf of Creditor Eastern Lift Truck Co Inc. toconnell@slgcollect.com anovoa@slgcollect.com

Thomas Michael Walsh
on behalf of Interested Party Chiesa Shahinian & Giantomasi PC TWALSH@CSGLAW.COM

Turner Falk
on behalf of Debtor P. Judge & Sons Trucking LLC turner.falk@saul.com, tnfalk@recap.email

Turner Falk
on behalf of Debtor Port Elizabeth Terminal & Warehouse Corp. turner.falk@saul.com tnfalk@recap.email

Turner Falk
on behalf of Debtor The Judge Organization LLC turner.falk@saul.com, tnfalk@recap.email

Turner Falk
on behalf of Debtor Amex Shipping Agent Inc. turner.falk@saul.com, tnfalk@recap.email

Turner Falk
on behalf of Debtor Judge Warehousing LLC turner.falk@saul.com, tnfalk@recap.email

Turner Falk
on behalf of Debtor P. Judge & Sons Inc. turner.falk@saul.com, tnfalk@recap.email

U.S. Trustee
USTPRegion03.NE.ECF@usdoj.gov


TOTAL: 22