**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-1(b)*

**SAUL EWING LLP**
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:    stephen.ravin@saul.com
            turner.falk@saul.com

*Counsel to the Debtors and Debtors in Possession*

Order Filed on March 13, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re: | Chapter 11 |
| PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*, | Case No. 25-22123 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through twenty (20), is

**ORDERED.**

**DATED: March 13, 2026**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

---

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

Upon the Motion (the "**DIP Motion**")[2] of the Debtors, pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (the "**Bankruptcy Rules**"), seeking entry of interim and final orders granting the following relief:

**(I)    DIP Financing**

(A)    Authorizing the Debtors to enter into the DIP Factoring Agreement, substantially in the form as filed with the Court, by and among the Debtors, as Sellers, and First Business Specialty Finance, LLC, as Purchaser ("**Purchaser**"), for general operating and working capital purposes, including the payment of postposition obligations, and certain pre-petition priority wage and tax obligations as authorized by the Court pursuant to Debtors' First Day Motions.

(B)    Authorizing the Debtors to enter into the DIP Factoring Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Purchaser, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto.

(C)    Granting the Purchaser the following liens (as defined in section 101 (37) of the Bankruptcy Code) (the "**DIP Liens**") and claims:

(i)    first priority priming, valid, perfected, and enforceable liens (except with respect to the Carve-Out (as defined below) and causes of action on behalf of Debtors' estates arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof), in and upon all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without

---

[2] Capitalized terms used in this Final Order but not defined herein shall have the meanings ascribed to such terms in the DIP Motion and/or the DIP Factoring Agreement (as defined below), as the context makes applicable.

2

> limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing.

> (ii)    allowed superpriority administrative claim status in respect of all obligations under the DIP Factoring Agreement (collectively, the "**Obligations**"), subject to the Carve-Out.

**(II)**    **Use of Cash Collateral -** Authorizing the Debtors' use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code ("**Cash Collateral**"));

**(III)**    **Modifying the Automatic Stay -** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Factoring Agreement and the Orders (as defined below);

**(IV)**    **Waiving Any Applicable Stay -** Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of the Orders; and

**(V)**    **Final Hearing -** Scheduling a final hearing (the "**Final Hearing**") to consider entry of this order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the First Day Declaration, which was filed contemporaneously with the DIP Motion; and this Court having reviewed the DIP Motion and having held interim hearings with respect to the DIP Motion on November 19, 2025 (the "**First Interim Hearing**"), on December 18, 2025 (the "**Second Interim Hearing**") and on January 27, 2026 (the "**Third Interim Hearing**" and, together with the First Interim Hearing and Second Interim Hearing, the "**Interim Hearings**"); and this Court having entered the first, second, and third interim orders on the DIP Motion (the "**First Interim Order**", "**Second Interim Order**", and "**Third Interim Order**", respectively) [ECF Nos. 41, 83, and 145] and upon the DIP Motion, the First Day Declaration, the record of the Interim Hearings and Final Hearing; and all objections, if any, to the entry of this Final Order (collectively with the Interim Orders, the "**Orders**") having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

3

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

I.    **Procedural Findings of Fact**

A.    **Petition Date**. On November 14, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

C.    **Statutory Predicates**. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.

D.    **Committee Formation**. On December 5, 2025, the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**").

E.    **Interim Order**. On November 19, 2025, December 19, 2025, and January 28, 2026, the Court entered the First Interim Order, Second Interim Order, and Third Interim Order, respectively, pursuant to which the Debtors were authorized to, among other things, factor and sell its invoices/accounts to Purchaser on an interim basis in accordance with the terms of the Interim Orders.

4

F.    **Notice**. The Interim Hearings and Final Hearing were held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014. Notice of the Interim Hearings and Final Hearing and the emergency relief requested in the DIP Motion was provided by the Debtors to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; (iii) counsel to the Purchaser; and (iv) all other known secured creditors of record, and no other or further notice need be given.

## II.    <u>Findings Regarding the Post-Petition Financing</u>.

G.    **Need for Post-Petition Financing**. The Debtors represent that an immediate need exists for the Debtors to obtain funds via the DIP Factoring Agreement and use of Cash Collateral in order to fund working capital, continue operations, pay administrative expenses of the Debtors incurred in these Chapter 11 Cases, and to administer and preserve the value of its estate for the benefit of its various stakeholders, as set forth in the budget attached as <u>**Exhibit 1**</u> to this Final Order (as it may be amended or supplemented from time to time, the "**Budget**").[3] The ability of the Debtors to finance operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the Purchaser and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, its estate and its stakeholders.

