**EXHIBIT 2**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1**<br><br>Joseph Lubertazzi, Jr.<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>Telephone: (973) 622-4444<br>Facsimile: (973) 624-7070<br>Email: jlubertazzi@mccarter.com<br><br>*Counsel for Wells Fargo Vendor Financial Services, LLC and HYG Financial Services, Inc.* | |
| In Re:<br><br>PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,<br><br>Debtors.[1] | Case No. 25-22123 (JKS)<br><br>Chapter 11 (Jointly Administered)<br><br>Judge John K. Sherwood |

**DECLARATION OF NICHOLAS ROOT IN SUPPORT OF MOTION OF WELLS FARGO VENDOR FINANCIAL SERVICES, LLC AND HYG FINANCIAL SERVICES, INC. TO COMPEL PAYMENT OF ADMINISTRATIVE CLAIM**

I, NICHOLAS ROOT, hereby declare, under penalty of perjury, as follows:

1. My name is Nicholas Root. I am over the age of 18 years old and am competent to testify to, and have personal knowledge of, the matters set forth herein.

2. I am currently a Loan Workout Specialist / Assistant Vice President at Wells Fargo Vendor Financial Services, LLC ("WFVF"). I have been an employee of WFVF for more than 2 years.

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal &Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690).

3. WFVF and its affiliate, HYG Financial Services, Inc. ("HYG," and collectively, "Wells Fargo"), are the holders of a number of leases with certain Debtors (the leases defined below, but collectively, the "Equipment Leases"). In these agreements, Wells Fargo provided certain Debtors with printers and forklifts (the equipment leased by the Debtors, the "Leased Equipment").

4. On December 6, 2022, HYG executed that certain lease agreement with Judge Warehousing, LLC ("Lease 9000"), whereby Judge Warehousing leased one hyster forklift for a term of 36 months. Lease 9000 is scheduled to expire on February 1, 2027, and rent of $1,663.87 is due on a monthly basis. A true and correct copy of Lease 9000 is attached hereto as **Exhibit A**.

5. On September 13, 2024, HYG executed that certain lease agreement with Judge Warehousing, LLC ("Lease 7004"), whereby Judge Warehousing leased one hyster forklift for a term of 36 months. Lease 7004 is scheduled to expire on September 23, 2027, and rent of $2,827.22 is due on a monthly basis. A true and correct copy of Lease 7004 is attached hereto as **Exhibit B**.

6. On November 15, 2024, HYG executed that certain lease agreement with Judge Warehousing, LLC ("Lease 7005"), whereby Judge Warehousing leased one hyster forklift for a term of 36 months. Lease 7005 is scheduled to expire on December 6, 2027, and rent of $2,827.22 is due on a monthly basis. A true and correct copy of Lease 7005 is attached hereto as **Exhibit C**.

7. On January 21, 2026, WFVF acquired two leases executed by P. Judge and Sons, Inc. Specifically, WFVF acquired that certain lease agreement, dated April 7, 2023 ("Lease 8000"), whereby P. Judge leased Lexmark printers and related equipment for a term of 48 months, ending April 7, 2027, with monthly rent due of $195.35. In addition, WFVF also acquired that certain lease agreement, dated January 13, 2025 ("Lease 4000"), whereby P. Judge leased Lexmark

printers for a term of 48 months, ending December 23, 2028, with monthly rent due of $279.58. True and correct copies of Lease 8000 and Lease 4000 are attached hereto as **Exhibit D** and **Exhibit E**, respectively.

8. Following the Petition Date, the Debtors continued to use the Leased Equipment. As of the date of this Declaration, the Debtors are not current on the post-petition obligations for the Equipment Leases.

9. For the Debtors' use of the Leased Equipment during the post-petition period through July 31, 2026, the Debtors owe Wells Fargo an amount of $14,472.87 (the "Administrative Claim"). *See* Root Declaration at ¶ 10 below. The post-petition arrears amount of that accruing during the sixty (60) days from the Petition Date is $7,478.69. The Debtors continue to use the Leased Equipment and monthly charges continue to accrue. These additional monthly charges should be paid timely.

10. The Administrative Claim and post-petition amounts arising 60 days after the Petition Date are reflected in the table below:

| Contract | Post-Petition Obligations Outstanding Arising 60 Days After Petition Date | Post-Petition Obligations Outstanding |
|---|---|---|
| **Lease 4000** | $951.61 | $1,236.19 |
| **Lease 8000** | $686.99 | $931.18 |
| **Lease 9000** | $2,440.35 | $4,104.2 |
| **Lease 7004** | $3,399.74 | $6,226.96 |
| **Lease 7005** | $0 | $1,974.34 |
| **Total** | $7,478.69 | $14,472.87 |

11. The above statements are true to the best of my knowledge, information and belief. I am aware that if any of the above statements are willfully false, I am subject to punishment.

Date: August 10, 2026

/s/ Nicholas Root
Nicholas Root

**EXHIBIT A**

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# Master Lease Agreement

[redacted]

HYSTER CAPITAL

*HYG Financial Services, Inc.*
5000 Riverside Drive | Suite 300 East | Irving, TX 75039-4314

Master Lease Number [redacted] dated as of December 6, 2023

Name and Address of Customer:
JUDGE WAREHOUSING, LLC
400 Expansion Blvd
Port Wentworth, GA 31407-3052

**TERMS AND CONDITIONS**

This Master Lease Agreement ("Master Lease") sets forth terms and conditions that will be applicable to equipment leasing transactions that may be entered into from time to time by Lessee and Lessor if they enter into one or more Schedules that incorporate the terms of this Master Lease. This Master Lease is not a commitment by Lessor to enter into any Schedule and nothing in this Master Lease shall impose, or be construed to impose, any obligation upon Lessor to enter into any proposed Schedule. In the event of a conflict between the provisions of this Master Lease and a Schedule, the provisions of such Schedule will control. Lessee and Lessor agree, for good and valuable consideration and intending to be legally bound, as follows:

1. **CERTAIN DEFINITIONS.** The following capitalized terms used herein will be defined as follows: "Equipment" means the equipment and other property described on the applicable Schedule, as well as any attachments, accessories, accessions, replacements, replacement parts, substitutions, additions, upgrades, exchanges and repairs to the equipment and other property and shall also be deemed to include any embedded software that otherwise falls within the definition of "Goods" under Article 9 of the Uniform Commercial Code ("UCC"). "Fair Market Value" of the Equipment means an amount estimated by us that may reasonably be expected for an installed and in-use property in an equitable exchange between a willing buyer and a willing seller, neither under any compulsion to buy or sell, both aware of all relevant facts, and assuming the Equipment is in the condition required by the applicable Lease. "Lessee" means the party or parties who sign this Master Lease as Lessee. Each party that signs below as Lessee agrees that its liability in connection with the Master Lease (and any Schedules hereunder) shall be joint and several. The Lessee may be referred to herein as "you" and "your". "Lessor" means the party signing as Lessor on this Master Lease and applicable Schedule or any of its affiliates signing as Lessor on the applicable Schedule, and may be referred to herein as "we", "us", and "our". "Person" means any individual, corporation, business trust, association, company, partnership, joint venture, or other entity. "QFC Obligations" means obligations arising under a securities contract, commodities contract, forward contract, repurchase agreement, swap agreement, or any similar agreement (as defined for purposes of Treasury Part 148 under 12 U.S.C. 5390(c)(8)(D) or FDIC Part 371 under 12 U.S.C. 1821(e)(8)(D)) that the FDIC determines by regulation, resolution, or order to be a qualified financial contract. "Schedule" means any schedule signed by Lessee and Lessor that incorporates the terms of this Master Lease, each of which will constitute a separate contract between Lessee and Lessor and shall be referred to as a "Lease". "Stipulated Loss Value" means the sum of: (i) all past due and current Payments; (ii) the present value of (A) all remaining Payments, and (B) the amount of the purchase option price or final purchase payment set forth in the applicable Schedule, or if no purchase option price or final purchase payment is specified or if the purchase option price is Fair Market Value, then the anticipated end of Term Fair Market Value of the affected item(s) of Equipment, discounted at 2% per annum; and (iii) all other amounts due under the Lease.

