| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| ***Caption in Compliance with D.N.J. LBR 9004-1(b)***<br>**SAUL EWING LLP**<br>Stephen B. Ravin, Esquire<br>Turner N. Falk, Esquire<br>Maxwell M. Hanamirian, Esquire (admitted *pro hac vice*)<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1520<br>Newark, NJ 07102-5426<br>Telephone: (973) 286-6714<br>E-mail: stephen.ravin@saul.com<br>turner.falk@saul.com<br>maxwell.hanamirian@saul.com<br><br>*Counsel to the Debtors and Debtors in Possession* | Chapter 11<br><br>Case No. 25-22123 (JKS)<br><br>(Jointly Administered) |
| In re:<br><br>PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,<br><br>Debtors.[2] | |

**MOTION FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by undersigned counsel, moves for entry of an order pursuant to Sections 105(a), 363 and 364 of Title 11 of the United States Code (the "Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Rules"), authorizing the Debtors to enter into a Premium Finance Agreement, substantially in the form attached as **Exhibit A** (the "Finance Agreement"), with FIRST Insurance Funding, a

[2] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

Division of Lake Forest Bank & Trust Company, N.A. ("FIRST"). In support thereof, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the requested relief are Sections 105(a), 363 and 364 of the Code, 11 U.S.C. §§ 101 *et seq*., and Bankruptcy Rules 4001 and 6004.

## BACKGROUND

3. . On November 14, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Code in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors continue to operate their business and manage their affairs as debtors in possession pursuant to Sections 1107(a) and 1108 of the Code. No trustee or examiner has been appointed in these cases. On December 5, 2025, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

4. As set forth in the *Declaration of Patrick Wynne in Support of First Day Motions for Relief* [Docket No. 19] which is incorporated by reference, the Debtors are engaged in the business of providing transportation, logistic, and warehouse related services. More specifically, the Debtors offer rail boxcar services, container handling services, warehousing services, multiple shipping options (e.g., rail, truck, air, and international shipping), specialized material handling services, cross docking, handling, and packing services, beverage specialists and alcoholic beverages expertise services, and product care and protection services.

5. On November 19, 2025, the Court entered *Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b) for Authority to (I) Maintain, Renew and Continue Insurance Policies and Programs and (II) Honor all Insurance Obligations* [Docket 39] (the "Insurance Order").

6. Pursuant to the Insurance Order, the Debtors are "further authorized, but not directed, to revise, extend, supplement, and/or modify their insurance coverage as needed, including without limitation, through the revision, modification, purchase, or renewal of new or existing Insurance Policies and Programs." See Insurance Order, at ¶ 4.

**THE PREMIUM FINANCE AGREEMENT**

7. In the normal course of business, the Debtors are required to maintain, in current effect, insurance policies providing coverage essential for its operations.

8. FIRST is a division of a national bank engaged in the business of financing insurance premiums.

9. The Debtors seek authority to enter into the Finance Agreement with FIRST, whereby, upon Court approval, FIRST will provide insurance premium financing to the Debtors for the purchase of the following insurance policies: (a) commercial general liability coverage; (b) cargo coverage; and (c) property coverage (collectively, the "Financed Policies"). The Financed Policies are essential to the operation and preservation of the Debtors' business and assets, and in many cases the coverage is required by various regulations, laws, and contracts governing the Debtors' business. Because it is not economically advantageous for the Debtors to pay the premiums on the Financed Policies on an annualized basis, from time to time, the Debtors finance the premiums on these Financed Policies in the ordinary course.

10. Under the Finance Agreement, the total amount of premiums, taxes, and fees is $394,554.07, for which the Debtors are required to make an initial down payment in the amount

of $138,353.92, and the total amount to be financed is $256,200.15. Under the Finance Agreement, the Debtors will become obligated to pay FIRST the sum of $264,189.68 (which includes interest on the amount financed at 8.25% APR), in 8 monthly installments of $33,023.71 each. The monthly installment payments are due on the 1st day of each month commencing on September 1, 2026.

11. To secure the repayment of the total obligations, including any late charges, attorney's fees and expenses, and other costs under the Finance Agreement (collectively, the "Indebtedness"), the Debtors are required to grant and assign to FIRST a first-priority lien on, and a security interest in, the Financed Policies, including all returned premiums and unearned premiums and all other collateral as defined in the Finance Agreement (collectively, the "Finance Agreement Collateral").[3]

12. Pursuant to the Finance Agreement, in the event of default, the Debtors irrevocably appoint FIRST as the Debtors' attorney-in-fact with full power of substitution and authority, to: (a) cancel the Financed Policies; (b) receive all sums assigned to it, including the Finance Agreement Collateral; and (c) execute and deliver, on the Debtors' behalf, all documents relating to the Financed Policies in furtherance of the Finance Agreement.

