Order Filed on September 4, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

***Caption in Compliance with D.N.J. LBR 9004-1(b)***

**SAUL EWING LLP**
Stephen B. Ravin, Esquire
Jeffrey C. Hampton, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
jeffrey.hampton@saul.com
turner.falk@saul.com

*Counsel to the Debtors and Debtors in Possession*

In re:

PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,

Debtors.[1]

Chapter 11

Case No. 25-22123 (JKS)

(Jointly Administered)

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) APPROVING BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND A SALE HEARING, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF**

**DATED: September 4, 2026**

Honorable John K. Sherwood
United States Bankruptcy Court

---

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

Upon the motion ("Motion")[2] of the above-captioned Debtors for entry of this Bidding Procedures Order (i) authorizing and approving the Bidding Procedures attached hereto as Exhibit 1 in connection with the Sale of the Northern Assets, the Southern Assets, and all other Assets of the Debtors, (ii) approving the Bid Protections with respect to the Stalking Horse Bid and authorizing the Debtors to incur and pay the Bid Protections to the extent applicable, (iii) establishing certain dates and deadlines for the sale process, including scheduling an Auction of the Assets, if necessary, in accordance with the Bidding Procedures, and a Sale Hearing for approval of one or more Sales of the Assets, (iv) approving the form and manner of the Sale Notice, attached hereto as Exhibit 2, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale or Sales and approving the form and manner of the Contract Notice, attached hereto as Exhibit 3, and (vi) granting related relief, as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence and/or proffers in support thereof and having heard the statements in support of the relief requested in the Motion at a hearing on the Motion before this Court ("Hearing"); and

[2] Capitalized terms used but not defined herein are defined in the Motion or the Stalking Horse Agreement as the case may be.

this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:[3]

A. Bidding Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable the best value of, the Assets, as determined by the Debtors in an exercise of their business judgment.

B. Sale Notice. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets for sale; and (v) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale subject to customary exceptions for permitted liens, and no other or further notice of the Sale shall be required.

C. Stalking Horse Agreement and Bid Protections. The Motion is reasonably calculated to provide all interested parties with timely and proper notice of the proposed terms of the Stalking Horse Bid and the applicable Bid Protections, including all applicable information

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

required by Local Rules 6004-1(b)(3) and 6004-2(b)(3). The Debtors have articulated good and sufficient reasons for authorization to incur and pay any Bid Protections, and the Stalking Horse Agreement and the Bid Protections contained therein and as set forth in the Motion are hereby approved. In the event of an Alternative Transaction, any amounts due and owing to the Stalking Horse Bidder shall be paid at Closing solely out of the proceeds of such sale or sales.

D. Auction. The Auction, if held, is necessary to determine the highest or otherwise best bid for the Debtors' Assets, including whether any entity other than the Stalking Horse Bidder is willing to enter into a definitive agreement on terms or conditions more favorable to the Debtors and their estates than those provided in the Stalking Horse Agreement.

E. Assumption and Assignment Procedures. The Contract Notice is reasonably calculated to provide counterparties to certain executory contracts and unexpired leases (the "Assumed Contracts") with proper notice of the intended assumption and assignment of their executory contracts and unexpired leases, any Cure Amounts (as defined below) and the Assumption and Assignment Procedures (as defined below).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth in this Bidding Procedures Order.

2. All objections to the Motion and the relief granted therein, to the extent not resolved as set forth herein or on the record at the Bidding Procedures Hearing, are hereby overruled.

**SALE TIMELINE**

3. Bid Deadline. **October 5, 2026, at 5:00 p.m. (ET)** shall be the deadline by which all Qualifying Bids must be actually received by the Debtors and their advisors.

4. Auction. The Auction, if any, shall be held on **October 13, 2026, commencing at 10:00 a.m. (ET)** (i) at the offices of Saul Ewing LLP, 1735 Market Street, 34th Floor, Philadelphia,

Pennsylvania 19103 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties. For the avoidance of doubt, the Debtors, after consulting with the Consultation Parties, may also conduct more than one auctions at the Auction with respect to non-overlapping material portions of the Debtors' Assets. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualifying Bidders no later than one (1) business day before such Auction.

5. Sale Objection Deadline. The Debtors further request that any and all objections to a Sale of Assets and entry of a Sale Order (a "Sale Objection"): (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) be filed with the Court no later than **October 9, 2026 by 4:00 p.m. (ET),** (the "Sale Objection Deadline"); and (v) be served on the following parties (collectively, the "Objection Notice Parties"): (A) Office of the United States Trustee for the District of New Jersey, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov), One Newark Center, Suite 2100, Newark, NJ 07102; (B) Debtors' counsel, Saul Ewing LLP, One Riverfront Plaza, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102 (Attn: Jeffrey Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com), and Stephen B. Ravin (stephen.ravin@saul.com); (C) counsel to the Committee, FBT Gibbons LLP, One Gateway Center, Newark, NJ 07102, Attn: John S. Mairo (jmairo@fbtgibbons.com) and Christopher P. Anton (canton@fbtgibbons.com); and (D) counsel for the Stalking Horse Bidder, Bradley Arant Boult Cummings LLP, Promenade Tower, 1230 Peachtree Street NE, Atlanta, Georgia 30309, Attn. Sean C. Kulka (sean.kulka@bradley.com) and Riker Danzig LLP, 7 Giralda Farms, Suite 250, Madison, NJ

07940-1051, Attn: Joseph L. Schwartz (jschwartz@riker.com) and John Harmon (jharmon@riker.com).

