**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

***Caption in Compliance with D.N.J. LBR 9004-1(b)***

NIXON PEABODY LLP
Eric M. Ferrante (NJ Bar No. 140542014)
211 High Point Drive, Suite 110
Victor, NY 14564
Telephone: (585) 263-1000
eferrante@nixonpeabody.com
Richard C. Pedone (*pro hac vice* forthcoming)
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
rpedone@nixonpeabody.com
Daniel P. McMonagle (*pro hac vice* forthcoming)
55 West 46th Street
New York, NY 10036
Telephone: (212) 940-3000
dmcmonagle@nixonpeabody.com

*Counsel to Constellation Brands, Inc.*

| | |
|---|---|
| In re:<br><br>PORT ELIZABETH TERMINAL & WAREHOUSE CORP., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-22123 (JKS)<br><br>(Jointly Administered) |

**RESERVATION OF RIGHTS OF CONSTELLATION BRANDS, INC. AND CROWN IMPORTS LLC WITH RESPECT TO SALE MOTION AND ASSUMPTION AND ASSIGNMENT OF WAREHOUSING AGREEMENTS**

Constellation Brands, Inc. and Crown Imports LLC (collectively, "Constellation") by and through their undersigned counsel, respectfully states as follows:

[1] The last four digits of each Debtors' tax identification number are as follows: Port Elizabeth Terminal & Warehouse, Corp. (6485), P. Judge & Sons, Inc. (3713), Amex Shipping Agent, Inc. (4699), the Judge Organization, LLC (8267), P. Judge & Sons Trucking, LLC (9853), and Judge Warehousing, LLC (6690). The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 13 Manor Road, East Rutherford, NJ 07073.

**RESERVATION OF RIGHTS**

1. Port Elizabeth Terminal & Warehouse Corp. and Crown Imports LLC (a subsidiary of Constellation Brands, Inc.), are parties to (i) a Warehousing Agreement dated April 14, 2025, for warehousing services at 150 Industrial Drive, Jersey City, New Jersey and (ii) a Warehousing Agreement dated January 1, 2025, for warehousing services at 30 Runway Rd. Levittown, Pennsylvania (collectively, as amended or modified from time to time, the "Warehousing Agreements").

2. On November 14, 2025 (the "Petition Date"), the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court"), commencing these cases (these "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these Chapter 11 Cases.

3. On August 26, 2026, the Debtors filed their *Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (the "Sale Motion") [Docket No. 417], which contemplates, among other things, the Sale of substantially all the assets of the Debtors, pursuant to a proposed asset purchase agreement

("Stalking Horse Agreement"), to East Coast Warehouse and Distribution Corp. and its designees (the "Stalking Horse Bidder"), or such other successful bidder.[2]

4. On September 4, 2026, the Court entered its *Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures of Assumption and Assignment of Certain Executory Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 433] (the "Bidding Procedures Order"), authorizing, among other things, bidding procedures for the solicitation of bids pursuant to an auction process for the sale of the Debtors' assets.

5. On October 7, 2026, the Debtors filed the *Notice of Successful Bidder and Cancellation of Auction* [Docket No. 482], which advised parties that aside from the Stalking Horse Bid, no other bids had been received by the Bid Deadline and, as a result, the Auction was canceled and the Stalking Horse Bidder was declared the Successful Bidder.

6. It is Constellation's understanding that the Debtors intend on assuming and assigning the Warehousing Agreements to the Stalking Horse Bidder.

7. In order for the Stalking Horse Bidder to continue to perform under the Warehousing Agreements, they must obtain and maintain various approvals, permits and other licenses. Constellation has been informed by the Debtors that the Stalking Horse Bidder will operate, temporarily, under the Debtors' licenses under a transition services agreement and that the Stalking Horse Bidder is also working to obtain the necessary permits and approvals with the applicable agencies for the longer term.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

8. Constellation does not object to the Sale, however, it files this reservation of rights (this "Reservation of Rights") to preserve all of its rights in connection with the Sale, the transactions contemplated by the Stalking Horse Agreement, the proposed management agreement and the proposed assumption and assignment of the Warehousing Agreements. Those rights include the right to require adequate assurance of future performance under sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Specifically, Constellation must have assurance that the Stalking Horse Bidder has obtained, or will timely obtain, all licenses, permits, bonds, and approvals needed to perform under the Warehousing Agreements, and that performance will not be interrupted during the entire term of the Warehousing Agreements.

9. In addition, the Stalking Horse Agreement permits the Stalking Horse Bidder to designate or assign its rights to one or more designees or assignees. Constellation reserves the right to object to the assumption and assignment of the Warehousing Agreements to any party other than the Stalking Horse Bidder unless and until that party is identified and gives adequate assurance of future performance. Constellation also reserves the right to object to any later assignment of the Warehousing Agreements made without Constellation's consent.

10. Constellation further reserves its right to request that the Debtors and the Stalking Horse Bidder provide copies of, or a status report on, all applications for the required permits and approvals.

11. As of the date of this Reservation of Rights, the Debtors have not filed a proposed order approving the Sale (the "Sale Order"), and the final form of the Stalking Horse Agreement, including its schedules of assumed contracts, is not yet available. Constellation therefore reserves all rights to object to any term or condition of the Sale Order or the Stalking Horse

Agreement that may prejudice or otherwise impair Constellation's rights under the Warehousing Agreements or the Stalking Horse Bidder's obligations to perform under them.

12. Constellation reserves the right to amend, supplement, or modify this Reservation of Rights; to raise any further objection to the Sale, the Sale Order, the Stalking Horse Agreement, or the proposed assumption and assignment of the Warehousing Agreements and to be heard at the Sale Hearing. Nothing in this Reservation of Rights waives, limits, or releases any of Constellation's or its affiliates' rights, claims, remedies, or defenses under the Warehousing Agreements, the Bankruptcy Code, or applicable non-bankruptcy law, all of which are expressly reserved. Nothing in this Reservation of Rights is consent to the assumption and assignment of the Warehousing Agreements on any terms other than those stated herein. While this pleading is styled as a reservation of rights, it should be deemed to be an objection since so many contingencies remain open and the documents related to the transactions are not yet final and available for review by Constellation.

WHEREFORE, Constellation respectfully requests that the Court (i) condition any approval of the Sale and the assumption and assignment of the Warehousing Agreements on the needed protections described in this Reservation of Rights, including for any transition services or management agreement to be in a form acceptable to Constellation, and (ii) grant Constellation such other and further relief as the Court deems just and proper.

Dated: October 13, 2026

NIXON PEABODY LLP

By: *Eric M. Ferrante*
Eric M. Ferrante (NJ Bar No. 140542014)
211 High Point Drive, Suite 110
Victor, NY 14564
Telephone: (585) 263-1000
eferrante@nixonpeabody.com

-and-

Richard C. Pedone
(*pro hac vice* pending)
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
rpedone@nixonpeabody.com

*Counsel to Constellation Brands, Inc. and Crown Imports LLC*