H.    **No Credit Available on More Favorable Terms**. The Debtors represent that, as set forth in the DIP Motion, the Debtors have been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

---

[3] Budgets for subsequent time periods will be created in consultation with the Purchaser and Creditors' Committee and such budgets will be submitted to the Court with a Notice and scheduling a hearing if an objection is filed.

5

57399652.3

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or

(4)    credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien,

in each case, on more favorable terms and conditions than those provided in the DIP Factoring Agreement and the Orders. The Debtors represent that they are unable to obtain credit from Purchaser without granting to Purchaser the protections in the DIP Factoring Agreement, the DIP Motion and the Orders, including the reinstatement of the Prepetition Obligations.

I.    **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code**. The extension of credit and/or the purchases and sales called for under the DIP Factoring Agreement, and the fees paid and to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Factoring Agreement was negotiated in good faith and at arms' length between the Debtors and the Purchaser, and the use of the proceeds to be extended under the DIP Factoring Agreement will be so extended in good faith, and for valid business purposes and uses, as a consequence of which Purchaser is each entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

J.    **Relief Essential**. The relief requested in the DIP Motion (and as provided in the Orders) is necessary, essential and appropriate for the continued operation of the Debtors' business, the management and preservation of the Debtors' assets, and to avoid irreparable harm. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

57399652.3

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**AS FOLLOWS**:

    A.    <u>**Approval of Entry into the DIP Factoring Agreement**</u>

    1.    <u>**Financing Approved**</u>. The Motion is granted on a final basis to the extent set forth herein. The Debtors are expressly authorized to enter into the DIP Factoring Agreement, to factor and sell their invoices/accounts and perform thereunder, and to immediately incur obligations under the DIP Factoring Agreement, and on the terms and subject to the conditions set forth in the DIP Factoring Agreement and this Final Order.

    2.    <u>**Authorization of the DIP Factoring Agreement**</u>. In furtherance of the foregoing and without further order of this Court, the Debtors are authorized and empowered to perform all acts and execute and deliver all instruments and documents that the Purchaser determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Factoring Agreement, including without limitation, the execution, delivery and performance of formal documentation of the DIP Factoring Agreement consistent with the terms of the DIP Factoring Agreement, and the Orders, and any subsequently executed documents ancillary thereto (the "<u>DIP Factoring Documents</u>").

    3.    <u>**Binding and Non-Voidable Obligations**</u>. The Debtors' obligations in connection with the DIP Factoring Agreement and interest thereon, together with all other obligations under the arrangement, and all fees, costs, expenses, indebtedness, and liabilities of the Debtors to Purchaser under the DIP Factoring Agreement and the Orders are hereinafter referred to as the "<u>Obligations</u>." The Obligations constitute valid and binding obligations of the Debtors' estates, enforceable against the estates, in accordance with the terms of the Orders and the DIP Factoring Agreement. No obligation, payment, transfer, or grant of security by the Debtors' estates in

7

connection with the DIP Factoring Agreement or the Orders shall be stayed, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any challenge, defense, reduction, setoff, recoupment or counterclaim.

4.    **Liens**. In order to secure the Obligations, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, effective and perfected upon the entry of the First Interim Order, as modified by the Second Interim Order, Third Interim Order, and this Final Order, and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, mortgages, or other similar documents, or the possession or control by the Purchaser of any property, the Purchaser is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected, first priority security interests in and liens (collectively, the "Liens") on all of the Debtors' now owned and hereafter acquired personal property and fixtures, including, without limitation, Accounts (including the Pre-Petition Accounts), Chattel Paper (whether tangible or electronic), contracts and contract rights, Goods, Inventory, Equipment, Instruments, Investment Property, Documents (including, without limitation, all bills of lading and proof of delivery), General Intangibles, Reserve Accounts, Supporting Documentation, all books and records relating to any of the foregoing and all accessions, substitutions for and all replacements, products, cash and non-cash proceeds of the foregoing, in whatever form, including, without limitation, all insurance proceeds and all claims against third parties for loss or destruction of or damage to any of the foregoing, except causes of action on behalf of Debtors' estates arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof (the "Collateral"), and the proceeds of the Collateral, with priority over all existing liens.