2. **COMMENCEMENT.** The commencement of a Lease (the "Commencement Date") will be the date that you satisfy all pre-conditions to the Lease, as determined by us, or any later date that we designate. Without limiting the foregoing, we may, in our sole discretion, require that you verify your acceptance of the Equipment either by telephone or by delivery to us of an executed certificate of acceptance. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing a Schedule you assign to us all of your rights, but none of your obligations under it. If, for any reason: (i) the manufacturer, supplier, wholesaler, or other vendor of the Equipment (any, a "Supplier") fails to deliver, or delays the delivery of, the Equipment; or (ii) the Equipment is unsatisfactory upon delivery or at any time thereafter, you agree that we are not liable, and you will not make any claim against us for damages or for specific performance of such Lease. If the Equipment includes any non-embedded software: (i) we do not own the software and do not provide any software licenses, (ii) you are responsible for obtaining any software license related to any software that is part of or used in connection with the Equipment from the owners or licensors of such software, (iii) you shall comply with the terms of all such licenses if any, and (iv) any default by you under any such software licenses shall also constitute a default by you under all Leases.

3. **LEASE PAYMENTS.** You agree to remit all payments under each Lease ("Payments") in U.S. dollars to the address or account designated by us from time to time. Unless indicated otherwise in the Schedule, your Payments are due in arrears and your first payment date will be one month from the Commencement Date, and subsequent payments shall be due on that same day of each month thereafter, unless such day does not exist for the applicable month, in which case it will be the last day of such month (the "Payment Date"). If you request that your Payment Date start later than one month after the Commencement Date, if we approve such a request, we may increase your first Payment by 1/30th of the scheduled Payment for each day between the originally scheduled Payment Date and the re-scheduled Payment Date (the "Additional Days") and the term of the Schedule will be extended by a number of days equal to the Additional Days. If there are changes in the type or amount or cost of the Equipment or the calculation of related sales or other taxes, you authorize us to adjust the Payments to maintain our after tax economic yield and cash flow so long as the change is not more than 15% of the original Payment amount. We may apply all your payments under a Lease to delinquency charges, Payments, and any other liabilities due and owing under such Lease or under any other agreement, in any order and manner selected by us. You waive all rights to direct the application of payments made on account of any Lease. We may offset and deduct any of your liabilities or obligations to us from any sums we owe to you. The financial terms of any Lease may have been determined taking into account fees we have paid to, or rebates, discounts, subsidies or other compensation or financial benefits (including the ability to fund over time amounts that may be financed hereunder) we have received from, the Supplier, a broker, or other third party in connection with such Lease. Payments are due on each Payment Date whether or not you receive an invoice.

4. **TAXES.** You agree to pay, and indemnify and hold us harmless from all sales, use, rental, property, excise, gross receipts, withholding and other taxes, charges and fees upon or with respect to the Equipment or the possession, ownership, leasing, use or operation, control or maintenance thereof and relating to such Lease (or any Payments or other payments), assessed by any governmental entity or taxing authority arising during or with respect to any part of the term, whether due before or after the end of the term shown on the corresponding Schedule. In connection with the expiration or earlier termination of a Lease, you agree to pay us any taxes accrued or assessed but not yet due and payable, or our estimate of such amounts.

5. **LATE CHARGES.** For any payment which is not received within 5 days of its due date, you agree to pay us a late charge equal to the greater of 5% of the amount due or $35.00 (but in either case, not to exceed the maximum amount permitted by law).

6. **OWNERSHIP, SECURITY INTEREST, USE, MAINTENANCE AND REPAIR.** Unless otherwise specified in the applicable Schedule, we own the Equipment, excluding any non-embedded software. If the Lease is a secured transaction, you grant us a security interest in the Equipment and all proceeds thereof to secure all of your obligations now or hereafter owing to us (except QFC Obligations). In no event shall your obligations under a Lease be secured by any improved real property, building or mobile home insurable under the National Flood Insurance Program unless the document granting an interest in real property specifically

**THIS MASTER LEASE INCLUDES THE TERMS ON THE ATTACHED PAGE(S).**
**THIS MASTER LEASE SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY US.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Master Lease to be executed by their duly authorized representatives as of the date first above written.

| | |
|---|---|
| Lessor: HYG FINANCIAL SERVICES, INC. | Lessee: JUDGE WAREHOUSING LLC |
| Palmer, Veronica | [signature] |
| Signature of authorized signer | Signature of authorized signer |
| Palmer, Veronica Authorized Signer | Michael Wynne V.PRES. 12/7/23 |
| Print Name and Title | Print Name and Title |

[redacted]

[redacted]

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

references the Lease by date, its Schedule number and/or this Master Lease number. You authorize us or our agents to prepare and file, electronically or otherwise, UCC financing statements and any amendments or continuation statements relating to the Equipment and proceeds. So long as you are not in default of your obligations, we hereby assign to you our rights, if any, under Supplier written warranties, to the extent assignable. You (a) shall not permit the Equipment to attach to real property and (b) must keep the Equipment free of all security interests, encumbrances and liens, except those in favor of us. Other than the temporary relocation of mobile Equipment, or as otherwise set forth in the applicable Schedule, you will not remove the Equipment from the address indicated on the applicable Schedule without first obtaining our written approval. You shall: (a) keep the Equipment in your exclusive control and possession and not discontinue use of the Equipment; (b) USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) at your cost, keep the Equipment repaired and maintained in good working order as when originally delivered to you (absent only ordinary wear and tear) and as required by the manufacturer's warranty, certification and standard full service maintenance contract; (e) at your cost, furnish and replace all parts of the Equipment as may from time to time become worn out, damaged or unfit for use; (f) allow only qualified and properly licensed personnel to operate the Equipment; (g) maintain accurate and complete records of all repairs and maintenance of the Equipment; (h) give us reasonable access to inspect the Equipment and its maintenance and other records; (i) at your cost, mark and identify the Equipment with all information and in such manner as we may request from time to time and replace promptly any such markings or identification which are removed, defaced or destroyed and not permit the name of any person, association or corporation other than your name or our name to be placed on the Equipment as a designation that might be interpreted as a claim of ownership or security interest; (j) pay all shipping and delivery charges and other expenses incurred in connection with the Equipment and pay all lawful claims, whether for labor, materials, supplies, rent, assessments, taxes or services, which might or could if unpaid become a lien on the Equipment; and (k) not enter into any lease or sale of any Equipment. Without our prior written consent, you will not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its value, useful life, or functional utility. Any such alterations, additions or improvements shall be deemed part of the Equipment. The Equipment must remain in the continental United States, Alaska, or Hawaii at all times. In case you fail to comply with any provision of any Lease, we may take action to bring such Lease into compliance, and all expenses incurred by us in doing so will constitute additional expenses under such Lease due to us within 5 days after we send notice to you requesting payment. Our effecting such compliance will not be a waiver of your default.