13. As demonstrated by the importance of maintaining necessary insurance, and the preservation of cash flow by financing insurance premiums, the Debtors believe it is in the best interest of the Debtors' estates for the Court to authorize the Debtors to enter into the Finance Agreement. Any alternative would likely require considerable cash expenditures and be detrimental to its restructuring efforts.

**BASIS FOR RELIEF AND RELIEF REQUESTED**

[3] The Finance Agreement provides that the loan terms are governed by the applicable federal law and Illinois law (to the extent not preempted by federal law).

14. Under Section 1108 of the Code, as debtors-in-possession, the Debtors are authorized to operate their businesses. Section 363(c)(1) authorizes a debtor-in-possession to enter ordinary course transactions and use property of the estate in the ordinary course of business. The Debtors intend to enter into the Finance Agreement in the ordinary course of the Debtors' affairs and believes that honoring its obligations thereunder is in the best interest of the estate.

15. Section 364 of the Code authorizes the Debtors to obtain post-petition financing in the manner proposed in the Finance Agreement. Section 364(c) provides that a debtor may obtain credit secured by property that is not otherwise subject to a lien. Specifically, Section 364(c) provides, in pertinent part, that if the debtor is unable to obtain credit solely on an unsecured basis, the court "may authorize the obtaining of credit or the incurring of debt – (2) secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2). By extending secured credit under the Finance Agreement, FIRST is enabling the Debtors to obtain coverage under the Financed Policies, subject to FIRST's first-priority lien and security interest. Additionally, FIRST is extending financing under the Finance Agreement in good faith and entitled to the protections of Section 364(e).

16. Section 105(a) of the Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The requested relief is in the best interests of the Debtors' estates and is necessary and appropriate to further the policies of the Code.

17. The Debtors and FIRST have reached an agreement that the adequate protection appropriate for this financing will be as follows:

a. The Debtors shall be authorized and directed to timely make all payments due under the Finance Agreement and FIRST shall be authorized to receive and apply such payments to the Indebtedness pursuant to the Finance Agreement.

b. If the Debtors do not make any of the payments under the Finance Agreement as and when due, the stay of Section 362(a) (to the extent otherwise applicable) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing the coverage under the Financed Policies, to take all steps necessary and appropriate to cancel the Financed Policies, recover and collect the Finance Agreement Collateral, and apply the Finance Agreement Collateral to the Indebtedness. In exercising such rights, FIRST and/or third parties shall comply with the notice and other relevant provisions of the Finance Agreement.

c. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to Section 503(b)(1) in the Debtors' bankruptcy estates.

d. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following and event of default or otherwise, the excess shall be turned over to the Debtors or any subsequently appointed trustee (under Chapter 7 or 11).

18. It is common practice for insurance premium finance lenders such as FIRST to require that the Debtors grant a security interest in the insurance policies financed in exchange for financing. Absent a first-priority lien on and security interest in the Finance Agreement Collateral, FIRST would not enter the Finance Agreement. Further, the Debtors believe that they would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Finance Agreement. The Debtors would be unable to take out the Financed Policies and obtain coverage in the absence of the Finance Agreement, and the Finance Agreement Collateral would not exist but for the Finance Agreement.

19. The Debtors have determined in their business judgment that the Finance Agreement is the Debtors' best option and provides the most favorable terms. The Debtors

believe the Finance Agreement and its terms are commercially fair and reasonable. The Debtors are required to maintain adequate insurance coverage and, without it, would be unable to operate. Moreover, approval of the Finance Agreement will ensure that the Debtors can continue to operate and will not prejudice the legitimate interests of creditors and other parties in interest.

20. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h).

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order in the form submitted herewith authorizing it to enter into the Finance Agreement with FIRST, and the Debtors and FIRST be authorized and directed to take all actions necessary or appropriate thereunder and granting such other further relief as is just and proper.

Dated: August 24, 2026

**SAUL EWING LLP**

By: */s/ Stephen B. Ravin*

Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:stephen.ravin@saul.com
turner.falk@saul.com

-and-

Maxwell M. Hanamirian, Esquire (admitted *pro hac vice*)
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
E-mail: maxwell.hanamirian@saul.com

*Counsel for Debtors and Debtors in Possession*