6. Any party or entity that fails to timely make an objection to the Sale on or before the Sale Objection Deadline (a) shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the Assets free and clear of all liens, claims, encumbrances, and other interests, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

7. Sale Hearing. The Sale Hearing to approve the Sale of the Assets shall be held on **October 20, 2026 at 10:00 a.m. (ET)**; *provided, however*, after consultation with the Consultation Parties, that the Sale Hearing may be continued by the Debtors by announcement in accordance with the Bidding Procedures, from time to time, without further written notice to creditors or parties in interest.

8. The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors in accordance with the Bidding Procedures provided that such modification are not materially inconsistent with this Bidding Procedures Order.

**BIDDING PROCEDURES**

9. Bidding Procedures. The Bidding Procedures, substantially in the form attached hereto as Exhibit 1 are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all reasonable actions necessary to implement the Bidding Procedures.

10. Bid Protections. The Bid Protections are approved and the Debtors are authorized to incur and pay these Bid Protections.

11. Other than the Stalking Horse Bidder, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

12. In the event of an Alternative Transaction, prior to the payment of any Expense Reimbursement, the Stalking Horse Bidder shall provide copies of documented out-of-pocket expenses (which in the case of legal invoices may be redacted to address privilege issues, if any) for which the Stalking Horse Bidder seeks payment from the Debtors to (i) the Debtors, (ii) the UST, (iii) the Committee, and (iv) all parties that have filed notices of appearance. Any objection to the requested Expense Reimbursement must be filed and served on (i) the Debtors, (ii) the UST, (iii) the Committee, (iv) the Stalking Horse Bidder, and (v) all parties that have filed notices of appearance, within ten (10) days of the date that the Stalking Horse Bidder provides its expense reimbursement documentation. Upon the expiration of that objection deadline, the Debtors are authorized to pay the portion of the requested Expense Reimbursement not subject to any pending objection, from the proceeds of the Alternative Transaction, not to exceed $150,000, without further order of the Bankruptcy Court. In the event that an Alternative Transaction is scheduled to close prior to the resolution of any filed objection to the requested Expense Reimbursement then the Debtors shall escrow the lesser of (i) $150,000; or (ii) the amount of Expense Reimbursement subject to an objection, pending the resolution of such objection.

13. Credit Bid. Any Qualifying Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor"), unless the Court for cause orders otherwise, has the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured Creditor has a valid lien; and provided further that any credit bid by a Secured Creditor must contain a cash component sufficient to repay in full in cash secured claims of a Secured Creditor, if any (unless such Secured Creditor agrees to a different treatment). Nothing in this Bidding Procedures Order shall impair or adversely affect the right of the Office of the United States Trustee to object to any credit bid for cause under section 363(k) of the Bankruptcy Code.

**NOTICE OF THE AUCTION, SALE, AND SALE HEARING**

14. The Sale Notice, substantially in the form attached hereto as Exhibit 2, is hereby approved. No later than five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be served on the Sale Notice Parties.

15. In addition, as soon as practicable after entry of this Bidding Procedures Order, the Debtors will publish the Sale Notice, with any modification necessary for ease of publication, once in the national edition of *USA Today*, and the local newspaper for the locations of each of the Debtors' facilities: (i) Jersey City, New Jersey; (ii) East Rutherford, New Jersey; (iii) Levittown, Pennsylvania; and (iv) Savannah, Georgia, to provide notice to any other potential interested parties.

16. Notice of Successful Bidder if No Auction. If the Debtors do not receive any Qualified Bids except the Stalking Horse Bid, the Debtors shall cancel the Auction, and, on or

before October 8, 2026, shall file a notice cancelling the Auction and designating the Stalking Horse Bidder as the Successful Bidder.

**THE ASSUMPTION AND ASSIGNMENT PROCEDURES**

17. The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder or the Successful Bidder(s) as the case may be pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale(s) (the "Assumption and Assignment Procedures") are hereby approved to the extent set forth herein.

18. These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale(s):

a. Within five (5) business days following entry of the Bidding Procedures Order (the "Contract Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract that may be assumed and assigned (each, a "Counterparty," and collectively, the "Counterparties"), and their counsel (if known), the Contract Notice.

b. The Contract Notice shall include, without limitation, the cure amount as of the Petition Date (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties a written objection (a "Contract Objection").

c. Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules and all orders of the Court entered in these chapter 11 cases; (iii) state the basis for such objection; (iv) if such objection is to the Cure Amount, state with specificity what Cure Amount the Counterparty believes is required (in all cases, with appropriate documentation in support thereof); and (v) be filed with the Court and served

on the Objection Notice Parties (as identified in the Contract Notice) by no later than **October 9, 2026 at 4:00 p.m. (ET)** (the "Contract Objection Deadline").