8

5.      **Perfection of Liens**. All Liens are valid, enforceable and perfected, effective as of the date of the First Interim Order, as modified by the Second Interim Order, Third Interim Order, and this Final Order, and (notwithstanding any provisions of any agreement, instrument, document, or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection.  The Purchaser is hereby authorized, but not required, to file or record mortgages, notices of lien, UCC-1 financing statements or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Liens granted to it hereunder. Regardless of whether the Purchaser shall, in its sole discretion, file or record notices of lien, UCC-1 financing statements, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the Liens, such Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Order.  A certified copy of the Orders may, in the discretion of the Purchaser, be filed with or recorded in filing or recording offices in addition to or in lieu of a mortgage, notice of lien or other similar instrument, and all filing offices are hereby authorized and directed to accept such certified copy of the Orders for filing and recording.

6.      **Effect of Stipulations, Admissions, Agreements and Releases on Third Parties**. The Debtors' stipulations, admissions, agreements and releases set forth in the Orders (collectively, the "**Debtors' Stipulations**") shall be binding upon the Debtors and any successor thereto immediately upon entry of this Final Order.  The Debtors' Stipulations contained in the Orders shall be binding upon all parties-in-interest, including, without limitation, the Creditors' Committee and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee, in all circumstances and for all purposes.

57399652.3

7.      **Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Obligations shall constitute an allowed superpriority administrative expense claim in each of the Chapter 11 Cases (a "**Superpriority Claim**"), and, subject to the Carve-Out, and excluding the proceeds of causes of action on behalf of Debtors' estates arising under Chapter 5 of the Bankruptcy Code, the Superpriority Claim shall (a) have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases, at any time existing or arising, of any kind or nature as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code; and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Any lien that is avoided or otherwise preserved for the benefit of the Debtors' estate under section 551 or any other provision of the Bankruptcy Code, and any proceeds thereof, shall be subordinate to the Superpriority Claim granted to the Purchaser.

8.      **Carve-Out**.  For purposes hereof, the "**Carve-Out**" shall mean the sum of: (A) all fees required to be paid to the clerk of the Court and the U.S. Trustee without regard to the Carve-Out Trigger Notice (as defined below) ("**Statutory Fees**"); (B) reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee appointed under Bankruptcy Code section 726(b) (without regard to the Carve-Out Trigger Notice) ("**Ch. 7 Fees**"); (C) subject in all respects to the Budget, to the extent allowed, whether by interim order, procedural order or otherwise, all accrued and unpaid reasonable fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the Creditors' Committee pursuant to section 327, 328, or 363 of the Bankruptcy Code or section 156(c) of title 28 of the United States Code (collectively, the "**Professional Persons**") at any time before or on the day of transmittal by Purchaser of a Carve-Out Trigger Notice (the "**Pre-Trigger Date Budgeted Fees**"); and (D) after the transmittal by

10

57399652.3

Purchaser of the Carve-Out Trigger Notice (such date of transmittal, the "**Trigger Date**"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of (1) all Professional Fees incurred after the Trigger Date by any Professional Persons retained by the Debtors and (2) the payment of Professional Fees of Professional Persons incurred by the Creditors' Committee after the Trigger Date, not to exceed $100,000 in the aggregate for clauses (1) and (2) (the amount set forth in this clause (D) being the "**Post-Trigger Date Cap**"). With respect to the foregoing clause (C), any Professional Fees thereunder incurred in excess of the aggregate amount permitted for such Professional Persons in the Budget (which shall be agreed in consultation with the Creditors' Committee) shall not be included in the Carve-Out. Nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (C) or (D) above, on any grounds. On the day on which a Carve-Out Trigger Notice is transmitted to the Debtors, such Carve-Out Trigger Notice also shall constitute a demand to the Debtors, and the Debtors agree, to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the accrued and unpaid Pre-Trigger Date Budgeted Fees plus the Post-Trigger Date Cap, and the Debtors shall deposit and hold any such amounts in the "**Carve-Out Reserve Account**" (as defined below), which shall be a segregated account under the control of the Debtors' financial advisor for such purpose and solely for the benefit of the Professional Persons entitled thereto. The reserved funds shall be released from time to time from the segregated account to pay when due any Pre-Trigger Date Budgeted Fees and any fees and expenses incurred after the Trigger Date that are included in the Post-Trigger Date Cap under clause (D) above. The Carve-Out Reserve Account and amounts therein shall be free and clear of all liens, claims and interests of any party other than the Professional Persons entitled thereto. If the amount in the Carve-Out Reserve

11

Account exceeds the actual amount of fees and expenses incurred of the type described in clause (C) and clause (D), then such excess will be paid to Purchaser and applied in accordance with the DIP Factoring Agreement. For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice transmitted by electronic mail and overnight mail by Purchaser to the Debtors (or the Debtors' counsel), the U.S. Trustee, and counsel to the Creditors' Committee, upon the occurrence and during the continuance of a Termination Event (as defined below), stating that the Post-Trigger Date Cap has been triggered.