7. INDEMNITY. YOU AGREE TO DEFEND AND INDEMNIFY US FOR ALL LOSSES, DAMAGES, CLAIMS, LIABILITIES, OBLIGATIONS, SUITS, TOLLS, FEES, INJURIES, COSTS AND REASONABLE ATTORNEYS' FEES, OR THE LIKE, WHETHER BASED ON A THEORY OF NEGLIGENCE, TORT, STRICT LIABILITY OR OTHERWISE, INCURRED, CAUSED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE LEASE OR THE EQUIPMENT including, without limitation, the manufacture, purchase, lease, financing, selection, ownership, delivery, possession, use, storage, operation, condition, maintenance, repair, return or other disposition thereof.

8. LOSS OR DAMAGE. You assume all risks of loss, theft, governmental taking, damage to or destruction of the Equipment. If any item of Equipment is damaged and can be repaired, you shall promptly notify us in writing and, at your cost, within 30 days of such damage, repair the affected item. If any item of Equipment is lost, stolen, taken by any governmental authority or damaged beyond repair, you will immediately notify us in writing and, at our option you will, at your cost, within 30 days after such event, either: (a) replace the affected item with a comparable item acceptable to us, or (b) for each affected item of Equipment (calculated on the pro rata cost of the affected item(s) as compared to the total cost of all items on the Schedule), pay us the total of the Stipulated Loss Value for each such item of Equipment. Upon our receipt of such Stipulated Loss Value, we will then notify you of the applicable reduction of rent and transfer to you all our rights, title and interest in the affected item(s) of Equipment AS-IS AND WHERE-IS, WITHOUT ANY RECOURSE TO OR WARRANTY FROM US, EXPRESS OR IMPLIED AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. Insurance proceeds will be applied toward repair, replacement or payment owing to us, as applicable.

9. INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee (with a lender's loss payable endorsement if required by us); and (b) maintain commercial general liability insurance, covering personal injury and property damage in amounts acceptable to us, naming us as additional insured. All insurance policies must be issued by insurance carriers acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. You hereby appoint us as your attorney-in-fact to make proof of loss and claims for insurance, to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made as a result of such insurance policies. Property insurance proceeds shall be payable to us irrespective of any breach of warranty or other of your acts or omissions and no insurance shall be subject to any co-insurance clause. Promptly upon our request you agree to deliver to us evidence of insurance reasonably satisfactory to us, including evidence of renewal and replacement coverage.

10. NET LEASE; UNCONDITIONAL OBLIGATION. Each Lease is a net lease. WE HAVE NOT SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF ANY LEASE. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND YOU HAVE NO RIGHT TO CANCEL ANY LEASE ONCE SIGNED, OR REDUCE OR SET-OFF AGAINST ANY PAYMENT FOR ANY REASON WHATSOEVER INCLUDING, WITHOUT LIMITATION, FAILURE, LOSS OR DAMAGE OF, OR TO, ANY EQUIPMENT. WE SHALL NOT BE LIABLE TO YOU FOR ANY LOSSES, DAMAGES, OR EXPENSES OF ANY KIND OR NATURE CAUSED, DIRECTLY OR INDIRECTLY, BY ANY EQUIPMENT OR THE USE, INABILITY TO USE, OR MAINTENANCE OF ANY EQUIPMENT, OR THE REPAIR, SERVICE OR ADJUSTMENT THEREOF, OR FOR ANY LOSS OF BUSINESS HOWSOEVER CAUSED. If any Supplier fails to provide any service or fulfill any other obligation to you, you shall not make any claim against us and shall continue to fully perform your obligations to us under each Lease.

11. REPRESENTATIONS, WARRANTIES AND COVENANTS. You hereby represent and warrant to us that, on the date hereof and on the date of execution of each Schedule, and you covenant that: (a) you have the authority to enter into, and perform all of your obligations under, each Lease, and all related documents (together, the "Documents"); (b) you have duly authorized, executed and delivered the Documents; (c) the Documents constitute valid, legal and binding agreements, enforceable in accordance with their terms; (d) no approval or consent is required from any governmental authority or other lender with respect to your entry into or performance of the Documents except such as have already been obtained and disclosed to us; (e) your execution and performance of the Documents will not: (i) violate any judgment, order, law or regulation applicable to you or any provision of your organizational documents or any other financing arrangement to which you are a party; or (ii) result in any breach of, constitute a default under, or result in the creation of any lien or other encumbrance upon any Equipment pursuant to, any agreement or instrument (other than in favor of us) to which you are a party; (f) there are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting you, which may have a material adverse effect on your ability to fulfill your obligations under the Documents; (g) the Equipment is and will remain tangible personal property; (h) your exact legal name is as set forth in the signature block on the first page of this Master Lease; (i) you are and will be at all times validly existing and in good standing under the laws of the State of your organization; (j) you are and will remain duly qualified to do business in each jurisdiction where Equipment is located and wherever necessary to conduct your business; (k) you are and will remain in compliance with all laws, rules and regulations applicable to the operation of your business, the Equipment and/or its use, and at your cost you shall make all modifications and improvements to the Equipment required by law; (l) you and each person who you control or own a controlling interest in, or who owns a controlling interest in or otherwise controls you (collectively, "Representatives") are and will remain in compliance with all laws, rules, regulations and orders concerning sanctions, embargoes, and the prevention and detection of corruption, bribery, money laundering and terrorism; and (m) neither you nor any of your Representatives does or will do business in, or is or will be located in a jurisdiction subject to any territorial or country-based sanctions program or listed on any sanctions-related list of designated persons maintained or enforced by the United States government or any other jurisdiction in which you or your Representatives are located or operate or which has authority over you or your Representatives.

12. DEFAULT. You will be in default under a Lease if: (a) you fail to make any payment under any Lease within 10 days of the due date; (b) you or any guarantor of your obligations under any Document ("Guarantor") breach any other obligation under any Document or guaranty and fail to correct such violation within 10 days following notice; (c) you or a Guarantor becomes insolvent, are liquidated or dissolved, stop doing business or assign your or such Guarantor's rights or property for the benefit of creditors, or a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law; (d) you or any Guarantor default under any other agreement now existing or hereafter entered into with us or any material agreement with any of our affiliates or any third party lender, lessor, or creditor; (e) any representation made or information provided by you or a Guarantor in connection with any Document or guaranty is or will be false or misleading in any material respect; (f) you, any Guarantor, or any principal owner, member of a board of directors (or similar governing body), or senior officer of you or any Guarantor is convicted of a felony; (g) any Equipment is illegally used; (h) without our prior written consent, you or any Guarantor or any Person that directly or indirectly controls you or any Guarantor (1) experiences a change in control or material change in ownership (whether in one or multiple transactions), (2) transfers substantially all of your or such Guarantor's assets, (3) merges or consolidates with another Person, or (4) experiences a division or divisive merger; (i) if you are a sole proprietorship or a partnership, you, or any partner, as applicable, die or have a guardian appointed; (j) any individual Guarantor dies or has a guardian appointed; (k) you or any Guarantor suffers a material adverse change in your or their financial condition; or (l) you default under any software license or similar agreement financed by us or subject to our security interest. Time is of the essence regarding performance of your Lease obligations.

[redacted]

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

13. **REMEDIES.** If you default, we may, in our sole discretion, do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BENEFIT OF THE BARGAIN AND NOT AS A PENALTY, the Stipulated Loss Value, which amount shall be due upon demand; (b) declare any other agreements between you and us in default; (c) require you to return all of the Equipment at your cost to a place designated by us in the manner described in the applicable Lease; (d) we or our agent may enter the property where the Equipment is located, with or without legal process, and repossess or disable the Equipment and you waive and will not make any claims against us for damages, for trespass or for any other reason, and upon recovery of the Equipment, we will not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of, any and all information residing on or within the Equipment; (e) lease or sell the Equipment or any portion thereof, and we may apply the proceeds as may be acceptable to us to the extent permitted by applicable law; (f) charge you interest on all amounts due to us from the due date until date of payment at the rate of 1.5% per month, but in no event more than the lawful maximum rate; (g) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs; and (h) cancel or terminate any Lease. These remedies are cumulative and nonexclusive of any other rights and remedies at law or in equity and may be exercised individually or concurrently. No failure or delay by us to exercise any right nor any course of dealing will operate as a waiver of any other right or remedy. To the extent permitted by applicable law, you hereby waive any rights now or hereafter conferred by statute or otherwise that may limit or modify any of our rights or remedies under any Lease, including any rights you may have which require us to sell any Equipment to mitigate damages or provide you with notices of default, intent to accelerate amounts becoming due or acceleration of such amounts.