***Any objections to adequate assurance of performance by the Stalking Horse Bidder shall be filed by the Contract Objection Deadline.***

***Any objections to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder shall be filed in accordance with subparagraph (e) below.***

d. As soon as reasonably practicable after the completion of the Auction, or to the extent an Auction is not necessary, then after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors shall file with the Court a notice identifying the Successful Bidder(s) (a "Notice of Successful Bidder(s)"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Assumed Contracts, and (iii) the proposed assignee(s) of such Selected Assumed Contracts. For the avoidance of doubt, if the Debtors do not timely receive any Qualifying Bids for the Assets other than the Stalking Horse Bid, the Stalking Horse Bidder shall be deemed the Successful Bidder for the Acquired Assets (as such term is defined in the Stalking Horse Agreement).

e. As soon as reasonably practicable after the completion of the Auction or, to the extent an Auction was not necessary, after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors will cause to be served by overnight mail upon each affected Counterparty and its counsel (if known) the Notice of Successful Bidder(s).

***Contract Objections solely on the basis of adequate assurance of future performance shall be filed not later than October 17, 2026 at noon (ET), except with respect Contract Objections to the Stalking Horse Bidder's adequate assurance of future performance, which shall be filed not later than the Contract Objection Deadline.***

f. At the Sale Hearing, the Debtors will seek Court approval of their assumption and assignment to the Successful Bidder(s) of only those Assumed Contracts that have been selected by the Successful Bidder(s) to be assumed and assigned (the "Selected Assumed Contracts"). The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

g. If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment

(including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the date of the Contract Notice. Notwithstanding the foregoing, the Debtors shall remain obligated to any counterparty of a Selected Assumed Contract for any amounts that may arise under such contract or lease between the date of the Contract Notice and Closing, subject to any defenses thereto. Amounts owed by the Debtors after the Petition Date may be entitled to administrative expense status pursuant to 11 U.S.C. § 503(b).

h. To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the applicable Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute. If a lease counterparty timely objects to adequate assurances of future performance provided by a Successful Bidder or Back-Up Bidder other than the Stalking Horse Bidder, the Court may approve the Sale to that party, subject the resolution of the adequate assurance dispute. The Debtors and objecting lease counterparty shall have seven (7) days from the date of the Sale Hearing to resolve the dispute or to seek an expedited hearing before the Court.

i. Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order and prior to Closing any additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties a supplemental Contract Notice, and such Counterparties shall file any Contract Objections not later than

> fourteen (14) days thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the applicable Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

19. The Debtors' decision to assume and assign the Assumed Contracts to the Successful Bidder(s) is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and are in all respects subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

20. The inclusion of a contract, lease or other agreement on a Contract Notice is not a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

21. Adequate assurance information regarding the Stalking Horse Bidder shall be provided to requesting lease or contract counterparties on or before September 29, 2026. Adequate Assurance information for any other bidder other than the Stalking Horse shall be provided to requesting lease or contract counterparties within one (1) business day of the Debtors' receipt of such bids, and in no event later than twenty (24) hours after the Bid Deadline.

**RELATED RELIEF**

22. All rights of the Debtors, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to modify the Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer for the Assets, or

impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the Sale of the Assets, are reserved to the extent set forth in the Bidding Procedures; provided, however that the Debtors shall not modify the terms of the Stalking Horse Agreement or applicable Bid Protections; and provided that any such modifications are not materially inconsistent with this Bidding Procedures Order. The Debtors shall provide reasonable notice of any modification to any Qualifying Bidder, including the Stalking Horse Bidder.

23. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

24. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order does not diminish or impair the effectiveness or enforceability of such a provision.

25. Nothing in this Bidding Procedures Order or the Bidding Procedures requires the board of directors, board of managers, or such similar governing body of a Debtor or any of its Debtor or non-debtor affiliates to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with their counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

26. In the event of any inconsistencies between this Bidding Procedures Order and the Motion, this Bidding Procedures Order governs in all respects. In the event of any inconsistencies between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures govern in all respects.

27. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7052 or 9014, the terms and conditions of this Bidding Procedures Order are immediately effective and enforceable upon its entry.

28. The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions, necessary to implement and effectuate the relief granted in this Bidding Procedures Order.

29. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, the Stalking Horse Agreement or the asset purchase agreement with any Successful Bidder(s).

# **EXHIBIT 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

***Caption in Compliance with D.N.J. LBR 9004-1(b)***

**SAUL EWING LLP**
Stephen B. Ravin, Esquire
Jeffrey C. Hampton, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
jeffrey.hampton@saul.com
turner.falk@saul.com

*Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*, | Case No. 25-22123 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**BIDDING PROCEDURES**

On November 14, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [D.I. ●] (the "Bidding Procedures Order"),[2] which, among other things, authorized the Debtors to solicit bids in accordance with the procedures outlined herein (the "Bidding Procedures") for one or more sales or dispositions (collectively, the "Sale(s)") of the Northern Assets, the Southern Assets and all other assets (collectively, the "Assets") or subgroups thereof.