For the avoidance of doubt, to the extent that the budgeted amounts for a Professional Person for any Budget period ending prior to the Trigger Date exceeds the actual fees and expenses incurred by such Professional for that period, such excess may be carried forwards, or backwards, to the immediately prior or subsequent payment period under the Budget (but only for periods ending prior to the Trigger Date), and be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later period(s).

For the avoidance of doubt, no portion of the Carve-Out shall apply to or be available for any fees, costs, or expenses incurred by any party, including the Debtors and/or the Creditors' Committee, in connection with the prosecution of any claims, causes of action, adversary proceedings, or other litigation against Purchaser (including against Purchaser's applicable affiliates, subsidiaries, successors and permitted assigns thereof, and each of Purchaser's respective equity holders, shareholders, officers, directors, members, attorneys, participants, agents and employees), the DIP Factoring Agreement, and/or the Original Factoring Documents (as described *infra*), including, without limitation, challenging the claim or liens of Purchaser or seeking any recovery of any kind from Purchaser, except that the Creditors' Committee shall be

12

permitted to use up to $30,000 to reasonably investigate the validity, perfection, or enforceability of any of Purchaser's factoring documents, liens, or security agreements.

For the avoidance of doubt, Purchaser shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Debtors' Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate Purchaser, in any way, to pay compensation to, or to reimburse expenses of, any Professional Persons or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

9.     **Payments from Carve-Out**. The Debtors shall maintain a segregated account in the Chase bank account of Debtor The Judge Organization LLC, number 5567, held in trust for payment of allowed Pre-Trigger Date Budgeted Fees and, subject to the Post-Trigger Date Cap, Professional Fees incurred after the Trigger Date[4] (the "**Carve-Out Reserve Account**"), which account shall be funded from the Debtors' cash receipts in accordance with the Budget on a weekly basis, in advance, until the occurrence of the Trigger Date. After the Trigger Date, the Carve-Out Reserve Account shall be funded in an aggregate amount equal to the accrued and unpaid Pre-Trigger Date Budgeted Fees plus the Post-Trigger Date Cap. If not paid from some other source, the Debtors shall pay Professional Persons Professional Fees using funds in the Carve-Out Reserve Account in compliance with the Budget, the Orders, and any interim compensation procedures; provided, however, that, prior to payment in full of the Prepetition Obligations and the occurrence

---

[4] In the event the Carve-Out Reserve Account is underfunded (i.e., the Debtors fail to fund the Carve-Out Reserve Account on a weekly basis in accordance with the Budget), any deposits into the Carve-Out Reserve Account shall first be for the benefit of, and held in trust for, the Professional Persons retained by the Creditors' Committee until the Debtors adequately fund the Carve-Out Reserve Account for the Professional Persons retained by the Creditors' Committee in accordance with the Budget.

57399652.3

of the Trigger Date, to the extent that any Professional Fees that have accrued from the Petition Date through and including the Trigger Date are less than the amounts funded into the Carve-Out Reserve Account, the excess amounts in the Carve-Out Reserve Account shall be (A) first, applied to fund the Post-Trigger Date Cap; (B) second, remitted to Purchaser to apply to reduce the Obligations.  To the extent that the Carve-Out Reserve Account is underfunded as of the entry of this Final Order, the Debtors shall, within five (5) days of the entry of Final Order, fund the Carve-Out Reserve Account with all Pre-Trigger Date Budgeted Fees accrued to date in accordance with the Orders and provide proof of such funding to counsel to the Committee.  For the avoidance of doubt, the Pre-Trigger Date Budgeted Fees deposited into the Carve-Out Reserve Account shall be solely for the purpose of paying Professional Fees in the amounts provided for respective professionals in the Budget(s),[5] e.g., Creditors' Committee (UCC).