14. **REMOVAL OF DATA.** You are solely responsible for removing all data from any digital storage device, hard drive or other electronic medium prior to returning or disposing of any Equipment (and you are solely responsible for selecting an appropriate removal standard that meets your business needs and complies with applicable laws). We shall not be liable for any losses, directly or indirectly arising out of, or by reason of the presence and/or use of any information, images or content retained by or resident in any Equipment returned to us or repossessed by us.

15. **ASSIGNMENT.** You may not assign, sell, transfer, encumber or dispose of any rights or obligations under the Lease or sub-lease the Equipment. We may, without notifying you, sell, assign or encumber any or all of our interest in any Lease and/or our interest in any Equipment. If we sell, assign or encumber a Lease, the buyer, assignee or secured party will have all of our rights under the Lease, but none of our obligations, unless expressly assumed by them. You will pay all Payments under any assigned Lease to the assignee if you receive written instructions from us to do so. You agree not to assert against any buyer, assignee or secured party, any claims, offsets or defenses you may have against us.

16. **NOTICES.** Notices must be in writing and will be deemed given 5 days after mailing first class or sent by recognized overnight courier to the recipient's address set forth above or at such other address as may be last known to the sender.

17. **INFORMATION.** We may receive from and disclose to any Person, including, without limiting any affiliate of ours, and any credit reporting agency whether or not related to us, for any purpose, information about your accounts, credit application and credit experience with us and you authorize any Person to release to us or any affiliate of ours on a "need to know" basis, any information related to your accounts, credit experience and account information. This shall be continuing authorization for all present and future disclosures of your account information, credit application and credit experience made by us, or any Person requested to release such information to us.

18. **LIMITATIONS ON CHARGES.** Any part of any Lease that could, but for this Section, be read under any circumstance to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Lease to the maximum amount allowed under the legal limit. Any amount received by us in excess of that legally allowed will at our sole discretion be applied by us to the payment of amounts legally owed under the Lease or refunded to you.

19. **EXECUTION AND TRANSMISSION OF DOCUMENTATION.** We may, in our sole discretion, accept a photocopy, electronically transmitted, facsimile, or other reproduction (any a "Counterpart") of this Master Lease and any other Documents as the binding and effective record of such Documents whether or not a manually signed copy hereof or thereof is also received by us. Counterparts may, in our sole discretion, be executed manually or by electronic means by either party. No Document requiring our signature is binding on us until we sign it. When a Counterpart of a Document showing your signature is signed by us (manually or electronically), then the Counterpart bearing our signature, if executed by us manually, or the Counterpart electronically maintained by us, if executed by us electronically, shall constitute the sole original document for all purposes and shall constitute the authoritative record of such Document for the purposes of establishing the provisions of such Document and to the extent that such Document constitutes chattel paper as that term is defined in the UCC, perfection of a security interest by possession or control may only be accomplished by possession or control of such Counterpart. You agree not to raise as a defense to the enforcement of any Document that it was executed by electronic means by either party or transmitted to us by facsimile or other electronic means.

20. **SURVIVAL.** Your representations, warranties, indemnification obligations, and your obligations to pay or reimburse us for any taxes or any other amounts due by you with respect to a Lease, as such representations, warranties, and obligations are set forth in this Master Lease and any Lease, shall survive the expiration, cancellation or termination of this Master Lease and any Lease.

21. **JURY TRIAL WAIVER; APPLICABLE LAW, VENUE.** ALL PARTIES WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO ANY EQUIPMENT, THIS MASTER LEASE, ANY LEASE, ANY OTHER DOCUMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY. THIS MASTER LEASE AND EACH OTHER DOCUMENT WILL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF IOWA, AND ANY LEGAL ACTION OR PROCEEDING MAY BE BROUGHT IN THE FEDERAL OR STATE COURTS OF IOWA. YOU AGREE THAT IN NO EVENT SHALL YOU HAVE A REMEDY OF, AND IN NO EVENT SHALL WE BE LIABLE TO YOU FOR, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR PUNITIVE OR EXEMPLARY DAMAGES, AND YOU HEREBY EXPRESSLY WAIVE ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES.

22. **MISCELLANEOUS.** If a court finds any provision of the Lease to be unenforceable, all other terms will remain in effect and enforceable. You authorize us to insert or correct missing or incorrect information on the Lease, including your proper legal name, serial numbers and any other information describing the Equipment. You have no right to terminate or prepay any Lease or any Payments. If you so request, and we permit, the early termination or prepayment of a Lease, you agree to pay a fee determined by us for such privilege. YOU HEREBY ACKNOWLEDGE AND CONFIRM THAT YOU HAVE NOT RECEIVED ANY LEGAL, TAX, FINANCIAL OR ACCOUNTING ADVICE FROM US OR ANY SUPPLIER. You shall furnish us with current financial statements, any other financial information and/or information regarding your business and its owners and affiliates as we may reasonably request from time to time. You agree to promptly execute and deliver to us such further documents, and take such further action as we may request, in order to carry out more effectively the intent and purpose of this Master Agreement and any Schedule and/or comply with laws or regulations applicable to us, you, the Equipment and/or the Lease. You acknowledge that we may incur out-of-pocket costs and expenses in connection with the transactions contemplated by each Lease, and accordingly agree upon our request to pay (or reimburse us for) the reasonable costs and expenses related to (a) filing any financing, continuation or termination statements; (b) any title and lien searches with respect to a Lease and the Equipment; (c) documentary stamp taxes relating to a Lease; and (d) procuring your and any Guarantor's certified charter documents and good standing certificates. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge for any check that is returned by the bank for any reason (not to exceed the maximum amount permitted by law). You will notify us in advance of any proposed change in your legal name, your address, your type of legal entity or your state of incorporation or formation. Credit of your payments toward the amounts you owe on your Leases will not occur until final payment has cleared through your bank and may also be delayed if payment is not received at the correct payment address. You shall remit payments in the form of direct debit, wire transfers, or your company's checks. You agree that the fees and other amounts payable by you under this Master Lease and any Lease may include a profit to us. ANY AGREEMENT REACHED BY THE PARTIES ON THE SUBJECT MATTER HEREOF ARE CONTAINED IN THE MASTER LEASE AND THE APPLICABLE SCHEDULE, WHICH INCORPORATE THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES, EXCEPT AS THE PARTIES MAY LATER AGREE TO MODIFY IN A WRITING SIGNED BY US. ORAL AGREEMENTS OR COMMITMENTS TO MODIFY SUCH DOCUMENTS, OR TO FORBEAR FROM ENFORCING REPAYMENT OF THE SAME, ARE NOT ENFORCEABLE.

COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# Equipment Schedule
## Dollar Purchase Option

*HYG Financial Services, Inc.*
5000 Riverside Drive | Suite 300 East | Irving, TX 75039-4314

[redacted]

HYSTER CAPITAL

Equipment Schedule Number [redacted]-009 dated as of December 6, 2023 to
Master Agreement Number [redacted] dated as of December 6, 2023

**Name and Address of Lessee:**
**JUDGE WAREHOUSING, LLC**
**400 Expansion Blvd**
**Port Wentworth, GA 31407-3052**

"Master Agreement" means that certain master agreement between you and us which has been assigned a master account number corresponding to the Master Agreement Number referenced above. "Schedule" means this Equipment Schedule. "Lessee" means the above referenced entity or sole proprietorship and any other entity or sole proprietorship listed as a Lessee in the signature blocks below, and is also referred to as "you" and "your". Each entity that signs below as Lessee agrees that its liability in connection with this Schedule is joint and several. The terms and conditions of the Master Agreement are incorporated into this Schedule, and together, this Schedule and the Master Agreement as it relates to this Schedule, constitute a lease ("Lease") between us and you for the Equipment described in this Schedule, provided however, that if the Lessor named above is not the lessor named in the Master Agreement, then, for purposes of the Lease evidenced by this Schedule, all references to the "lessor", "we" or "us" in said Master Agreement shall be deemed to refer to the Lessor named above. The account number for the Lease shall correspond to this Schedule number. "Payment" shall mean any "Payment" or "Lease Payment" as such term is defined in the applicable Master Agreement, and shall be in the amount set forth in Section B herein. Capitalized terms used but not defined herein shall have the meanings given to them in the Master Agreement.

**A. EQUIPMENT.** Pursuant to the terms of the Lease, we agree to acquire on your behalf and lease to you pursuant to the terms herein the Equipment listed below:

| Qty | Make | Model | Year | Equipment Type | Serial/VIN Number |
|---|---|---|---|---|---|
| 1 | Hyster | H120FT | 2012 | Used Forklift | R035V02671K |

**Equipment Location:** 400 Bourne Ave, Savannah, GA 31408-9702

**Supplier of Equipment (Name):** ALTA INDUSTRIAL EQUIPMENT NEW YORK LLC, 845 SOUTH 1ST ST, RONKONKOMA, NY 11779

**B. FINANCIAL TERMS.**

| | |
|---|---|
| 1. Term (No. of Months): 36<br>2. Payment: $1,555.02 (plus applicable taxes)<br>3. Frequency of Payment: Monthly (in Arrears)<br>4. Administrative Fee: $195.00 (will be billed on your first invoice) | 5. Lessee Purchase Order # (for invoicing purposes only):<br>6. Approval Expiration Date: June 3, 2024 02/01/2024<br>7. Interest Rate: 9%<br>(Interest for the term of the Lease is calculated as of the Commencement Date)<br>8. Purchase Option Price: $1.00 |

*In states assessing upfront sales tax and use tax, if you choose to include such tax amount as part of the Lease, your Payment, starting with the first invoice, will be adjusted to reflect such tax as a component of the total amount funded by us under this Lease. In other states, the applicable sales tax and use tax is charged on a periodic basis, and will be included on your invoice. If you are exempt from paying sales and use tax you shall provide to us a valid exemption certificate prior to the Commencement Date.

**C. APPROVAL EXPIRATION DATE.** If the Commencement Date does not take place on or before the Approval Expiration Date set forth above, we may either terminate the Schedule, in which case you will pay us all amounts we have paid on account of any Equipment, or extend the Approval Expiration Date, provided that in consideration of any such extension, we reserve the right to adjust the Interest Rate set forth in section B and your Payments to maintain our after tax economic yield and cash flow. However, no such modifications will be binding on you unless and until you execute the modified Schedule (or other document containing all such modifications).

**D. DEEMED ACCEPTANCE.** Notwithstanding anything to the contrary in the Master Agreement, the Equipment will be deemed accepted by you on the date the Equipment is delivered to you, or any later date that we designate, which will be the Commencement Date assuming that you satisfy all other pre-conditions to the Lease, as determined by us. You will have five days following the delivery of the Equipment to notify us in writing that you would like to reject the Equipment. We may require that you verify your acceptance of the Equipment by telephone or an executed certificate of acceptance.

**E. PROPERTY TAXES/OWNERSHIP.** Notwithstanding anything contained in the Master Agreement, unless otherwise required by applicable law, you agree to file all required property tax returns and promptly pay all property taxes which may be assessed against the Equipment, and if we ask, provide us with proof of payment. You will have title to the Equipment immediately upon delivery and will be the owner of the Equipment and you have granted us a security interest in the Equipment and all products and proceeds thereof as set forth in the Master Agreement. You and we agree that for federal tax purposes, it is our mutual intention that you shall be considered the owner of the Equipment. We shall in no event be liable to you if you fail to secure any tax benefits available to the owner of the Equipment. We may notify you (and you agree to follow such notification) regarding any changes in property tax reporting and payment responsibilities.

**F. PURCHASE OPTION.** So long as no default exists under this Lease and this Lease has not been earlier terminated, you may at Lease expiration, purchase all (but not less than all) of our interest in the Equipment leased pursuant to this Schedule on an AS-IS, WHERE-IS BASIS, WITHOUT ANY RECOURSE TO OR WARRANTY FROM US, EXPRESS OR IMPLIED, for cash equal to the Purchase Option Price (plus applicable sales and use and other taxes).

**G. PREPAYMENT AND PREPAYMENT FEE.** You have no right to prepay this Lease except by payment of the Prepayment Amount. Provided you are not in default under this Lease, you have the right to prepay in full, but not in part, all of your obligations under this Lease (the "Prepayment") prior to the end of the scheduled Term. Any Prepayment shall be made in the Prepayment Amount calculated as of the Effective Prepayment Date. "Prepayment Amount" means the sum of: (a) the Stipulated Loss Value, plus (b) a prepayment fee in the amount of 1% of such Stipulated Loss Value for each full 12 months

**THIS SCHEDULE INCLUDES THE TERMS ON THE ATTACHED PAGE(S).**
**THIS SCHEDULE SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY US.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

| | |
|---|---|
| DocuSigned by:<br>**Lessor: HYG FINANCIAL SERVICES, INC.** | **Lessee: JUDGE WAREHOUSING, LLC** |
| Palmer, Veronica | Michael Wapnowl |
| Signature of authorized signer | Signature of authorized signer |
| Palmer, Veronica Authorized Signer | Michael Wapnowl V.Pres. Operation |
| Print Name and Title | Print Name and Title |
| | 12/12/2023 |

[redacted]



COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

remaining in the Term as of the Effective Prepayment Date (but in no event shall the prepayment fee exceed 5% of the Stipulated Loss Value). "Effective Prepayment Date" means the Payment Date on which the Prepayment Amount is received by us, or if not received on a Payment Date, the next Payment Date following receipt of the Prepayment Amount.

H. **PAYMENT ADJUSTMENT.** We reserve the right to adjust your Lease Payment if the Swap Rate as reported for the business day prior to the Commencement Date is higher than the Swap Rate as of the date of this Schedule (the "Initial Rate Date") in an amount equal to the difference between the Swap Rate on the Initial Rate Date and the Swap Rate on the business day before the Commencement Date. We will notify you if your Lease Payments change. "Swap Rate" means the interest rate for swaps that most closely approximates the Term as published by the Intercontinental Exchange (NYSE:ICE) in its ICE Benchmark Administration Report entitled "ICE Swap Rate Historical Rates (Series/Run USD Rates SOFR 1100)" ICE Swap Rate Historical Rates Website (https://www.theice.com/marketdata/reports/180) (or as published by such other nationally recognized reporting source or publication as we may now or hereafter specify).

**ALL TERMS AND CONDITIONS ON THIS SCHEDULE ARE BINDING UPON THE PARTIES HERETO.** To the extent of any conflict or inconsistency between this Schedule and the Master Agreement, this Schedule will prevail, but only with respect to the Lease created hereunder. This Schedule is not binding or effective with respect to the Master Agreement or Equipment until executed on behalf of us and you by authorized representatives.