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

[2] Capitalized terms used but not defined herein are defined in the Bidding Procedures Order.

The Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise better bid for the Assets culminating in an auction (the "Auction") if competing Qualifying Bids (as defined below) are received. The Sale(s) are contemplated to be implemented pursuant to the terms and conditions of the Stalking Horse Agreement or applicable asset purchase agreement upon the receipt of a Successful Bid(s).

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT (I) JOSEPH COMPITELLO (JOSCOMPITELLO@GMAIL.COM) AND NICHOLAS JALOWSKI (NBJ@CAMBRIDGEFINANCIALCORP.COM); AND (II) STEPHEN B. RAVIN (STEPHEN.RAVIN@SAUL.COM); JEFFREY HAMPTON (JEFFREY.HAMPTON@SAUL.COM); AND TURNER N. FALK (TURNER.FALK@SAUL.COM).**

**Summary of Important Dates and Deadlines**

| Deadline | Date |
|---|---|
| Deadline to mail Sale Notice and Contract Notice | **Within 5 business days following entry of the Bidding Procedures Order** |
| Sale Objection Deadline and Contract Objection Deadline[3] | **October 9, 2026 at 4:00 p.m. (ET)** |
| Bid Deadline | **October 5, 2026, at 5:00 p.m. (ET)** |
| Deadline for Debtors to Designate Qualifying Bids and Baseline Bid | **October 7, 2026** |
| Auction | **October 13, 2026, commencing at 10:00 a.m. (ET)** |
| Deadline to File and Serve Notice of Successful Bidder | **As soon as practicable after completion of the Auction** |
| Adequate Assurance Objection Deadline for any Successful Bidder other than the Stalking Horse Bidder | **October 17, 2026, at noon (ET)** |
| Debtors' Deadline to Reply to Sale Objections (other than Adequate Assurance Objections) | **October 14, 2026, at noon (ET)** |
| Sale Hearing (subject to Court | **October 20, 2026, at 10:00 a.m.** |

[3] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by the Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder.

| | |
|---|---|
| availability) | **(ET)** |
| Sale Closing | **As soon as practicable after completion of the Sale Hearing, but no later than November 13, 2026** |

## I. Participation Requirements

Any person or entity that wishes to participate in the bidding process for any of the Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder" in the reasonable discretion of the Debtors. To become a Qualifying Bidder, and thus conduct due diligence and gain access to the Debtors' confidential electronic data room (the "Data Room"), a Potential Bidder must submit to the Debtors and their advisors (unless waived by the Debtors):

i. Documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;
ii. An executed nondisclosure or confidentiality agreement in form and substance satisfactory to the Debtors;
iii. A statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a *bona fide* interest in consummating a sale transaction; and
iv. Sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may, in consultation with the Consultation Parties, consider a combination of bids for the Assets, but regardless of whether such bid is for the Northern Assets, the Southern Assets, or all of the Assets, such bid must account for the Bid Protections and any payments due to the Stalking Horse Bidder thereunder.

## II. <u>Due Diligence</u>

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (i) Joseph Compitello (joscompitello@gmail.com) and Nicholas Jalowski (nbj@cambridgefinancialcorp.com); and (ii) Stephen B. Ravin (Stephen.ravin@saul.com), Jeffrey Hampton (jeffrey.hampton@saul.com), and Turner N. Falk (turner.falk@saul.com).

The due diligence period shall extend through and including the Bid Deadline. The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any nondisclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

## III. <u>Bid Requirements</u>

Other than in the case of the Stalking Horse Bidder, whose bid as set forth on the Stalking Horse Agreement shall be deemed to be a Qualifying Bid, to be deemed a "<u>Qualifying Bid</u>," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "<u>Bid Requirement</u>"):

i. be in writing;

ii. fully disclose the identity of the Qualifying Bidder and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

iii. set forth the purchase price to be paid by such Qualifying Bidder. For Qualifying Bidders seeking to purchase the Acquired Assets, such purchase price must equal or exceed $6,895,000 (i.e., the Base Purchase Price of the Stalking Horse Bid plus the Break-Up Fee and Expense Reimbursement plus $50,000) plus the value of Assumed Liabilities;

iv. not propose payment in any form other than cash (except as otherwise expressly set forth in the Bidding Procedures);

v. state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

vi. specify the Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase the Assets, and (ii) assume, if applicable, specified liabilities;

vii. specify whether the bid includes the proposed purchase of (i) some or all of the Northern Assets, (ii) some or all of the Southern Assets, or (iii) some or all of any of the Debtors' other Assets;

viii. be accompanied by an asset purchase agreement (a "Modified Agreement") marked to reflect any variations from the Stalking Horse Agreement;