10.    **Proofs of Claim**. The Purchaser is not required to file proofs of claim in the Chapter 11 cases or in any successor case on account of the Obligations and claims arising under the DIP Factoring Agreement, which are hereby deemed allowed under this Final Order.

11.    **Reporting**. Within ten (10) days of the last day of each month, the Debtors shall deliver a reconciliation report (the "**Variance Report**") to counsel to the Creditors' Committee, in a form reasonably satisfactory to the Creditors' Committee, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior month (the "**Testing Period**") (*e.g.*, by February 10, 2026, the Debtors shall deliver to counsel the Creditors' Committee a Variance Report for January 2026).  The Variance Report will include (i) the variance (as compared to the Budget) of actual cash receipts of the Debtors for the Testing Period, (ii) the variance (as compared to the Budget) of the operating disbursements made by the Debtors set forth

---

[5] "Budget(s)" shall include the amounts reflected in the Interim Orders.

57399652.3

in the Budget for the Testing Period, (iii) an explanation, in reasonable detail, for any material variances set forth in the Variance Report and (iv) proof that the Pre-Trigger Date Budgeted Fees were deposited into the segregated Carve-Out Reserve Account in accordance with the Budget, which shall be broken down by respective professionals as provided in the Budget, e.g., Creditors' Committee (UCC). The Debtors shall also, on or about the fifteenth (15th) of each month, deliver a reconciliation report (the "Cash Receipts Report") to counsel to the Creditors' Committee, in a form reasonably satisfactory to the Creditors' Committee, showing the variance (as compared to the Budget) of actual cash receipts of the Debtors for the preceding two (2) week period (*e.g.*, by or about February 15, 2026, the Debtors shall deliver to counsel to the Creditors' Committee a Cash Receipts Report for February 1, 2026 through February 14, 2026).

12.    **Events of Default**.   The following are Events of Default under the DIP Factoring Agreement and shall constitute a "**Termination Event**":  (a) Sellers default in the payment of any Obligations; (b) Sellers default in the performance of any covenant, condition or provision hereof or of any Other Agreement now or hereafter entered into with Purchaser, (c) any warranty or representation contained herein or in any Other Agreement proves to be false or inaccurate in any respect; (d) any Seller breaches the covenants set forth in Section 13 of the DIP Factoring Agreement; (e) any provision of the DIP Factoring Agreement shall for any reason cease to be valid or binding or enforceable against Sellers; (f) a Bankruptcy Order is entered (i) modifying any Factoring Order without the prior written consent of Purchaser; (ii) avoiding or requiring disgorgement by Purchaser of any amounts received with respect to the Obligations; (iii) or a motion or other request shall be filed with the Bankruptcy Court seeking authority to use any proceeds of any of the Collateral without the consent of Purchaser; (iv) enjoining, restraining in any way, or preventing Sellers from continuing to conduct all or any material part of their business

15

affairs; (g) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of their intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever; and/or (h) any guarantor of the Obligations becomes subject to any bankruptcy, insolvency or other debtor-relief proceedings.

13.    **Remedies Upon a Termination Event**.    Upon the occurrence or during a Termination Event, Purchaser shall send written notice by electronic mail and overnight mail (the "**Remedies Notice**") to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S. Trustee (the "**Remedies Notice Parties**") that a Termination Event has occurred. The Carve-Out Trigger Notice may be included in or incorporated into the Remedies Notice, and for the avoidance of doubt, the Carve-Out Trigger Notice, the Remedies Notice, and/or any other notice required of Purchaser herein may be transmitted by Purchaser's counsel. Seven (7) business days following transmittal of the Remedies Notice to the Remedies Notice Parties, the automatic stay provisions of section 362 of the Bankruptcy Code will be vacated and modified without the need for further Court order to permit Purchaser to exercise all rights and remedies provided for in DIP Factoring Agreement, in the Original Factoring Documents (*as defined infra*), or under other applicable bankruptcy or non-bankruptcy law including, without limitation: (a) the right to terminate or suspend any of Purchaser's obligations or commitments under the DIP Factoring Agreement and/or the Original Factoring Documents; (b) the right to accelerate and/or declare all Obligations to be immediately due and payable; (c) the right to charge interest at the default rate set forth in the DIP Factoring Agreement and/or the Original Factoring Documents (as applicable); (d) the right to take any actions reasonably calculated to preserve or safeguard the Collateral; and/or (e) the right to exercise or enforce any rights against the Collateral pursuant to the DIP Factoring

16

Agreement, the Original Factoring Documents, the Orders, or other applicable source of right. Nothing in this paragraph precludes the Debtors and/or the Creditors' Committee from filing an emergency motion to contest the Remedies Notice and related relief.