COPY VIEW

[redacted]

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

NACCO MATERIALS HANDLING GROUP

NMHG FINANCIAL SERVICES

# MASTER LEASE AGREEMENT

Master Lease Agreement No. [redacted]

Master Lease Agreement Date: OCTOBER 26, 2015

| | | | |
|---|---|---|---|
| Lessor: | NMHG FINANCIAL SERVICES, INC. | Lessee: | JUDGE WAREHOUSING, LLC |
| Address: | 10 RIVERVIEW DRIVE | Street Address: | 40 SONNY PERDUE DRIVE |
| City/State/Zip: | DANBURY, CT 06810 | City/State/Zip: | GARDEN CITY, GA 31408 |
| Contact: Customer Service | Phone: (866) 419-7662 | Federal Tax ID Number: | [redacted] |

"**Master Agreement**" means this Master Lease Agreement. "**Schedule**" means any Equipment Schedule signed by you and us that incorporates the terms of this Master Agreement, each of which will constitute a separate lease (a "**Lease**"). "**Lessor**" means NMHG Financial Services, Inc. together with its successor and assigns, and is also referred to as "we", "us" and "our." "**Lessee**" means the above referenced entity or sole proprietorship and is also referred to as "**you**" and "**your.**" "**Equipment**" means the equipment and other property described on the applicable Schedule, as well as any purchase orders, attachments, accessories, accessions, replacements, replacement parts, substitutions, additions, upgrades, exchanges and repairs to the equipment and other property. All terms not defined herein shall have the meaning provided in any Schedule. In the event of a conflict between the provisions of this Master Agreement and a Schedule, the provisions of such Schedule will control.

## TERMS AND CONDITIONS

This Master Agreement is dated as of the date first written above, and is by and between us, our successors and assigns and you. You and we agree, for good and valuable consideration and intending to be legally bound, as follows:

1. **COMMENCEMENT.** We agree to lease to you, and you agree to lease from us, the Equipment described in a Schedule signed by you and us. The commencement of a Lease (the "**Commencement Date**") and your right to use such Equipment identified on the applicable Schedule will occur on the date that you satisfy all conditions of the Lease, as determined by us, including, without limitation: (i) the delivery of the Equipment to you; and (ii) your execution of a Certificate of Acceptance for such Equipment. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing a Schedule you assign to us all of your rights, but none of your obligations under it. If, for any reason: (i) the dealer, distributor and/or the manufacturer of the Equipment fails to deliver, or delays the delivery of the Equipment; or (ii) the Equipment is unsatisfactory, you agree that we are not liable for, and you will not make any claim against us for damages or for specific performance of this Master Agreement and/or such Lease.

2. **LEASE PAYMENTS.** You agree to send to us the Lease Payments (as specified in the corresponding Schedule) and all other sums when due and payable under a Lease at the address we provide to you. Lease Payments are due whether or not you receive an invoice. Unless indicated otherwise in the Schedule, your Lease Payments are due in arrears and your payment date will be 30 days from the Commencement Date (the "**Payment Date**"). If you request that your Payment Date start later than 30 days after the Commencement Date, if we approve such a request, we may increase your first Lease Payment by 1/30th of the scheduled Lease Payment for each day between the originally scheduled Payment Date and the re-scheduled Payment Date (the "**Additional Days**") and the Term of the Schedule will be extended by a number of days equal to the Additional Days. If there are changes or corrections in the configuration or cost of the Equipment or the calculation of related sales and other taxes, you authorize us to adjust the Lease Payments by not more than 15%. The Lease Payments are calculated using a lease rate factor. If the Commencement Date under a Lease does not take place on or before the Last Funding Date, we may extend the Last Funding Date, provided that in consideration of any such extension, we reserve the right to adjust the lease rate factor and your Lease Payments to maintain our after tax economic yield and cash flow, and we will notify you of any such adjustments. All payments made by you to us pursuant to a Lease may be applied by us first to delinquency charges and other such charges due under such Lease, then to Lease Payments, and then to any other liabilities due and owing under such Lease or under any other agreement, in any order and manner selected by us. You waive any right you may have to direct the application of any payments made by you to us, and we may at our option offset and deduct any of your liabilities or obligations to us from any or all sums owed by us to you. You agree that we may pay fees to or receive rebates, discounts, subsidies or other compensation or financial benefits (including the ability to fund over time amounts that may be financed hereunder) from the manufacturer, supplier, wholesaler or other vendor of the Equipment, a broker, or other third party in connection with this Lease. Such amounts may affect the amount of your Lease Payments, rate, terms and your total cost hereunder.

3. **TAXES.** You agree to pay and indemnify and hold us harmless from all sales, use, rental, property, excise, gross receipts, withholding and other taxes, charges and fees upon or with respect to the Equipment or the possession, ownership, leasing, use or operation, control or maintenance thereof and relating to any Lease (or any Lease Payments or receipts hereunder or thereunder), by any domestic or foreign governmental entity or taxing authority, whether due before or after the end of the Term shown on the corresponding Schedule. TO THE EXTENT ALLOWED BY APPLICABLE LAW AND UNLESS AND UNTIL WE NOTIFY YOU IN WRITING TO THE CONTRARY, WE WILL FILE ALL PERSONAL PROPERTY TAX RETURNS COVERING THE EQUIPMENT AND WILL PAY THE PERSONAL PROPERTY TAXES LEVIED OR ASSESSED THEREON. YOU WILL, WITHIN FIVE DAYS OF YOUR RECEIPT OF INVOICE, PAY TO US, AS SUPPLEMENTAL RENT, AN AMOUNT EQUAL TO THE PROPERTY TAXES PAID BY US. IF APPLICABLE LAW REQUIRES THAT YOU FILE PERSONAL PROPERTY TAX RETURNS, YOU WILL DO SO AND PAY ANY APPLICABLE TAXES AND, UPON REQUEST, PROVIDE US WITH COPIES OF ALL SUCH PERSONAL PROPERTY TAX RETURNS, TOGETHER WITH EVIDENCE OF PAYMENT THEREFOR, WITHIN 15 DAYS FOLLOWING SUCH REQUEST. Your obligations under this Section shall survive the expiration or other cancellation or termination of this Master Agreement and any Lease.

4. **LATE CHARGES.** For any payment, which is not received within five days of its due date, you agree to pay us a late charge equal to 5% of the amount due (not to exceed the maximum amount permitted by law) as reasonable collection costs.

5. **OWNERSHIP, USE, MAINTENANCE AND REPAIR.** Unless otherwise specified in the applicable Schedule, we own the Equipment and you have the right to use the Equipment under the terms of the Lease and you grant us a precautionary security interest in the Equipment and all products and proceeds thereof to secure all of your obligations under the Lease in the event the Lease is deemed to be a secured transaction. So long as you are not in default of your obligations, we hereby assign to you all our rights under any manufacturer or supplier warranties. You must keep the Equipment free of liens, and notify us immediately if any tax or other lien is or will be placed on the Equipment. You will not remove the Equipment from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment in your exclusive control and possession; (b) USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) at your sole cost, keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; (e) allow only qualified and properly licensed personnel to operate the Equipment; (f) promptly notify us of any malfunction in the hour meter; (g) maintain accurate and complete records of all repairs and maintenance to the Equipment; and (h) give us reasonable access to inspect the Equipment and its maintenance and other records. Any modifications or additions to the Equipment required by any governmental edict will be promptly made by you at your own expense. Without our prior written consent, you will not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its economic value or functional utility, except as may be required pursuant to the preceding sentence. The Equipment must remain in the continental United States at all times. In case you fail to comply with any provision of any Lease, we may effect such compliance, and all expenses incurred by us in doing so will constitute additional expenses under such Lease due to us within five days after we send notice to you requesting payment. Our effecting such compliance will not be a waiver of your default.