ix. at the Debtors' request, allocate the bid among the assets proposed to be purchased;

x. state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

xi. state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by its bid and provide written evidence in support thereof;

xii. contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the bid, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B), including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any requesting counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale within one (1) business day after the Debtors' receipt of such information, and in no event later than twenty-four hours following the Bid Deadline;

xiii. identify with particularity each executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Qualifying Bidder's bid;

xiv. contain a commitment to close the transactions contemplated by the Qualifying Bidder's bid by no later than November 13, 2026 after the entry of an order approving the applicable Sale;

xv. not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

xvi. not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

xvii. contain written evidence satisfactory to the Debtors, in consultation with the Committee, that the Qualifying Bidder has a firm, non-conditional commitment for financing or other evidence of the ability to close the transactions contemplated by its bid, with appropriate contact information for such financing sources;

xviii. contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets it seeks to acquire, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

xix. sets forth (i) a statement or evidence that, if required, the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approval required for the Qualifying Bidder to close the transactions contemplated by the bid, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such transaction documents contemplated by the bid, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

xx. provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid;

xxi. includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the bid and the transactions contemplated therein;

xxii. provides a deposit (the "Deposit") equal to 10% of the proposed purchase price; and

xxiii. provides that the Deposit shall be forfeited to the Debtors in the event of the Qualifying Bidder's breach of, or failure to perform under, the Qualifying Bidder's bid, including any agreements set forth in such bid, without prejudice to any and all other rights and remedies of the Debtors.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

## IV. Bid Deadline

A Qualifying Bidder, other than the Stalking Horse Bidder, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties and the Consultation Parties so as to be received on or before **October 5, 2026 at 5:00 p.m. (ET)** (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction**.

## V. Evaluation of Qualifying Bids

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.

The Debtors, after consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than **October 7, 2026, at 5:00 p.m. (ET)**, the Debtors shall: (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder") and shall promptly notify the Stalking Horse Bidder and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

Subject to the terms of the Stalking Horse Agreement, the Debtors reserve the right, in consultation with the Consultation Parties, to withdraw any Assets from the sale process at any time before the Auction.

## VI. No Qualifying Bids

If no Qualifying Bids other than the Stalking Horse Bid for certain of the Assets are submitted on or before the Bid Deadline, then the Debtors shall not hold an Auction as to those Assets and shall request at the Sale Hearing that the Court approve the sale of the Acquired Assets under the Stalking Horse Agreement and the transactions contemplated thereunder. The Debtors shall file any notice cancelling the Auction on or before October 8, 2026.

## VII. Right to Credit Bid

Any Potential Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in fully the secured claims of a Secured Creditor, if any (unless such Secured Creditor agrees to a different treatment).

## VIII. Auction

If the Debtors receive one or more timely Qualifying Bids for the same Assets, then the Debtors shall conduct the Auction. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the applicable Assets, which will be determined by considering, among other things, the following non-binding factors: (i) the total consideration to be received by the Debtors and their estates; (ii) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (iii) the net benefit to the Debtors' estates; and (iv) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

i. the Auction shall be held on **October 13, 2026, at 10:00 a.m. (ET)** (i) at the offices of Saul Ewing LLP, 1735 Market Street, 34th Floor, Philadelphia, Pennsylvania 19103 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties;

ii. only the Qualifying Bidders with Qualifying Bids (the "Auction Bidders"), shall be entitled to make any subsequent bids at the Auction;

iii. each Auction Bidder must attend the Auction, either on its own behalf or through a duly authorized representative with power to bind such Auction Bidder at the Auction;

iv. only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any such creditors provide counsel for the Debtors one (1) day's prior written notice of their intent to attend the Auction, including the name, title, contact information, and affiliation of any individual attending on behalf of such creditor;

provided that creditors may only attend the Auction to observe the proceedings and shall not be entitled to participate; provided further that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved;

v. the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

vi. the Auction Bidders shall confirm on the record that they have not engaged in any collusion with any other bidders or potential bidders with respect to their bid, the Bidding Procedures, the Auction or the Sale;

vii. bidding shall commence at the amount of the Baseline Bid, and subsequently continue in minimum increments of at least $50,000 (each, an "Overbid"), provided that: (i) each Overbid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction, provided further, for the avoidance of doubt, that the Debtors have the right to impose different bid increments for the Northern Assets and Southern Assets;

viii. any Overbid must remain open and binding on the Qualifying Bidder until and unless (i) the Debtors accept a higher or otherwise better bid submitted by another Qualifying Bidder during the Auction as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid;

ix. the Auction may include separate discussions or negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all Auction Bidders;

x. all material terms of the bid that is deemed to be the highest or otherwise best bid for Assets for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

xi. the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional or modified procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction; provided that such rules are (i) not materially inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders; provided further that such rules shall not modify the terms of the Stalking Horse Agreement or the Bid Protections;

xii. each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or

proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xiii. the Auction Bidders shall have the right to make additional modifications to their Qualifying Bid in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse Agreement, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