14.    **Stipulations**. Subject to entry of this Final Order: (a) the Purchaser's liens on the prepetition collateral and replacement liens granted pursuant to the DIP Motion are valid and perfected and not subject to challenge; (b) notwithstanding the grant of prepetition or post-petition security interests in favor of Purchaser, whether provided herein, through the DIP Factoring Agreement, or otherwise, Purchaser is the purchaser and absolute owner of the eligible accounts/invoices via a true sale, such that the purchased accounts/invoices are not property of the Debtors' bankruptcy estates; and (c) the purchased accounts/invoices have been, or will be, transferred to Purchaser free and clear of all liens, claims, and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code.

15.    **Releases**. Subject to entry of this Final Order, in consideration of Purchaser entering into the DIP Factoring Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Debtor and each affiliate, subsidiary, successor and assign thereof, and each of them on their behalf and on behalf of their respective equity holders, shareholders, members, managers, officers, directors, attorneys, participants, agents, employees, successors and assigns, as applicable (collectively, the "**Releasors**" and each a "**Releasor**"), hereby forever release, discharge, and acquit Purchaser and each affiliate, subsidiary, successor and permitted assign thereof, and each of its respective equity holders, shareholders, officers, directors, shareholders, members, attorneys, participants, agents and employees (collectively, the "**Releasees**" and each a "**Releasee**"), of and from any and all demands, actions, causes of action, suits, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever

17

(individually, a "**Claim**" and collectively, "**Claims**") of every type, kind, nature, description, or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, at law or in equity, each as though fully set forth herein at length, to the extent that they arise out of (a) the Pre-Petition Factoring Agreement and any agreement, instrument and document related thereto (collectively, the "**Original Factoring Documents**"); (b) any guaranty executed in connection with the Obligations under the Pre-Petition Factoring Agreement and other Original Factoring Documents in favor of Releasees; (c) the Obligations owing from Sellers to Purchaser pursuant to the Pre-Petition Factoring Agreement; (d) any Obligations owing by any Releasor to any Releasee pursuant to the Pre-Petition Factoring Agreement; and (e) any guaranteed obligations under the Pre-Petition Factoring Agreement; *provided, however*, that nothing in this paragraph shall release Purchaser from its obligations arising under the DIP Factoring Agreement, the Interim Orders and this Final Order.  Each Releasor acknowledges that such Releasor is aware that Releasor may later discover facts in addition to or different from those which such Releasor now knows or believes to be true with respect to the subject matter of Section 35 of the DIP Factoring Agreement, but it is each Releasor's intention to fully and finally forever settle and release any and all matters, disputes and differences, known and unknown, suspected and unsuspected, which now exist, may later exist, or may previously have existed between any of the Releasors and any of the Releasees arising from, connected with or relating to the Original Factoring Documents.  The releases given in Section 35 shall be and remain in effect as a full and complete release notwithstanding discovery or existence of any such additional or different facts.  Each Releasor waives any protections afforded by any statute or law in any jurisdiction whose purpose substance, or effect is to provide that a general

57399652.3

release shall not extend to claims, material or otherwise, which the person giving the release does not

know of or suspect to exist at the time of executing the release.

**B.**      **Adequate Protection and Authorization to Use Cash Collateral**

16.      **Adequate Protection of Existing Liens**. The entry of the Final Order constitute a

finding that holders of Junior Liens are adequately protected.

17.      **Authorization to Use Cash Collateral**. The Debtors are authorized to use Cash

Collateral on a final basis, consistent with the terms of this Final Order, the DIP Factoring

Agreement and the Budget.