6. **INDEMNITY.** YOU ARE RESPONSIBLE FOR ALL LOSSES, DAMAGES, CLAIMS, PATENT, TRADEMARK, OR COPYRIGHT INFRINGEMENT CLAIMS, (INCLUDING WITHOUT LIMITATION ENVIRONMENTAL LIABILITIES ), INJURIES AND ATTORNEYS' FEES AND COSTS, INCLUDING WITHOUT LIMITATION, THOSE INCURRED IN CONNECTION WITH RESPONDING TO SUBPOENAS, THIRD PARTY OR OTHERWISE ("CLAIMS"), WHETHER BASED ON A THEORY OF STRICT LIABILITY OR OTHERWISE, INCURRED, CAUSED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE EQUIPMENT, INCLUDING ITS MANUFACTURE, ACQUISITION, DELIVERY,

COPY VIEW

[redacted]

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

INSTALLATION, OWNERSHIP, PURCHASE, SALE, OPERATION, USE, LEASE, MAINTENANCE AND ANY DEFECTS. YOU AGREE TO DEFEND AND INDEMNIFY US AGAINST ALL CLAIMS, ALTHOUGH WE RESERVE THE RIGHT TO CONTROL THE DEFENSE AND TO SELECT OR APPROVE DEFENSE COUNSEL AT YOUR EXPENSE. THIS INDEMNITY CONTINUES BEYOND THE EXPIRATION OR OTHER CANCELLATION OR TERMINATION OF THIS MASTER AGREEMENT AND ANY LEASE AND MAY BE ENFORCED BY, AND IS FOR THE BENEFIT OF US AND OUR SUCCESSORS, ASSIGNS, AFFILIATES, BENEFICIARIES AND ALL OF OUR AND SUCH AFFILIATES', BENEFICIARIES', SUCCESSORS' AND ASSIGNS' RESPECTIVE DIRECTORS, SHAREHOLDERS, OFFICERS, EMPLOYEES, AGENTS, PREDECESSORS, ATTORNEYS-IN-FACT AND LAWYERS.

7. LOSS OR DAMAGE. You assume all risks of loss, theft, damage to or destruction of the Equipment. If any item of Equipment is lost, stolen or damaged you will immediately notify us in writing and, at your option and cost, within 30 days after such event, either: (a) promptly repair the item to our satisfaction; or (b) pay us the sum of: (i) all past due and current Lease Payments; (ii) the present value of (A) all remaining Lease Payments for the affected item(s) of Equipment, and (B) the amount of the Purchase Option set forth in the applicable Schedule for the affected item(s) of Equipment, or if no Purchase Option is specified, the Fair Market Value of the affected item(s) of Equipment, each discounted at the rate of 4% per annum (or if such rate is not permitted by applicable law, then at the lowest permitted rate); and (iii) all other amounts due under the Lease (together, the "**Stipulated Loss Value**"). Upon our receipt of such Stipulated Loss Value, we will then transfer to you all our rights, title and interest in the affected item(s) of Equipment AS-IS AND WHERE-IS, WITHOUT ANY RECOURSE TO OR WARRANTY FROM US, EXPRESS OR IMPLIED. Insurance proceeds will be applied toward repair, replacement or payment owing to us, as applicable. "**Fair Market Value**" of the Equipment means its installed fair market value at the end of the Term, assuming good order and condition (except for ordinary wear and tear from normal use), as estimated by us. If you disagree with our estimate of fair market value, upon your request, we will appoint an independent appraiser (reasonably acceptable to you) to determine fair market value and that determination shall be final, binding and conclusive. You shall bear all costs associated with any such appraisal.

8. INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for the higher of Stipulated Loss Value or its full replacement value, naming us as loss payee; and (b) maintain Commercial General Liability insurance, covering personal injury and property damage for not less than $1,000,000 per occurrence, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. You hereby appoint us as your attorney-in-fact to make proof of loss and claim for insurance, to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made as a result of such insurance policies. The insurance shall be payable to us irrespective of any breach of warranty or other act or omission of Lessee and no insurance shall be subject to any co-insurance clause. You agree to deliver to us evidence of insurance reasonably satisfactory to us.

9. NET LEASE; UNCONDITIONAL OBLIGATION. Each Lease is a net lease. Your obligation to pay Lease Payments and other amounts due under such Lease shall be absolute and unconditional. You shall not be entitled to any abatement or reductions of, or set-offs against, said Lease Payments or other amounts, including, without limitation, those arising or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of our strict tort or negligence) of yours against us under such Lease or otherwise. Nor shall any Lease terminate or your obligations be affected by reason of any defect in or damage to, or loss of possession, use or destruction of any Equipment from whatsoever cause. It is the intention of the parties that Lease Payments and other amounts due under each Lease shall continue to be payable in all events in the manner and at the times set forth in such Lease unless the obligation to do so shall have been terminated pursuant to the express terms of such Lease.

10. REPRESENTATIONS, WARRANTIES AND COVENANTS. You hereby represent and warrant to us that on the date hereof and on the date of execution of each Schedule that, and you covenant with us as follows, in each case until all of the obligations hereunder and under each Schedule has been paid in full to us: (a) you have the authority to enter into, and perform under this Master Agreement, each Schedule, and all related documents (together, the "**Documents**") and are duly qualified to do business in the jurisdiction where the Equipment is located and wherever necessary to conduct your business (b) the Documents have been duly authorized, executed and delivered by you and constitute valid, legal and binding agreements, enforceable in accordance with their terms (c) no approval, consent or withholding of objections is required from any governmental authority with respect to the entry into or performance by you of the Documents except such as have already been obtained; (d) the execution and performance by you of the Documents will not: (i) violate any judgment, order, law or regulation applicable to you or any provision of your organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien or other encumbrance upon any Equipment pursuant to any agreement or instrument (other than this Master Agreement or any Lease) to which you are a party; (e) there are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting you, which will have a material adverse effect on your ability to fulfill your obligations under the Documents; (f) the Equipment is and will remain tangible personal property; (g) your exact legal name is as set forth in the signature block on the last page of this Master Agreement and you are and will be at all times validly existing and in good standing under the laws of the State/Commonwealth of your organization; and (h) you are and will remain in full compliance with all laws, rules and regulations applicable to you including, without limitation: (i) the USA PATRIOT ACT; (ii) laws ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or will be (A) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("**OFAC**"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation; or (B) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders; and (iii) all applicable Bank Secrecy Act ("**BSA**") laws, rules, regulations and government guidance relating to BSA compliance import or export controls, anti-money laundering and terrorist financing.

11. DEFAULT. Time is of the essence. You will be in default under a Lease if: (a) you fail to remit to us any payment within ten days of the due date; (b) you or any guarantor of your obligations under any Document ("**Guarantor**") breach any other obligation under any Document or guaranty and fail to correct such violation within ten days following written notice, (c) you or a Guarantor becomes insolvent, are liquidated or dissolved, transfer substantially all of your or such Guarantor's stock or assets, stop doing business or assign your or such Guarantor's rights or property for the benefit of creditors, or a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law; (d) you or any Guarantor default under any other agreement with us or any of our affiliates; (e) any representation made by you or a Guarantor in connection with any Document or guaranty is or will be false or misleading in any material respect; (f) any Equipment is illegally used; (g) there is any merger, consolidation or change in controlling ownership of your entity or any Guarantor's entity; (h) if you are a sole proprietorship, you die or have a guardian appointed; or (i) any individual Guarantor dies or has a guardian appointed.