xiv. the Debtors and the Consultation Parties shall have the right to request any additional financial information that will enable the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate its proposed Qualifying Bid, as it may be amended during the Auction and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xv. upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the offer or offers for the Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Successful Bid(s)"). In making this decision, the Debtors may consider, in consultation with the Consultation Parties, among other things, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse Agreement requested by each bidder, and the net benefit to the Debtors' estates. The bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder(s)." The Debtors may, in their sole discretion, designate one or more Back-Up Bids (and the corresponding Back-Up Bidder(s)) to purchase the Assets in the event that the Successful Bidder(s) do not close the Sale(s); and

xvi. before the Sale Hearing, the Successful Bidder(s) and any Back-Up Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID(S) AND ANY BACK-UP BID(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACK-UP BIDDER(S), RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF**

**THE SALE HEARING.**

**IX. Sale Hearing**

The Successful Bid(s) and any Back-Up Bid(s) (or if no Qualifying Bid other than the Stalking Horse Bid is received, then the Stalking Horse Bid as the Successful Bid) will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **October 20, 2026, at 10:00 a.m. (ET)**, subject to Court availability. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of these cases.

**X. Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that the Successful Bidder fails to close a Sale on or before November 13, 2026 (or such date as may be extended by the Debtors, in consultation with the Consultation Parties), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors are authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court upon at least forty-eight (48) hours advance notice to interest parties, which notice shall be filed with the Court.

**XI. Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as the applicable Successful Bidder no later than five (5) business days following the closing of the applicable Sale. The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder(s) (or, if any Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to close and all such rights and remedies are preserved.

**XII. Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of such parties, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and

that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## XIII. **Notice and Consultation Parties**

The term "Bidding Procedures Notice Parties" as used in these Bidding Procedures shall mean: (i) counsel to the Debtors, Saul Ewing LLP, 1735 Market Street, 34th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com), and Stephen B. Ravin (stephen.ravin@saul.com); and (ii) financial advisor to the Debtors, Cambridge Financial Corporation, Joseph Compitello (joscompitello@gmail.com) and Nicholas Jalowski (nbj@cambridgefinancialcorp.com).

The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); and (ii) any professional retained by the Debtors or Committee.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of any Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of any Committee submits a Qualifying Bid, any Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that any Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

## XIV. **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right, after consultation with the Consultation Parties, to modify the Bidding Procedures at, before, or during the Auction, including, without limitation, to extend the deadlines set forth herein, modifying bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or before the Auction, and adjourn the Sale Hearing; provided that such extensions or modification are not materially inconsistent with the Bidding Procedures Order.

# **EXHIBIT 2**

**Sale Notice**

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**SAUL EWING LLP**<br>Stephen B. Ravin, Esquire<br>Jeffrey C. Hampton, Esquire<br>Turner N. Falk, Esquire<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1520<br>Newark, NJ 07102-5426<br>Telephone: (973) 286-6714<br>E-mail: stephen.ravin@saul.com<br>jeffrey.hampton@saul.com<br>turner.falk@saul.com<br><br>*Counsel to the Debtors and Debtors in Possession* | |
| In re:<br><br>PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-22123 (JKS)<br><br>(Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, POTENTIAL AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on November 14, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"), commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on August 26, 2026, the Debtors filed a motion [D.I. 417] (the "Bidding Procedures Motion") seeking entry of an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale(s)") of the Northern Assets, the Southern Assets, and all other assets (collectively, the "Assets"), (ii) approving the Bid Protections with respect to the Stalking Horse Bid (each as defined below) and authorizing the

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

[2] Capitalized terms not defined in this notice are used as defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

Debtors to incur and pay the Bid Protections to the extent applicable, (iii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, attached hereto as **Schedule 1**, is a description of the Assets for sale in connection with the Debtors' postpetition sale process.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures Motion and the Bidding Procedures, which establish key dates and times relating to the Sale(s) and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

**Contact Persons for Parties Interested in Submitting a Bid**

The Bidding Procedures set forth in detail the requirements for submitting Qualifying Bids, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualifying Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors.

Any persons interested in making an offer to purchase the Assets should contact (i) counsel to the Debtors, Saul Ewing LLP, 1735 Market Street, 34th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com) and Stephen B. Ravin (stephen.ravin@saul.com); and (ii) financial advisor to the Debtors, Cambridge Financial Corporation, Joseph Compitello (joscompitello@gmail.com) and Nicholas Jalowski (nbj@cambridgefinancialcorp.com).

**Important Dates and Deadlines[4]**

- **Bid Deadline.** The deadline to submit a Qualifying Bid is **October 5, 2026 at 5:00 p.m. (ET).**

- **Auction.** If one or more Qualifying Bids for the same Assets are received by the Bid Deadline, the Debtors will conduct the Auction, which shall take place on **October 13, 2026, at 10:00 a.m. (ET)** (i) at the offices of Saul Ewing LLP, 1735 Market Street, 34th Floor, Philadelphia, Pennsylvania 19103 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

the Consultation Parties. If the Debtors do not receive any Qualifying Bids (other than the Stalking Horse Bid), the Debtors will not conduct the Auction and will designate the Stalking Horse Bid as the Successful Bid.