**C.**      **Modification of Automatic Stay**.

18.      The automatic stay provisions of section 362(a) of the Bankruptcy Code are hereby

modified to the extent necessary to permit: (a) the Purchaser to receive and collect, and to take any

actions necessary to receive and collect, payment directly from the party responsible for making

payment against an invoice/account that has been sold to Purchaser (regardless of whether the

invoice/account was sold or created before or after the date that the Debtors commenced the

Chapter 11 cases); (b) the Purchaser to—in its sole discretion—file any financing statements,

mortgages, security agreements, or other instruments and documents, if any, evidencing its

security interests in and Liens on the Collateral; (c) the Debtors to pay, and the Purchaser to charge,

any costs, fees, and/or expenses including, without limitation, filing and recording fees,

commitment fees, origination fees, processing fees, financing fees, and reasonable legal fees and

expenses, accruing or arising pursuant to the DIP Factoring Agreement and/or the Pre-Petition

Factoring Agreement (regardless of whether such fees are derived from invoices/accounts that were

sold or created before or after the Petition Date); and (d) the Purchaser to release, and the Debtors

to accept and receive, funds held by Purchaser in reserve, in accordance with the DIP Factoring

19

Agreement and/or the Pre-Petition Factoring Agreement (regardless of whether such reserved funds are derived from or correspond to invoices/accounts that were sold or created before or after the Petition Date).

**D.      Inconsistency**

19.      In the event of any inconsistency between the terms and conditions of the DIP Factoring Agreement, and this Final Order, the provisions of this Final Order shall govern and control.

**E.      Enforceability**

20.      This Final Order constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and takes effect and is fully enforceable immediately upon execution hereof.

**F.      Waiver of Any Applicable Stay**

21.      Any applicable stay (including, without limitation, under Bankruptcy Rules 4001, 6003 or 6004(h)) is hereby waived and shall not apply to this Final Order.

**G.      Retention of Jurisdiction**

22.      This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

57399652.3

**EXHIBIT 1**

**Budget**

**The Jodge Organization Consolidated Cash Flow**

- Beginning Cash After Prior Period Disbursements
  - Cash Collections Period
  - Employee Distribution
  - Equity contributions
  - Loan proceeds
- Beginning Total Cash per Period
- Disbursements:
  - Total Payables Per Period
  - Capital Expenditures
  - Loan repayments
- Total Disbursements Per Period
- Ending Cash Per Disbursements

**The Jodge Organization Consolidated Cumulative Cash Receipts**

- Beginning Cumulative Cash Receipts
- New Cash Receipts Per Period
- Ending Cumulative Cash Receipts Per Period

**The Jodge Organization Consolidated Payables Per Period**

- Beginning Cumulative Payables
  - Payroll
  - Employer Reimbursement
  - Insurance
  - Owner Operations/Outside Carriers
  - Utilities
  - IT/Telecom
  - Warehouse+Truck Expenses
  - Union 401k
  - Professional Fees
  - Leases
  - SBA/Other
  - Taxes
  - Rent
  - Supply+Service Vendor
  - AMEX
  - Administration Misc.
- Legal Fees–Seel being
- Accountants Future Hours
- Restructuring Advisor Fees–Cambridge
- UCC Professional Fees
- Ending Cumulative Accrued Payables Paid
- Total Payables Paid Per Period
- US Fees, etc Payments
- Total Payables Paid Per Period + UST Fees

United States Bankruptcy Court
District of New Jersey

In re:                                                                          Case No. 25-22123-JKS

Port Elizabeth Terminal & Warehouse Corp                                        Chapter 11

Amex Shipping Agent, Inc.
    Debtors

# CERTIFICATE OF NOTICE

District/off: 0312-2                          User: admin                              Page 1 of 3

Date Rcvd: Mar 13, 2026                       Form ID: pdf903                          Total Noticed: 9

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 15, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Amex Shipping Agent, Inc., 13 Manor Road, East Rutherford, NJ 07073-2119 |
| db | + | Judge Warehousing, LLC, 400 Expansion Blvd, Port Wentworth, GA 31407-3052 |
| db | + | P. Judge & Sons Trucking, LLC, 400 Expansion Blvd, Port Wentworth, GA 31407-3052 |
| db | + | P. Judge & Sons, Inc., 13 Manor Road, East Rutherford, NJ 07073-2119 |
| db | + | Port Elizabeth Terminal & Warehouse Corp., 13 Manor Road, East Rutherford, NJ 07073-2119 |
| db | + | The Judge Organization, LLC, 400 Expansion Blvd, Port Wentworth, GA 31407-3052 |
| aty | | Maxwell M. Hanamirian, Saul Ewing, LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102-2186 |
| aty | + | Murphy Schiller & Wilkes LLP, One Gateway Center, Suite 4200, Newark, NJ 07102-5310 |
| aty | + | Saul Ewing LLP, One Riverfront Blvd. Suite 1520, Newark, NJ 07102-5401 |