12. REMEDIES. If you default, we may, in our sole discretion, do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BENEFIT OF THE BARGAIN AND NOT AS A PENALTY, the Stipulated Loss Value as calculated in Section 7; (b) declare any other agreements between us in default; (c) require you to return all of the Equipment, and if so specified in the related Schedule, return such Equipment in the manner outlined in such Schedule; (d) we or our agent may enter the property where the Equipment is located and peaceably, with or without legal process, repossess or disable the Equipment and you waive and will not make any claims against us for damages, for trespass or for any other reason and upon recovery of the Equipment, we will not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within the Equipment; (e) lease or sell the Equipment or any portion thereof, and may apply the proceeds in the following order of priority: (i) to pay all of our costs, charges and expenses related to the repossession, sale or other disposition; then (ii) to the extent not previously paid by you to us, to pay us all sums due from you under the Lease; then (iii) to reimburse you for any sums previously paid by you to us as liquidated damages; and (iv) any surplus shall be retained by us, unless a Lease is otherwise determined to be a secured transaction, in which case we will remit any excess to the party legally entitled to such excess; and you shall immediately pay us any deficiency in (e)(i) and (e)(ii) above, or in such other manner as may be acceptable to us; (f) charge you interest on all amounts due us from the due date until date of payment at the rate of 1-1/2% per month, but in no event more than the lawful maximum rate; (g) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs; and (h) cancel or terminate the Lease. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right will not operate as a waiver of any other right or future right. To the extent permitted by applicable law, you hereby waive any rights now or hereafter conferred by statute or otherwise that may limit or modify any of our rights or remedies under this Lease, including any rights you may have which require us to sell any Equipment to mitigate damages or provide you with notices of default, intent to accelerate amounts becoming due or acceleration of such amounts.

13. ASSIGNMENT. You may not assign or dispose of any rights or obligations under the Lease or sub-lease the Equipment, without our prior written consent. We may, without notifying you assign any or all of our interest in the Lease or our interest in the Equipment. If we do make an assignment of the Lease, our assignee will have all of our rights under the Lease, but none of our obligations, unless expressly assumed by the assignee. If you receive written notice of an assignment from us, you will pay all Lease Payments and other amounts payable under any assigned Lease to such assignee or as instructed by us. You

COPY VIEW

[redacted]

This is a copy view of the Authorative Copy held by the designated custodian

agree not to assert against our assignee claims, offsets or defenses you may have against us.

14. **MISCELLANEOUS.** Notices must be in writing and will be deemed given 5 days after mailing to your (or our) business address. You authorize us or our agent to prepare and file, electronically or otherwise, Uniform Commercial Code ("UCC") financing statements and any amendments or continuation relating to the Equipment. We may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting any affiliate of ours, and any credit reporting agency or other entity whether or not related to us for any purpose, information about your accounts, credit application and credit experience with us and you authorize any Entity to release to us or any affiliate of ours any information related to your accounts, credit experience and account information. This shall be continuing authorization for all present and future disclosures of your account information, credit application and credit experience made by us, or any Entity requested to release such information to us. Any claim you have against us must be made within two (2) years after the event which caused it. If a court finds any provision of the Lease to be unenforceable, all other terms will remain in effect and enforceable. You authorize us to insert or correct missing or incorrect information on the Lease, including your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege. You agree to pay us a fee as shown in the corresponding Schedule to cover our administrative costs in connection with each Lease and costs associated with the filing of any UCC financing statements. YOU HEREBY ACKNOWLEDGE AND CONFIRM THAT YOU HAVE NOT RECEIVED ANY LEGAL, TAX, FINANCIAL OR ACCOUNTING ADVICE FROM US OR ANY SUPPLIER OR MANUFACTURER OF THE EQUIPMENT. Upon our request, you will within 30 days provide us your most current fiscal year-end and quarter-end financial statements, prepared in accordance with generally accepted accounting principles, and any other financial information. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law). You will notify us at least 60 days in advance of any proposed change in your legal name or your state/commonwealth of incorporation or formation. Your representations and warranties provided in the Documents shall survive the date hereof and the date of each Schedule and the expiration, cancellation or termination hereof and the other Documents. Credit to your accounts is subject to final payment by your institution and may also be delayed if payment is not received at our payment address or not accompanied by your invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to you. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

15. **LIMITATIONS ON CHARGES.** We both intend to comply with all applicable laws. We will not charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement or any Lease that could, but for this Section, be read under any circumstance to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Lease to the maximum amount allowed under the legal limit. Any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Lease, or refunded to you.

16. **EXECUTION AND TRANSMISSION OF DOCUMENTATION.** This Agreement and any schedules, exhibits, annexes or related instruments (each an "Instrument") will be created and evidenced as follows: (i) we will deliver to you an electronic or paper version of each Instrument, (ii) you will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means, (iii) we will sign (electronically, digitally or manually, at our option) each signature page so delivered by you (if the Instrument requires our signature), and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument, and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or digital means or used facsimile or other electronic means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature.

17. **PRIOR AGREEMENTS.** If a pre-existing Master Lease Agreement ("Prior Master Agreement") has been executed by you and us, then the terms and conditions of such Prior Master Agreement shall continue to govern any schedules that reference and incorporate the terms of such Prior Master Agreement, and the terms and conditions of this Master Agreement shall govern any schedules that reference and incorporate the terms of this Master Agreement and that are executed on or after the date of this Master Agreement. Nevertheless, it is understood that you and we have agreed for convenience sake to use the same "Master Lease Agreement No." to identify both this Master Agreement and the Prior Master Agreement.

BOTH PARTIES WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS MASTER AGREEMENT, ANY LEASE, ANY OTHER DOCUMENT OR ANY TRANSACTION CONTEMPLATED HEREBY AND THEREBY. THIS MASTER AGREEMENT AND EACH OTHER DOCUMENT WILL BE GOVERNED BY THE LAWS OF IOWA. BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON PAGES 1, 2 AND 3. ANY AGREEMENTS REACHED BY THE PARTIES ARE CONTAINED IN THIS WRITING, WHICH WRITING IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE PARTIES, EXCEPT AS WE MAY LATER AGREE TO MODIFY IN WRITING. ORAL AGREEMENTS OR COMMITMENTS TO MODIFY THIS AGREEMENT OR ANY LEASE, OR TO FORBEAR FROM ENFORCING REPAYMENT OF THE SAME, ARE NOT ENFORCEABLE.

THIS MASTER AGREEMENT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY US.

| | | | |
|---|---|---|---|
| LESSOR: | NMHG FINANCIAL SERVICES, INC. | LESSEE: | JUDGE WAREHOUSING, LLC |
| By | DocuSigned by: Maddox, Maureen | By | x Michael Wynne |
| Name | Maddox, Maureen | Name | x Michael Wynne |
| Title | Leasing Specialist | Title | x V.P. Operations |

IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH NMHG FINANCIAL SERVICES, INC.

Federal law requires us to obtain, verify, and record information that identifies each person or business establishing a business relationship with us. Therefore, you may be required to provide certain information prior to a transaction being funded. This information might include: your name, street address, date of birth, and government issued identification number, such as a Social Security Number or taxpayer identification number and country of citizenship. We may also ask to review your driver's license, passport or other identifying documents that will allow us to verify your identity. In addition, business entities might be asked to provide business name, registered street address, tax identification number, date of establishment of business, nature and type of business, and principal place of business. In accordance with federal and local laws, we will ensure appropriate security is attached to processing and maintaining any retained information.

COPY VIEW

[redacted]