- **Sale Hearing.** The Sale Hearing to consider the proposed Sale will be held before the Honorable Judge John K. Sherwood on **October 20, 2026, at 10:00 a.m. (ET)**, or such other date as determined by the Court, at the United States Bankruptcy Court for the District of New Jersey, Courtroom 3D, 50 Walnut Street, 3rd Floor, Newark, N.J. 07102.

**Filing Objections**

Objections to the Sale(s) (a "Sale Objection") must (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) be filed with the Court no later than **October 9, 2026 at 4:00 p.m. (ET)** (the "Sale Objection Deadline"); and (v) be served on the following parties (collectively, the "Objection Notice Parties"): (A) Office of the United States Trustee for the District of New Jersey, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov), One Newark Center, Suite 2100, Newark, NJ 07102; (B) Debtors' counsel, Saul Ewing LLP, One Riverfront Plaza, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102 (Attn: Jeffrey Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com), and Stephen B. Ravin (stephen.ravin@saul.com)); (C) counsel to the Committee, FBT Gibbons LLP, One Gateway Center, Newark, NJ 07102, Attn: John S. Mairo (jmairo@fbtgibbons.com) and Christopher P. Anton (canton@fbtgibbons.com); (D) counsel for the Stalking Horse Bidder, Bradley Arant Boult Cummings LLP, Promenade Tower, 1230 Peachtree Street NE, Atlanta, Georgia 30309, Attn. Sean C. Kulka (sean.kulka@bradley.com) and Riker Danzig LLP, 7 Giralda Farms, Suite 250, Madison, NJ 07940-1051, Attn: Joseph L. Schwartz (jschwartz@riker.com) and John Harmon (jharmon@riker.com); and (E) counsel for any other Successful Bidders.

**Consequences of Failing to Timely File an Objection**

**ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES. AND OTHER INTERESTS.**

**Sale Free and Clear**

**The Sale(s) will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale(s), whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale(s). Accordingly, as a result of the Sale(s), the Purchaser(s) will not be a successor to any of the**

**Debtors by reason of any theory of law or equity, and the Purchaser(s) will have no liability, except as expressly provided in the Purchaser's Asset Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.**

**Obtaining Additional Information**

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement and all other documents filed with the Court, can be requested by contacting the Debtors' counsel, Jeffrey Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com), or Stephen B. Ravin (stephen.ravin@saul.com).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THE CHAPTER 11 CASES MAY RESULT IN REJECTION OF YOUR BID.**

Dated: September 3, 2026

**SAUL EWING LLP**

By: */s/ Turner N. Falk*

Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:stephen.ravin@saul.com
turner.falk@saul.com

*Counsel for the Debtors and Debtors in Possession*

**Schedule 1**

| | Business | Description |
|---|---|---|
| 1 | Northern Segment (Amex Shipping Agent, Inc., P. Judge & Sons, Inc. and Port Elizabeth Terminal & Warehouse Corp.) | Division of Debtors' operating transportation, logistics, and warehouse related services business from warehouses in New Jersey and Pennsylvania. |
| 2 | Southern Segment (The Judge Organization, LLC, P. Judge & Sons Trucking, LLC, and Judge Warehousing, LLC) | Division of Debtors' operating transportation, logistics, and warehouse related services business from warehouses in Savannah, Georgia. |

# **EXHIBIT 3**

## **Contract Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

***Caption in Compliance with D.N.J. LBR 9004-1(b)***

**SAUL EWING LLP**
Stephen B. Ravin, Esquire
Jeffrey C. Hampton, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
jeffrey.hampton@saul.com
turner.falk@saul.com

*Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-22123 (JKS)<br><br>(Jointly Administered) |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that, on November 14, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"), commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on August 26, 2026, the Debtors filed a motion [D.I. 417] (the "Bidding Procedures Motion") seeking entry of an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale(s)") of the Northern Assets, the Southern Assets, and all other assets (collectively, the "Assets"), (ii) approving the Bid Protections with respect to the Stalking Horse Bid (each as defined below) and authorizing the

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.
[2] Capitalized terms not defined in this notice are used as defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

Debtors to incur and pay the Bid Protections to the extent applicable, (iii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures Motion and the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale(s), the Debtors intend to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (each an "Assumed Contract" and collectively the "Assumed Contracts"). A schedule listing the contracts and leases that may potentially be assumed and assigned as part of the Sale(s) is attached hereto as **Exhibit 1** (the "Contracts Schedule").