TOTAL: 9

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 15, 2026                    Signature:         /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 13, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Amanda R Simone | |
| | on behalf of Creditor Committee Official Committee Of Unsecured Creditors asimone@connellfoley.com |
| Brett S. Theisen | |
| | on behalf of Creditor Committee Official Committee Of Unsecured Creditors btheisen@connellfoley.com |

nmitchell@gibbonslaw.com

David Gerardi

on behalf of U.S. Trustee U.S. Trustee david.gerardi@usdoj.gov

David H. Stein

on behalf of Creditor F. Greek Bristol Properties  L.P. dstein@wilentz.com, ciarkowski@wilentz.com;abroome@wilentz.com

Fran B. Steele

on behalf of U.S. Trustee U.S. Trustee Fran.B.Steele@usdoj.gov

Ilana Volkov

on behalf of Creditor Hartz Elizabeth  Inc. ivolkov@mcgrailbensinger.com

John S. Mairo

on behalf of Other Prof. Dundon Advisers LLC jmairo@fbtgibbons.com  emunera@gibbonslaw.com

John S. Mairo

on behalf of Creditor Committee Official Committee Of Unsecured Creditors jmairo@fbtgibbons.com
emunera@gibbonslaw.com

Joseph Casello

on behalf of Creditor Yancey Bros. Co jcasello@cvclaw.net  jcasello627@gmail.com

Kyle McEvilly

on behalf of Creditor Committee Official Committee Of Unsecured Creditors kmcevilly@connellfoley.com

Pamela Elchert Thurmond

on behalf of Creditor LAW DEPT CITY OF PHILADELPHIA Pamela.Thurmond@phila.gov

Rebecca K. McDowell

on behalf of Creditor Eastern Lift Truck Co Inc. rmcdowell@slgcollect.com  anovoa@slgcollect.com

Robert Malone

on behalf of Creditor Committee Official Committee Of Unsecured Creditors rmalone@connellfoley.com
nmitchell@gibbonslaw.com

Robert M. Kline

on behalf of Creditor Auxilior Capital Partners  Inc. rmk@replevin.com, ecf@writofseizure.com

Seth Ptasiewicz

on behalf of Creditor Northern New Jersey Teamsters Benefit Plan and Teamsters Local 11 Pension Plan
sptasiewicz@krollfirm.com

Stephen B. Ravin

on behalf of Debtor P. Judge & Sons  Inc. sravin@saul.com, jgillman@saul.com

Stephen B. Ravin

on behalf of Debtor Judge Warehousing  LLC sravin@saul.com, jgillman@saul.com

Stephen B. Ravin

on behalf of Debtor Amex Shipping Agent  Inc. sravin@saul.com, jgillman@saul.com

Stephen B. Ravin

on behalf of Debtor P. Judge & Sons Trucking  LLC sravin@saul.com, jgillman@saul.com

Stephen B. Ravin

on behalf of Debtor The Judge Organization  LLC sravin@saul.com, jgillman@saul.com

Stephen B. Ravin

on behalf of Debtor Port Elizabeth Terminal & Warehouse Corp. sravin@saul.com  jgillman@saul.com

Thomas B. O'Connell

on behalf of Creditor Eastern Lift Truck Co Inc. toconnell@slgcollect.com  anovoa@slgcollect.com

Thomas Michael Walsh

on behalf of Interested Party Chiesa Shahinian & Giantomasi PC TWALSH@CSGLAW.COM

Turner Falk

on behalf of Debtor Judge Warehousing  LLC turner.falk@saul.com, tnfalk@recap.email

Turner Falk

on behalf of Debtor P. Judge & Sons  Inc. turner.falk@saul.com, tnfalk@recap.email

Turner Falk

on behalf of Debtor P. Judge & Sons Trucking  LLC turner.falk@saul.com, tnfalk@recap.email

Turner Falk

on behalf of Debtor Port Elizabeth Terminal & Warehouse Corp. turner.falk@saul.com  tnfalk@recap.email

Turner Falk

on behalf of Debtor The Judge Organization  LLC turner.falk@saul.com, tnfalk@recap.email

District/off: 0312-2                          User: admin                                    Page 3 of 3
Date Rcvd: Mar 13, 2026                       Form ID: pdf903                                 Total Noticed: 9

Turner Falk
                          on behalf of Debtor Amex Shipping Agent  Inc. turner.falk@saul.com, tnfalk@recap.email

U.S. Trustee
                          USTPRegion03.NE.ECF@usdoj.gov


TOTAL: 30