**PLEASE TAKE FURTHER NOTICE** that Cure Amounts, if any, for the assumption and assignment of such contracts and leases that may be assumed and assigned are also set forth on the Contracts Schedule. Each Cure Amount listed on the Contracts Schedule represents all liabilities of any nature of the Debtors arising under a contract or lease as of the Petition Date, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the date of this Contact Notice.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE(s).** ***The presence of a contract or lease listed on Exhibit 1 attached hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease or that such contract or lease will be assumed and assigned as part of the Sale(s). The Debtors reserve all their rights, claims and causes of action with respect to the contracts and leases listed on Exhibit 1 attached hereto.***

**Filing Objections**

Pursuant to the Assumption and Assignment Procedures, objections to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract , or (iii) the ability of the Stalking Horse Bidder to provide adequate assurances of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties a written objection (a "Cure Objection"). Any Cure Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Rules and all orders of the Court entered in these Chapter 11 Cases; (iii) state the basis for such objection; (iv) if such objection is to the Cure Amount, state with specificity what Cure Amount the Counterparty believes is required (in all cases, with appropriate documentation in support thereof); (v) be filed with the Court no later

than **October 9, 2026 at 4:00 p.m. (ET)** (the "Cure Objection Deadline"); and (vi) be served on the following parties (collectively, the "Objection Notice Parties"): (A) Office of the United States Trustee for the District of New Jersey, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov), One Newark Center, Suite 2100, Newark, NJ 07102; (B) Debtors' counsel, Saul Ewing LLP, One Riverfront Plaza, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102 (Attn: Jeffrey Hampton (jeffrey.hampton@saul.com), Turner N. Falk (turner.falk@saul.com), and Stephen B. Ravin (stephen.ravin@saul.com)); (C) counsel to the Committee, FBT Gibbons LLP, One Gateway Center, Newark, NJ 07102, Attn: John S. Mairo (jmairo@fbtgibbons.com) and Christopher P. Anton (canton@fbtgibbons.com); (D) counsel for the Stalking Horse Bidder, Bradley Arant Boult Cummings LLP, Promenade Tower, 1230 Peachtree Street NE, Atlanta, Georgia 30309, Attn. Sean C. Kulka (sean.kulka@bradley.com) and Riker Danzig LLP, 7 Giralda Farms, Suite 250, Madison, NJ 07940-1051, Attn: Joseph L. Schwartz (jschwartz@riker.com) and John Harmon (jharmon@riker.com); and (E) counsel for any other Successful Bidders; .

The Debtors shall file a notice identifying the Successful Bidder(s) and Back-Up Bidder(s) (if selected) (the "Notice of Successful Bidder") and shall serve the Notice of Successful Bidder on each counterparty to a potential Assigned Contract as soon as reasonably practicable after closing the Auction, if any. If the Stalking Horse Bidder is not the Successful Bidder, each counterparty to a potential Assigned Contract will then have an opportunity to object to the identity of the Successful Bidder(s) or adequate assurance of future performance with respect to such counterparty's contract or lease provided by the Successful Bidder(s), which must (i) be in writing, (ii) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (iii) state, with specificity, the legal and factual bases thereof, (iv) be filed with the Court by **October 17, 2026, at 4:00 PM (ET)** (the "Adequate Assurance Objection Deadline"), and (v) be served on the Objection Notice Parties.

The Court will hear and determine any objections to the assumption and assignment of the Assumed Contracts at the Sale Hearing or at a later hearing, as determined by the Debtors. The Sale Hearing to consider the proposed Sale will be held before the Honorable Judge John K. Sherwood on **October 20, 2026, at 10:00 a.m. (ET)**, or such other date as determined by the Court, at the United States Bankruptcy Court for the District of New Jersey, Courtroom 3D, 50 Walnut Street, 3rd Floor, Newark, N.J. 07102. The Sale Hearing may be continued by the Debtors by oral announcement at the date and time stated herein without any further written notice.

**Consequences of Failing to Timely Assert an Objection**

**UNLESS YOU FILE AN OBJECTION TO THE CURE AMOUNT AND/OR THE ASSUMPTION OR ASSIGNMENT OF YOUR CONTRACT OR LEASE IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE (A) BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON EXHIBIT 1, (B) ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE DEBTORS, OR ANY SUCCESSFUL BIDDER(S) THAT IS GREATER THAN THE CURE AMOUNT SET FORTH ON EXHIBIT 1 AND (C) DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND/OR ASSIGNMENT OF YOUR CONTRACT OR LEASE AND THE ADEQUACY OF SUCCESSFUL BIDDER'S**

**ASSURANCE OF FUTURE PERFORMANCE. NOTWITHSTANDING THE FOREGOING, THE DEBTORS REMAIN OBLIGATED TO ANY COUNTERPARTY OF A SELECTED ASSUMED CONTRACT FOR ANY AMOUNTS THAT MAY ARISE UNDER SUCH CONTRACT OR LEASE POSTPETITION BUT PRIOR TO CLOSING, SUBJECT TO ANY DEFENSES THERETO. AMOUNTS OWED BY THE DEBTORS AFTER THE PETITION DATE MAY BE ENTITLED TO ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. § 503(B).**

Dated: September 3, 2026

**SAUL EWING LLP**

By: */s/ Turner N. Falk*

Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:stephen.ravin@saul.com
turner.falk@saul.com

*Counsel for the Debtors and Debtors in Possession*